1 | SCOTT C. CLARKSON, ESQ.  SBN 143271
EVE A. MARSELLA, ESQ.  SBN 165797

2 | CHRISTINE M. FITZGERALD, ESQ.  SBN 259014

3 | CLARKSON, GORE & MARSELLA
A PROFESSIONAL LAW CORPORATION

4 | 3424 Carson Street, Suite 350
Torrance, California 90503

5 | (310) 542-0111 Telephone
(310) 214-7254 Facsimile

6 |

7 | [Proposed] Attorneys for ConnectTo Communications,
Inc., Debtor and Debtor in Possession

8 |

9 |

10 | **UNITED STATES BANKRUPTCY COURT**

11 | **CENTRAL DISTRICT OF CALIFORNIA,**

12 | **LOS ANGELES DIVISION**

13 | In Re

14 | **ConnectTo Communications, Inc.**
              a Nevada corporation,

15 |          Debtor in Possession.

16 |

17 |

18 |

19 |

20 |

21 |

22 |

23 |

24 |          TO THE HONORABLE VINCENT P. ZURZOLO, UNITED STATES

25 | BANKRUPTCY JUDGE, SECURED CREDITORS, CREDITORS HOLDING THE

26 | TWENTY LARGEST UNSECURED CLAIMS, AND THE OFFICE OF THE

27 | UNITED STATES TRUSTEE:

28 |

Case No.  2:10-bk-19227-VZ

Chapter 11

**EMERGENCY MOTION FOR ORDER (1)
PROHIBITING UTILITIES FROM
ALTERING, REFUSING, OR
DISCONTINUING SERVICE, (2)
ESTABLISHING PROCEDURES FOR
DETERMINING ADEQUATE ASSURANCE
OF PAYMENT FOR FUTURE UTILITY
SERVICES AND FOR PROVIDING
ADEQUATE ASSURANCE OF PAYMENT TO
AT&T; MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT THEREOF;
DECLARATION IN SUPPORT THEREOF**

Date:    TBD
Time:    TBD
Ctrm:   1368

1    ConnectTo Communications, Inc., debtor and debtor in possession herein (the "Debtor"),

2    hereby moves the Court for entry of an order (1) prohibiting utilities from altering, refusing, or

3    discontinuing service; (2) determining that a deposit equal to one month's average invoice

4    amount and the ability to obtain an expedited hearing upon 20 days' default after notice

5    constitute adequate assurance of payment for future utility services as contemplated under

6    Section 366(b) and (c)(3)(A) of title 11 of the United States Code (the Bankruptcy Code"); and

7    (3) for providing adequate assurance to AT&T California ("AT&T"), **which is not a utility for**

8    **purposes of Section 366.**[1]    The Debtor respectfully submits that the relief sought is appropriate

9    pursuant to Sections 366(b), 366(c)(3)(A), and 365 of the Bankruptcy Code and is necessary to

10    ensure continued and uninterrupted business operations, which is critical to the success of the

11    Debtor's emergence from Chapter 11.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.

### INTRODUCTION

### A. UTILITY PROVIDERS

16    The Debtor seeks by this Motion pursuant to Section 366 of the Bankruptcy Code, a

17    determination by the Court that a cash deposit in an amount equal to one month's average

18    historical invoice amount calculated using monthly invoices from January 2009 through

19    and including February 28, 2010 (the "Deposit"), is required and the ability to obtain an

20    expedited hearing upon 20 days' default after notice constitutes adequate assurance to the

21    Utility Companies of payment for future utility services.  The Debtor's average monthly

22    utility expenditure is approximately $1,125.17.  The Debtor expects to have sufficient cash

23    to pay its post-petition utility bills as they come due.

### B. AT&T

25    The Debtor also seeks by this Motion, pursuant to Section 365 of the Bankruptcy Code, a

---

[1] A copy of *In re Comm South Cos.,* 2003 Bankr. LEXIS 2314 (Bankr. N.D. Tex. 2003) is
attached hereto as Exhibit "A".  This decision is presented as one of the clearest examples of
decisions of why AT&T is not a utility under §366.

1  determination by the Court that bi-monthly payments by the Debtor to AT&T for all post-

2  petition usage and the ability to obtain an expedited hearing upon 20 days' default constitutes

3  adequate assurance to AT&T.  Although AT&T is not a utility provider to the Debtor for

4  purposes of Section 366 in this case[2], the Debtor has an executory contract with AT&T.  The

5  Debtor desires to prevent or limit administrative claims of AT&T from accruing.

6  **C.  UTILITY PROVIDERS AND AT&T ARE CRITICAL TO THE DEBTOR**

7          At this critical time and given the nature of the Debtor's business, uninterrupted

8  electricity, gas, water, and similar services are essential to the Debtor's ongoing operations.  Any

9  interruption, however brief, in utility or other services to the Debtor will irreparably disrupt the

10  Debtor's business operations.  It is therefore critical that the Court prohibit the Utility Companies

11  or AT&T from altering, refusing, or discontinuing service to the Debtor.  The Deposit for each of

12  the Utility Companies, coupled with the streamlined mechanism for requesting further adequate

13  assurance described herein, provide adequate assurance of payment to the Utility Companies,

14  while safeguarding the Debtor's continuing business operations.  The Court should therefore

15  grant the relief requested in the Motion.

16  **A.      BACKGROUND**

17          On March 12, 2010 (the "Petition Date"), the Debtor filed a voluntary petition under

18  Chapter 11 of the Bankruptcy Code.  The Debtor is a Nevada corporation.  The Debtor's

19  corporate headquarters are located at 555 Riverdale Drive, Suite A, Glendale, CA 91204.

20  Under 11 U.S.C. §§ 1107 and 1108, the Debtor has remained in possession of all of its assets

21  and continues to operate and manage its business as a debtor-in-possession during the pendency

22  of the Chapter 11 case.  The Debtor previously filed a voluntary Chapter 11 bankruptcy petition

23  on November 30, 2009, Case No.: 2:09-bk-43560-VZ.  This case was converted to a Chapter 7

24  on January 25, 2010, and was dismissed on March 12, 2010.  Unfortunately the Debtor was

25  misguided by a non-practicing bankruptcy counsel in the previous bankruptcy. Further, AT&T

26  _____

27  [2] AT&T does not provide end-user services to the Debtor, but sells a commodity to the Debtor
    which is resold to the Debtor's customers. An explanation of the difference between a §366

28  utility and AT&T is described in detail below.

refused to engage with the Debtor in an out-of-bankruptcy workout, which has lead to re-filing the instant bankruptcy case.

**B.    DESCRIPTION OF THE DEBTOR'S BUSINESS**

The Debtor incorporated in the state of Nevada on May 19, 2004 and is registered to do business in the state of California.  The Debtor is a telecommunications company and services approximately 20,000 customers by reselling local telecommunications service purchased in bulk from Pacific Bell Telephone Company, doing business as AT&T California, and from Verizon. The Debtor also provides long distance and ISP services.  Approximately 80% of the Debtor's customers are low income.  The service the Debtor provides to its low income customers is significantly subsidized by the California Public Utilities Commission (PUC).  As a result of the failure of the CA PUC to timely provide the promised subsidies, the Debtor fell behind on its payment to AT&T.

**C.    THE DEBTOR'S ACCOUNTS WITH UTILITY COMPANIES**

The Debtor receives essential utility services, including but not limited to, gas, electric, trash and telephone services, from the Utility Companies, as follows:

| Name of Utility | Description | Last 4 digits of account number |
|---|---|---|
| The Gas Company | Gas | 5437 |
| City of Glendale Water & Power | Water and Power | 7207 |

The Debtor's average total utility charges are estimated to be approximately $1,125.17 per month.  No amounts are presently owed to any company providing utility service to the Debtor.

**D.  AT&T**

1.        As noted above, the Debtor services approximately 20,000 customers by reselling local telecommunications service purchased in bulk from AT&T. AT&T is not a

1  utility provider for purposes of Section 366; however, uninterrupted business with AT&T is

2  critical to the Debtor's business.  The Debtor's average monthly charges with AT&T are

3  estimated to be approximately $120,000 per month.  The Debtor presently owes AT&T

4  approximately $940,000.  The Debtor has a deposit with AT&T of approximately $65,000.

5  As this case progresses, the Debtor (and presumably AT&T) does not want to accrue

6  administrative claims to AT&T..

7       Historically, the Debtor generally paid its regular monthly utility and AT&T obligations

8  within thirty days following the date they were due.  With respect to this Chapter 11 case, the

9  Debtor anticipates having adequate cash on hand to meet necessary post-petition operating

10  expenses on a current basis, including payments to the Utility Companies and AT&T.  With

11  respect to AT&T, however, the Debtor is seeking to make bi-monthly payments to further insure

12  on-time payment.

13                                **III.**

14                             **ARGUMENT**

15  **A. UTILITY PROVIDERS**

16       Under § 366(b) of the Bankruptcy Code, utilities may only alter, refuse, or

17  discontinue service if the Debtor has not furnished adequate assurance of payment within

18  20 days of the Petition Date.  11 U.S.C. § 366(b).  Newly enacted § 366(c) provides that a

19  utility may alter, refuse or discontinue service if the utility does not receive, within 30 days

20  of a chapter 11 filing, adequate assurance of payment for utility service *that is satisfactory*

21  *to the utility*.  This Court, however, has the power to modify the form and amount of an

22  assurance of payment after notice and a hearing.  The Debtor proposes that it provide

23  adequate assurance of payment to each Utility in the form of a cash deposit in an amount

24  equal to approximately one month's average historical invoice amount calculated using

25  monthly invoices from January 2009 through and including August 2009.  Additionally, the

26  Debtor proposes the following procedure:  If the Debtor defaults on an obligation to pay a

27  Utility Company for post-petition services and such default is not cured within 20 days of

28

1  the Debtor's receipt of written notice of default, then the applicable Utility Company may

2  file a motion requesting that the Debtor furnish further adequate assurance of future

3  payment, and such motion shall be heard on an expedited basis.

4       The Debtor requests that the Utilities Motion be heard and approved on an

5  emergency basis so that the Debtor and its creditors will have certainty as to the amount of

6  the deposit that must be made from cash collateral or borrowed funds.

7       The policy underlying § 366 of the Bankruptcy Code is to protect debtors from

8  utility service cutoffs upon the filing of a bankruptcy case, while at the same time

9  providing utility companies with adequate assurance that debtors will in fact pay for

10  postpetition services.  *See* H.R. Rep. No. 595, 95th Cong., 1st Sess. 350 (1978), *reprinted*

11  *in* 1978 U.S.C.C.A.N. 5963, 6306.

12       Section 366 of the Bankruptcy Code provides as follows:

13

14  (a) Except as provided in subsections (b) and (c) of this section, a utility may not
alter, refuse, or discontinue service to, or discriminate against, the trustee or the
debtor solely on the basis of the commencement of a case under this title or that a

15  debt owed by the debtor to such utility for service rendered before the order for

16  relief was not paid when due.

17  (b) Such utility may alter, refuse, or discontinue service if neither the trustee nor the
debtor, within 20 days after the date of the order for relief, furnishes adequate

18  assurance of payment, in the form of a deposit or other security, for service after
such date. On request of a party in interest and after notice and a hearing, the court

19  may order reasonable modification of the amount of the deposit or other security
necessary to provide adequate assurance of payment.

20  (c)(1)(A) For purposes of this subsection, the term "assurance of payment" means--

21          (i) a cash deposit;

22          (ii) a letter of credit;

23          (iii) a certificate of deposit;

24          (iv) a surety bond;

25          (v) a prepayment of utility consumption; or

26          (vi) another form of security that is mutually agreed on between the
utility and the debtor or the trustee.

27  (B) For purposes of this subsection an administrative expense priority shall
not constitute an assurance of payment.

28

6    Emergency Motion re Utilities and AT&T

(2) Subject to paragraphs (3) and (4), with respect to a case filed under chapter 11, a utility referred to in subsection (a) may alter, refuse, or discontinue utility service, if during the 30-day period beginning on the date of the filing of the petition, the utility does not receive from the debtor or the trustee adequate assurance of payment for utility service that is satisfactory to the utility.

(3)(A) On request of a party in interest and after notice and a hearing, the court may order modification of the amount of an assurance of payment under paragraph (2).

(B) In making a determination under this paragraph whether an assurance of payment is adequate, the court may not consider--

(i) the absence of security before the date of the filing of the petition;

(ii) the payment by the debtor of charges for utility service in a timely manner before the date of the filing of the petition; or

(iii) the availability of an administrative expense priority.

(4) Notwithstanding any other provision of law, with respect to a case subject to this subsection, a utility may recover or set off against a security deposit provided to the utility by the debtor before the date of the filing of the petition without notice or order of the court.

While the recent amendments to the Bankruptcy Code included a definition of "assurance of payment," the Bankruptcy Code continues to not define "adequate" assurance of payment. Under case law, adequate assurance of payment has been held not to be an absolute guaranty of payment[3]. Prior to the recent amendments to the Bankruptcy Code, Courts in different Circuits had varying views of the *form* of assurance of payment that was adequate. *Compare, e.g., Adelphia Business Solutions*, 280 B.R. at 89 (following *Virginia Elec. & Power Co. v. Caldor, Inc.*, 117 F.3d 646 (2d Cir. 1997 in deciding that under a fact-driven analysis, adequate assurance need not take the form of a deposit) with *In re Best Products Co.*, 203 B.R. 51, 54 (Bankr. E.D. Va. 1996 ("I hold, therefore, that adequate assurance under §366 requires more than administrative priority."). Historically, a debtor need only show "adequate assurance" that it will pay for postpetition utility

---

[3] *See Steinbach v. Tucson Electric Power Co. (In re Steinbach),* 303 B.R. 634, 640-41 (Bankr. D. Ariz. 2004 ("No definition is provided in the Bankruptcy Code for what constitutes "adequate assurance." Adequate assurance is not, however, absolute assurance. The key to achieving the balance required by § 366 is not to confuse 'adequate assurance' with adequate protection, which must be provided to a creditor under 11 U.S.C. § 361.") (citation omitted). Adequate assurance of payment is not defined by local utility regulations but is determined under the Bankruptcy Code. *Id.* at 642, *citing Adelphia Business Solutions, Inc.,* 280 B.R. 63, 80 (Bankr. S.D.N.Y. 2002); *In re Robmac, Inc.,* 8 B.R. 1, 3-4 (Bankr. N.D. Ga. 1979.

1  services, and did not necessarily have to make a deposit. *See, e.g., In re Pacific Gas &*

2  *Elec. Co.*, 271 B.R. 626, 644-45 (N.D. Cal. 2002 (upholding the bankruptcy court's finding

3  that the debtor's likelihood of performance and availability of resources provided adequate

4  assurance).

5  §366 as recently amended, however, clarifies that, as a form of adequate assurance

6  of payment, administrative priority is not enough. 11 U.S.C. §§366 (c)(1)(B) and

7  (c)(3)(B)(iii).  Amended § 366 now requires a cash deposit or other enumerated form of

8  security that is "adequate," but the Bankruptcy Code, even after the recent amendments,

9  still does not define "adequate."

10  While the *form* of adequate assurance of payment may be limited under new

11  subsection 366(c) to the types of security enumerated in Subsection 366(c)(1)(A), the

12  *amount* of the deposit or other form of security, however, remains fully within the

13  reasonable discretion of the Court,[4] subject only to three specific factors that may not be

14  considered by the Court, as listed in Subsection 366 (c)(3)(B).  Under such subsection,

15  when determining "whether an assurance of payment is adequate," the Bankruptcy Court

16  may not consider:  (1) whether the debtor had a prepetition deposit; (2) whether the debtor

17  paid its utility bills on time prepetition; or (3) the administrative expense priority afforded

18  utilities postpetition.  11 U.S.C. §366 (c)(3)(B).  Nothing in Section 366 (c), however,

19  precludes the Bankruptcy Court from considering other factors that could minimize the

20  amount of the deposit, including (without limitation):  (a) the right of the utility to

21

22  _____

23  [4]  *See* 11 U.S.C. §366 (b) ("On request of a party in interest and after notice and a hearing, the
24  court may order reasonable modification of the amount of the deposit or other security
     necessary to provide adequate assurance of payment.") and (c)(3)(A) ("On request of a party in
25  interest and after notice and a hearing, the court may order modification of the amount of an
     assurance of payment under paragraph (2)."). *Accord Pacific Gas & Elec. Co*, 271 B.R. at 644
26  ("The use of the word 'may' in the second sentence [of section 366(b)] contemplates that the
     decision of whether to order security lies within the discretion of the Bankruptcy Court.");
27  *Steinbach*, 303 B.R. at 641 ("Bankruptcy courts are afforded reasonable discretion in
28  determining what constitutes adequate protection. . . .").

1  terminate service upon nonpayment;[5] (b) the chapter 11 estate's liquidity;[6] and (c) the

2  estate's net worth and ability to pay its postpetition obligations.[7]  The Debtor submits that

3  other factors should be relevant as well, such as the Debtor's proposal to conduct a sale of

4  substantially all of its assets as a going concern in this case.

5        Even prior to the enactment of the amendments, the Bankruptcy Court in *Best*

6  *Products* took an approach that appears to parallel Amended § 366:

7        A question remains, however, as to its form and amount in this case.  Under § 366,

8  the utilities have a right to the deposit as demanded unless the debtor can show cause to

9  reduce it.  Once the debtor proffers a sufficient objection, the court must fix a reasonable

10  security after notice and a hearing.  In doing so, the court should consider the debtor's

11  payment history, the debtor's net worth, and the debtor's present and future ability to pay

12  post-petition obligations.  *Best Products*, 203 B.R. at 54.  The Best Products court approved

13  a deposit of one-*half* the average monthly bill for the past 12 months for each of the

14  debtor's facilities because of factors such as the debtor's net worth and present and future

15  ability to pay postpetition obligations.  *Id.*[8]

16  ──────────────────────

17  [5]  *See In re Penn Jersey Corp.*, 72 B.R. 981, 985 (Bankr. E.D. Pa. 1987) ("We note … that the
18  Court of Appeals has stated hat a utility is well-protected, after establishment of adequate
     assurance, by its remedy "'to disconnect service as its remedy for non-payment' without
19  'recourse to the bankruptcy court,' "even though … the debtor is provided with an additional
     layer of protection arising from any available state utility commission Regulations limiting a
20  utility's termination rights.").

21  [6]  *See In re Agrifos Fertilizer, L.P.,* 2002 WL 32054779, at *5 (Bankr. S.D. Tex. Nov. 25, 2002
22  ("If a debtor demonstrates . . . *evidence of postpetition liquidity*, a deposit may not be
     necessary.") (emphasis added).

23  [7]  *See Best Products*, 203 B.R. at 54 ("the court should consider the debtor's payment history, *the*
24  *debtor's net worth, and the debtor's present and future ability to pay post-petition obligations.*")
     (emphasis added).
25

26  [8]  The *Best Products* court permitted the debtor to apply and prepetition deposits and
     prepayments to the postpetition deposits required by the court's ruling.  *Id.,* at 54 n.2.  The
27  Bankruptcy Appellate Panel for the First Circuit approved an apparently one-month deposit
     that the utility argued would not cover 13 day period between billing and payment of each
28  month's rent – "even excluding the administrative expense priority from consideration."

1  The amount of the deposit or other security could be even lower than one-half

2  month's bill amount.[9]  By its terms, section 366 as amended *does not require* that the

3  deposit or other security be more than a nominal amount.  It could even be zero, where

4  appropriate.  In *Caldor*, the Second Circuit considered cases such as *Best Products* that

5  required a deposit or similar form of security for utilities.  The Second Circuit stated that:

6  "Even assuming that 'other security' should be interpreted narrowly [as in *Best Products*],

7  we agree with the appellees that a bankruptcy court's authority to 'modify' the level of the

8  'deposit or other security,' provided for under §366(b), includes the power to require no

9  'deposit or other security' where none is necessary to provide a utility supplier with

10  'adequate assurance of payment." *See Caldor*, 117.F.3d at 650.

11  Although the Debtor believes that it has a credible argument for a lower deposit, it

12  nevertheless proposes to make a cash deposit to each of the Utility Companies equal to one

13  month's average historical invoice amount, determined using the monthly invoice amounts

14  for each month from January 2009 to February 2010, inclusive.  The Debtor submits that

15  one month's average billing is more than adequate under the totality of the facts and

16  circumstances.[10]

---

*Massachusetts Electric Co. v. Keydata Corp. (In re Keydata Corp.)*, 12 B.R. 156, 158 (1st Cir. BAP 1981 (citation and footnote omitted).

[9]  Bankruptcy courts should be conservative in providing deposits or other security to utilities to conserve the estate's scarce financial resources.  *See In re Magnesium Corp. of America*, 278 B.R. 698, 714 (Bankr. S.D.N.Y. 2002 ("In deciding what constitutes 'adequate assurance' in a given case, a bankruptcy court must 'focus upon the need of the utility for assurance, and to require that the debtor supply *no more than that*, since the debtor almost perforce has a conflicting need to conserve scarce financial resources."), quoting *Caldor*, 117 F.3d at 650 (emphasis in original); *Penn Jersey*, 72 B.R. at 985 ("We believe that, in analysis of what 'adequate assurance' is required of any particular debtor to retain utility service, it is significant to focus upon the need of the utility for assurance, and to require that the debtor supply no more than that, since the debtor almost perforce has a conflicting need to conserve scarce financial resources.").

[10]  *See Adelphia Business Solutions*, 280 B.R. at 82-83 and 86 n. 127 (adequate assurance of payment is a fact-driven analysis based on the totality of the facts and circumstances of the case). In addition to the one month's deposit as security, if the Debtor defaults on an obligation to pay a Utility Company for postpetition services and such default is neither secured by an existing deposit nor cured within 20 days of the Debtor's receipt of written notice of default, then the

1      Here, the Debtor satisfies the criteria considered by courts in finding that adequate

2  assurance of payment has been shown:  The Utility Companies will not suffer an

3  unreasonable risk of nonpayment with a month's deposit and the added ability to obtain an

4  expedited hearing upon 20 days' default after notice.

5      The Debtor anticipates having adequate cash on hand to meet necessary post-

6  petition operating expenses on a current basis, including payments to the Utility

7  Companies.  The Debtor has specifically budgeted for payments to the Utility Companies

8  and to AT&T in the context of the proposed financing and cash collateral stipulation in this

9  case.

10      Hence, the Debtor request an order prohibiting the Utility Companies from altering,

11  refusing, or discontinuing service to the Debtor conditioned solely upon the Debtor providing

12  each of the Utility Companies with a one month deposit and the ability to obtain an expedited

13  hearing before this Court upon 20 days' default after notice.  Once it provides the one month

14  deposits, the Debtor submits that it will have furnished the requisite adequate assurance of

15  payment to the Utility Companies.

16  **B.  AT&T IS NOT A UTILITY UNDER §366**

17      §366 does not define what is considered a utility.  However, case law indicates that where

18  the debtor is not the end user of a wholesale commodity, the provider of the commodity is not

19  considered a utility for purposes of §366.  *See In re Comm South Cos.,* 2003 Bankr. LEXIS 2314

20  (Bankr. N.D. Tex. 2003) ("§ 366 addresses the provision by a public utility of an essential

21  service to a debtor that is used by a debtor as a service. Section 366 does not address the

22  provision by a utility of a commodity on a wholesale basis to a debtor that is also a utility that

23  resells that commodity to a retail customer").  A copy of the *In re Comm South* case is attached

24  hereto as Exhibit "A" for the court's review.  It is provided as an example of the accurate and

25  thoughtful approach of what a utility is under §366.

26      In *Comm South,* the debtor was a competitive local exchange carrier, which provided

27
28  applicable Utility Company may file a motion requesting that the Debtor furnish further adequate
assurance of future payment, and such motion shall be heard on an expedited basis.

1    telephone service to pre-paid phone service customers, and Verizon argued it was a utility,

2    despite the fact that Verizon was an incumbent local exchange carrier that provided services to

3    the debtor that the debtor then sold on a retail basis to its own customers.  The court concluded

4    Verizon was not a "utility:"

5

6    > Here, Verizon provides telecommunications services to the Debtors, not for the Debtor's own use, but for the resale by the Debtor to its customers, the end users. The contracts between Verizon and the Debtor, in fact, specifically prohibit the Debtor from using the

7    > telecommunications services provided by Verizon under the contract for its own use.

8    *In re Comm South Cos.*, 2003 Bankr. LEXIS 2314 (Bankr. N.D. Tex. 2003).

9            In the present case, these facts are very similar to the facts set forth in *In re Comm South*

10   *Cos.*  The Debtor is not the end user of AT&T's services.  Like the debtor in the case, the Debtor

11   here resells the services provided by AT&T to its customers.  Because the Debtor is not the end

12   user and resells AT&T's services to the end customer, AT&T is not a considered a utility under

13   §366.

14           Nonetheless, the Debtor seeks to provide AT&T with adequate protection, pursuant to

15   Sections 362 and 365 of the Bankruptcy Code, authorizing bi-monthly payments by the Debtor

16   to AT&T for all post-petition usage and the ability to obtain an expedited hearing upon 20 days'

17   default.  The Debtor believes that this constitutes adequate assurance to AT&T.

18           The relief sought by the Debtor is authorized pursuant to Sections 365 of the Bankruptcy

19   Code.  §365(b)(4) provides:

20   > Notwithstanding any other provision of this section, if there has been a default in

21   > an unexpired lease of the debtor, other than a default of a kind specified in paragraph (2) of this subsection, the trustee may not require a lessor to provide

22   > services or supplies incidental to such lease before assumption of such lease unless the lessor is compensated under the terms of such lease for any services

23   > and supplies provided under such lease before assumption of such lease.

24   Moreover, §365 also authorizes "adequate assurance" to the lessor. See, §365(b)(1).

25   Accordingly, the Debtor submits that bi-monthly payments to AT&T constituting current

26   outstanding usage for the relevant interval time frames, and the ability to ability to obtain an

27   expedited hearing upon 20 days' default constitutes adequate assurance to AT&T.  As noted

28

1   above, the Debtor has specifically budgeted for payments to AT&T in its concurrently filed cash

2   collateral motion.

3                                              IV.

4                                         CONCLUSION

5           As noted above, at this critical time and given the nature of the Debtor's business,

6   uninterrupted electricity, gas, water, and similar services are essential to the Debtor's ongoing

7   operations.  Any interruption, however brief, in utility or other services to the Debtor will

8   irreparably disrupt the Debtor's business operations.  It is therefore critical that the Court

9   prohibit the Utility Companies or AT&T from altering, refusing, or discontinuing service to the

10  Debtor.  The Deposit for each of the Utility Companies and with AT&T, coupled with the

11  streamlined mechanism for requesting further adequate assurance described herein, provide

12  adequate assurance of payment to the Utility Companies, while safeguarding the Debtor's

13  continuing business operations.  For the foregoing reasons, the Debtor respectfully requests this

14  Court grant the relief requested in the Motion.

15
    Dated: March 12, 2010                 CLARKSON, GORE & MARSELLA, APLC
16

17                                   By   /s/  Scott C. Clarkson
                                         _____
18                                       Scott C. Clarkson
                                         Eve A. Marsella
19                                       Christine M. Fitzgerald
                                         [Proposed] Attorneys for ConnectTo Communications, Inc.
20                                       Debtor and Debtor in Possession

21

22

23

24

25

26                                               .

27

28

                              13    Emergency Motion re Utilities and AT&T

## DECLARATION OF ARAKSIYA NADJARIAN

I, Araksiya Nadjarian, declare as follows:

2. I am the CEO of ConnectTo Communications, Inc., (the "Debtor"). I have direct supervisory responsibilities over the financial affairs and operations of the Debtor. I have reviewed the appropriate books and records of the Debtor which are maintained and obtained in the ordinary course of business, and have personal knowledge of the matters set forth herein because of that review or because of direct personal knowledge. If called upon as a witness in this case, I would and could testify competently thereto.

3. On March 12, 2010 (the "Petition Date"), the Debtor filed a voluntary petition under Chapter of the Bankruptcy Code. Under 11 U.S.C. §§ 1107 and 1108, the Debtor has remained in possession of all of its assets and continues to operate and manage its business as a debtor-in-possession during the pendency of the Chapter 11 case. The Debtor previously filed a voluntary Chapter 11 bankruptcy petition on November 30, 2009, Case No.: 2:09-bk-43560-VZ. This case was converted to a Chapter 7 on January 25, 2010, and was dismissed on March 12, 2010. Unfortunately the Debtor was the victim of an attorney who held himself out as an experienced bankruptcy attorney, and performed none of the services required of him. His incompetence caused the conversion of the previous chapter 11 bankruptcy to Chapter 7. The current Debtor's counsel, an experienced bankruptcy law firm, attempted to conduct an out-of-court work-out with AT&T; however, AT&T refused to engage in any discussions with the Debtor. This caused the re-filing of the instant bankruptcy case.

4. The Debtor incorporated in the state of Nevada on May 19, 2004 and is registered to do business in the state of California.

5. The Debtor is a telecommunications company and services approximately 20,000 customers by reselling local telecommunications service purchased in bulk from Pacific Bell Telephone Company, doing business as AT&T California, and from Verizon. The Debtor also provides long distance and ISP services. Approximately 80% of the Debtor's

1   customers are low income.  The service the Debtor provides to its low income customers is

2   significantly subsidized by the California Public Utilities Commission (PUC).  As a result of

3   the failure of the CA PUC to timely provide the promised subsidies, the Debtor fell behind

4   on its payment to AT&T.  The Debtor receives essential utility services, including but not

5   limited to, gas, electric, and power services, from the Utility Companies, as follows:

6

7

8

9

10

| Name of Utility | Description | Last 4 digits of account number |
|---|---|---|
| The Gas Company | Gas | 5437 |
| City of Glendale Water & Power | Water and Power | 7207 |

11

12       The Debtor's average total utility charges are estimated to be approximately

13   $1,125.17 per month.  No amounts are presently owed to any company providing utility

14   service to the Debtor.

15       6.  I am advised that AT&T is not a utility provider for purposes of Section 366;

16   however, uninterrupted business with AT&T is critical to the Debtor's business.  The

17   Debtor's average monthly charges with AT&T are estimated to be approximately $120,000

18   per month.  The Debtor presently owes AT&T approximately $940,000.  The Debtor has a

19   deposit with AT&T of approximately $65,000.

20       7.  Historically, the Debtor generally paid its regular monthly utility obligations within

21   thirty days following the date they were due.  With respect to this Chapter 11 case, the

22   Debtor anticipates having adequate cash on hand to meet necessary postpetition operating

23   expenses on a current basis, including payments to the Utility Companies and AT&T.  The

24   Debtor has specifically budgeted for payments to the Utility Companies and AT&T in the

25   context of the proposed financing and cash collateral stipulations separately filed in this

26   case.

27       8.  The Debtor is not the end user of AT&T's services.  The Debtor here resells the

28

1   services provided by AT&T to its customers.

2        I declare under penalty of perjury under the laws of the United States of America

3   that the above is true and correct and that this Declaration was executed on March 12, 2010

4   in Los Angeles County, California.

5

6                                   /s/ Araksiya Nadjarian

7                                   Araksiya Nadjarian

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

EXHIBIT "A"



2 of 100 DOCUMENTS

**IN RE COMM SOUTH COMPANIES, INC., DEBTOR**

**BANKRUPTCY CASE NO. 03-39496 HDH-11**

**UNITED STATES BANKRUPTCY COURT FOR THE NORTHERN DISTRICT OF TEXAS, DALLAS DIVISION**

*2003 Bankr. LEXIS 2314*

**November 10, 2003, Decided**

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** A Chapter 11 debtor filed a motion seeking the entry of an order that a telecommunications company was not a **utility** covered by *11 U.S.C.S. § 366*.

**OVERVIEW:** The debtor, a competitive local exchange carrier, provided local and long distance telephone service to pre-paid phone service customers. The debtor obtained telecommunications services on a wholesale basis from the company and other entities known as incumbent local exchange carriers, which it then sold on a retail basis to its own customers. The company argued that it was a **utility** covered by *§ 366* and that it was entitled to the special protections provided it under *§ 366*. The court held that, although the company in general was a **utility,** meeting the definition of **utility** in one capacity did not necessarily mean that the company was a **utility** with respect to the debtor in the bankruptcy case for purposes of *§ 366*. The court held that the company was not a **utility** vis-a-vis the debtor because it did not provide essential services to the debtor, but rather only provided a commodity on a wholesale basis to the debtor that was also a **utility** and that resold that commodity to a retail customer.

**OUTCOME:** The court granted the motion, finding that the company was not a **utility** covered by *§ 366*.

**LexisNexis(R) Headnotes**

*Bankruptcy Law > Case Administration > Administrative Powers > Utility Services*
[HN1] See *11 U.S.C.S. § 366*.

*Bankruptcy Law > Case Administration > Administrative Powers > Utility Services*
[HN2] Under *11 U.S.C.S. § 366*, any executory contract between a debtor and a **utility** covered by *§ 366* receives special treatment. The **utility** may not exert its clout as the debtor's sole source of vital **utility** service to extort payment. In exchange for such protections, however, the debtor must, early in the case, provide assurance that it will be able to pay for **utility** service as it goes along.

*Bankruptcy Law > Case Administration > Administrative Powers > Utility Services*
[HN3] *11 U.S.C.S. § 366* addresses the provision by a public **utility** of an essential service to a debtor that is used by a debtor as a service. *Section 366* does not address the provision by a **utility** of a commodity on a wholesale basis to a debtor that is also a **utility** that resells that commodity to a retail customer.

**COUNSEL:** [*1] For Comm South Companies, Inc., dba Alabama Comm South Corp., dba, Arkansas Comm South, Inc., dba, Florida Comm South, dba, Altair Communications, Inc., dba, Kansas Comm South, dba, Kentucky Comm South, Inc., dba, Mississippi Comm South, dba, Missouri Comm South, Inc., dba, E-Z Tel, Inc., dba, South Companies of Virginia, Debtor: Shaw Pittman, LLP, Washington, DC; Andrea L. Hermer, Stewart & Irwin, P.C., Indianapolis, IN; Joe E. Marshall, Munsch, Hardt, Kopf & Harr, P.C., Dallas, TX; Kimberly S. Fineman, Kyle J. Mathews, Michael H. Ahrens, Sarah

M. Stuppi, Stuart Craig Stuppi, Terrance Ponsford, Sheppard Mullin Richter & Hampton, LLP, San Francisco, CA; Michael I. Spiker, Goodwin & Goodwin, LLP, Charleston, WV.

For Marla Reynolds, Trustee: Charles M. Cobbe, David L. Campbell, Campbell and Cobbe, Dallas, TX; Claude D. Smith, Campbell & Cobbe, P.C., Dallas, TX.

For UST U.S. Trustee, U.S. Trustee: Victoria B. Tutterrow, Office of the United States Trustee, Dallas, TX.

**JUDGES:** HONORABLE HARLIN D. HALE, UNITED STATES BANKRUPTCY JUDGE.

**OPINION BY:** HONORABLE HARLIN D. HALE

**OPINION**

**MEMORANDUM OPINION ON EMERGENCY MOTION FOR ORDER DEEMING CERTAIN ENTITIES AS NON-UTILITIES OR, ALTERNATIVELY DEEMING UTILITIES ADEQUATELY ASSURED [*2] OF FUTURE PERFORMANCE AND ESTABLISHING PROCEDURES FOR DETERMINING ADEQUATE ASSURANCE OF FUTURE UTILITY PAYMENTS**

**The Parties**

The Debtor, Comm South, Inc., known as a competitive local exchange carrier ("CLEC"), provides local and long distance telephone service to pre-paid phone service customers. The Debtor obtains telecommunications services on a wholesale basis from Verizon and other entities known as incumbent local exchange carriers ("ILECs"), which it then sells on a retail basis to its own customers. The operating subsidiaries of Verizon Communications, Inc. ("Verizon") provide the telecommunications services to the Debtor for resale pursuant to a contract negotiated by the parties and entered into on or about September 16, 2002.

**Procedure**

On September 19, 2003, the Debtor filed a petition for relief under Chapter 11 of the Bankruptcy Code. The Debtor seeks the entry of an order of this Court that Verizon is not a "**utility**" for purposes of *§ 366 of the Bankruptcy Code*. [1] Verizon objected, arguing that it is a **utility** covered by *Bankruptcy Code § 366* and that it is entitled to the special protections provided it under that provision. Thus, the issue is whether an ILEC that provides [*3] telecommunications services on a wholesale basis to a CLEC for resale to the CLEC's customers is a "**utility**" governed by *§ 366 of the Bankruptcy Code*.

1    The Debtor filed an Emergency Motion for Order Deeming Certain Entities as Non-**utilities** or, Alternatively Deeming **Utilities** Adequately Assured of Future Performance and Establishing Procedures for Determining Adequate Assurance of Future **Utility** Payments (the "Motion").

**Utilities Covered by *§ 366 of the Bankruptcy Code***

In determining whether Verizon should be considered a "**utility**" for purposes of *§ 366 of the Bankruptcy Code*, the Court must first look to the precise language of the statute, *see, U.S. v. Ron Pair Enterprises, Inc., 489 U.S. 235, 242, 109 S. Ct. 1026, 1031, 103 L. Ed. 2d 290 (1989)*. *Section 366* provides,

[HN1] (a) Except as provided in subsection (b) of this section, a **utility** may not alter, refuse, or discontinue service to, or discriminate against, the trustee or the debtor solely on the basis of the commencement of a case under this title or that a debt owed by the debtor to such **utility** for service rendered before the order for relief was not paid when due.

(B) Such **utility** may alter, refuse, or discontinue service if neither [*4] the trustee nor the debtor, within 20 days after the date of the order for relief, furnishes adequate assurance of payment, in the form of a deposit or other security, for service after such date. On request of a party in interest and after notice and a hearing, the court may order reasonable modification of the amount of the deposit or other security necessary to provide adequate assurance of payment.

*11 U.S.C. § 366.* [HN2] Under this special provision of the Bankruptcy Code, any executory contract between a debtor and a **utility** covered by the section receives special treatment. *See, In re Tel-Central Communications, Inc., 212 B.R. 342, 346 (Bankr. W.D. Mo. 1997)*(noting that the bankruptcy court in *In re Gehrke, 57 B.R. 97, 98 (Bankr. D. Or. 1985)*, "ruled that *section 366* and not *section 365* governs written agreements for the furnishing of utilities."). The **utility** may not exert its clout as the debtor's sole source of vital **utility** service to extort payment. *See generally, In re One Stop Realtour Place, Inc., 268 B.R. 430, 435-38 (Bankr. E.D. Pa. 2001)*. In exchange for such protections, however, the debtor must, early in the case, provide assurance that it will be able to pay for **utility** [*5] service as it goes along. *Id.*

Neither *§ 366* nor any other provision of the Bankruptcy Code, however, defines the term "**utility.**" Black's Law Dictionary defines a **utility** as "a business enterprise that performs essential public service that is subject to government regulation." Black's Law Dictionary at 1544 (7th ed. 1999). Other cases have looked to the ordinary meaning of the term "**utility**" in addressing whether a particular entity is a **utility** for purposes of *§ 366. See, e.g., In re One Stop Realtour Place, Inc., 268 B.R. 430, 435 (Bankr. E.D. Pa. 2001).*

Clearly, Verizon, a provider of telecommunications services to the public that is regulated by the state and federal governments, is a **utility.** However, meeting the definition of **utility** in one capacity does not necessarily mean that Verizon would be a **utility** with respect to *this* Debtor, in *this* bankruptcy case, for purposes of *§ 366.*

**Verizon's Argument**

Verizon cites the legislative history in support of its position and notes that the Debtor cites the same language in support of its position. The legislative history cited by both parties provides,

> This section is intended to cover **utilities** that have some special position with respect [*6] to the debtor, such as an electric company, gas supplier, or telephone company that is a monopoly in the area so that the debtor cannot easily obtain comparable service from another **utility.**

S. Rep. No. 95-989. Verizon points out that the legislative history indicates that *§ 366* is intended to cover **utilities** that have a "special position" with the debtor and then asserts that the Debtor's argument that Verizon does not maintain a "special position" with them is refuted by the Debtor's claims in its Motion that "the failure to maintain service from [Verizon] will cause [Comm South] to lose it going concern value" and "[w]ithout [Verizon's] ongoing service, [Comm South] will have to shut down and liquidate." Verizon Objection, P 16, pp. 7-8 (citing Comm South's Motion at p. 3).

These claims of the Debtor are not contradictory of its position that Verizon is not a **utility** entitled to the special protections of *§ 366.* The Debtor's position simply recognizes that Verizon is a major supplier to the Debtor, on a wholesale basis, of a commodity that the Debtor sells to its customers and that the cessation of the provision of such commodity would have a significant detrimental impact on its [*7] business. Thus, while the provisioning of telecommunications services by Verizon to this Debtor is "essential" to the continuation of the

Debtor's business, the same could be said of the provisioning by a wholesaler of any commodity to any other debtor that relies on that wholesaler for a substantial percentage of the debtor's "inventory" that the debtor retails to its customers.

After reviewing the language of both the statute and the legislative history, this Court finds that [HN3] *§ 366* addresses the provision by a public **utility** of an essential *service* to a debtor that is used by a debtor as a *service.* Section 366 does not address the provision by a **utility** of a commodity on a wholesale basis to a debtor that is also a **utility** that resells that commodity to a retail customer.

**Application of *§ 366* to Verizon?**

Here, Verizon provides telecommunications services to the Debtors, not for the Debtor's own use, but for the resale by the Debtor to its customers, the end users. The contracts between Verizon and the Debtor, in fact, specifically prohibit the Debtor from using the telecommunications services provided by Verizon under the contract for its own use. Paragraph 1 of the Resale Attachment [*8] to the contract between Verizon and the Debtor provides, in part, "Verizon shall provide to Comm South, in accordance with this Agreement (including, but not limited to, Verizon's applicable Tariffs) and the requirements of Applicable Law, Verizon's Telecommunications Services *for resale* by Comm South," and P 2 of the Resale Attachment provides,

> Verizon Telecommunications Services to be purchased by Comm South for other purposes (including, but not limited to, Comm South's own use) must be purchased by Comm South pursuant to other applicable Attachments to this Agreement (if any), or separate written agreements, including, but not limited to, applicable Verizon Tariffs.

Verizon's own description of its contracts with the Debtor recognizes that the Debtor's customers, not the Debtors, are the end users of the telecommunications services provided under the contract. *See,* Verizon Objection, P 10, p. 5 ("The interconnection agreements between the Debtors and Verizon establish the terms, conditions and pricing under which Verizon will provide the Debtors with access to Verizon's network and under which the Debtors do resell Verizon's local telephone service *for the benefit of the Debtor's* [*9] *end user customers.*")(Emphasis added). Thus, the relationship between Verizon and the Debtor is not one of **utility** to consumer (which would clearly be governed by *§ 366 of*

the *Bankruptcy Code*), but rather one of **utility** wholesaler to **utility** retailer.

In its Objection, Verizon implores the Court to "disregard the Debtors' arguments that Verizon is not a "**utility**" and - consistent with other bankruptcy courts throughout the country - treat the Debtors' obligations to Verizon as obligations that arise under *Section 366 of the Bankruptcy Code*." Verizon Objection, P 5, p. 3. Verizon cites two published cases that involve orders from bankruptcy courts relating to the provisioning by an ILEC of telecommunications services to a CLEC debtor. Verizon Objection, P 27, pp. 12-13 (citing, *inter alia, In re Tel-Central Communications, Inc., 212 B.R. 342 (Bankr. W.D. Mo. 1997)* and *In re Sun-Tel Communications, Inc., 39 B.R. 10 (Bankr. S.D. Fla. 1984)).* Neither of the cases, however, involved a contest of the specific issue before this Court.

In fact, Verizon's reliance on *Tel-Central* is misplaced. Verizon argues that the court in *Tel-Central* "not[ed] that it entered preliminary order finding that [*10] a telecommunications service provider was a '**utility**' under *Section 366* where such entity provided services to a reseller." Verizon Objection, P 27, p.13. However, a closer reading of the case indicates that the court took great pains to point out that it had "for the limited purpose of establishing the security deposit, . . . *temporarily* ruled against [the ILEC] on the issue of whether [the ILEC] is a '**utility**' within the meaning of *section 366*." *Tel-Central, 212 B.R. at 343.* The court in *Tel-Central* also noted that "[u]pon reviewing additional evidence in future proceedings the Court may find that [the ILEC] is not a **utility** . . . ." *Id. at 347.* It was thus not so clear to the *Tel-Central* court that an ILEC that provides telecommunications services to a CLEC for resale, although clearly a **utility** in the ordinary sense of the word, would also be a "**utility**" covered by the special provisions of *§ 366 of the Bankruptcy Code.*

The *Sun-Tel* case, also relied upon by Verizon, provides little support for Verizon's position. First, there is no indication in the *Sun-Tel* opinion that the issue was even contested. In *Sun-Tel,* the bankruptcy court addressed whether a security deposit that had been [*11] required of the debtor, a CLEC, for continued telecommunications services by an ILEC should be reduced based on the debtor's assertions that it could not afford to pay the deposit. For all that is apparent from the face of the opinion, the debtors could have consented at the earlier hearing (out of which the security deposit was ordered) that the ILEC in that case was a **utility** for purposes of *§ 366*. Thus, the bankruptcy court's order affirming the amount of the security deposit that it had previously ordered is not particularly probative of the issue before this court: whether an ILEC should be treated as a **utility** for purposes of *§ 366 of the Bankruptcy Code* when the debtor contests such treatment.

Verizon claims that "virtually all CLECs and other debtors in the telecommunications industry that obtain telecommunications services from Verizon have asserted that Verizon is a '**utility**' within the meaning of *Section 366*." Verizon Objection, P 28, p. 13. The Court has no reason to doubt that assertion. As Verizon points out, the debtors in those cases have taken such positions "in part, no doubt, because they wished to continue receiving such services from Verizon without interruption." [*12] *Id.* Verizon cited several examples of cases throughout the country where debtors have filed motions recognizing that Verizon is a "**utility**" covered by *Section 366* ranging from *In re Coserv* before Judge Lynn of the bankruptcy court for this district to *In re Worldcom, Inc.* in New York. However, the fact that *those* debtors *consented* to such treatment of Verizon under *§ 366 of the Bankruptcy Code* does not, and should not, bind *this* Debtor, which, for reasons of its own, has sought an order from this Court declaring that Verizon is not a **utility** for purposes of *§ 366*.

## Conclusion

The plain meaning of the statute, the legislative history, and the contracts between the parties all lead to the conclusion that the relationship between the Debtor and Verizon under the contracts is not covered by *Bankruptcy Code § 366*. What this means for the Debtor, Verizon, and this bankruptcy case will be determined as the case proceeds. Verizon and the Debtor must look to the more general executory contract provision in *§ 365 of the Bankruptcy Code* tempered by the stay provisions of *§ 362.*

Based on the foregoing, the Court finds that, under the contracts at issue, Verizon is not a "**utility**" vis-a-vis this Debtor [*13] for purposes of *§ 366 of the Bankruptcy Code.* The provisioning of telecommunications services by Verizon to the Debtor is pursuant to executory contracts, which are governed by *§ 365 of the Bankruptcy Code.*

Debtor's counsel shall submit by November 21, 2003, a proposed order, agreed to by counsel for Verizon as to form, that is consistent with the Court's findings herein.

Signed this 10 day of November, 2003.

/s/ Harlin D. Hale

HONORABLE HARLIN D. HALE

UNITED STATES BANKRUPTCY JUDGE

| In re:<br>ConnectTo Communications, Inc.<br><br>Debtor(s) and<br>Debtors in Possession | CHAPTER 11<br><br>CASE NUMBER: 2:10-bk-19227-VZ |
|---|---|

**NOTE:** When using this form to indicate service of a proposed order, **DO NOT** list any person or entity in Category I. Proposed orders do not generate an NEF because only orders that have been entered are placed on the CM/ECF docket.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:

3424 Carson Street, Suite 350, Torrance, CA 90503

A true and correct copy of the foregoing document described **EMERGENCY MOTION FOR ORDER (1) PROHIBITING UTILITIES FROM ALTERING, REFUSING, OR DISCONTINUING SERVICE, AND (2) ESTABLISHING PROCEDURES FOR DETERMINING ADEQUATE ASSURANCE OF PAYMENT FOR FUTURE UTILITY SERVICES AND FOR PROVIDING ADEQUATE ASSURANCE OF PAYMENT TO AT&T;  MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF; DECLARATION IN SUPPORT THEREOF** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner indicated below:

**I.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On  I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:

☐                                                                Service information continued on attached page

**II.  SERVED BY U.S. MAIL OR OVERNIGHT MAIL** (indicate method for each person or entity served): On  I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be</u> completed no later than 24 hours after the document is filed.

**See attached Service List**

☒                                                                Service information continued on attached page**.**

**SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL** (indicate method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on  I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on the judge <u>will be</u> completed no later than 24 hours after the document is filed.
**See attached Service List**

☒     Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| March 12, 2010 | Brenda L. Campos | *[signature]* |
|---|---|---|
| *Date* | *Type Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*January 2009*                                                                                      **F 9013-3.1**

| In re:<br>   ConnectTo Communications, Inc. | | CHAPTER 11 |
| --- | --- | --- |
| | Debtor(s) and<br>Debtors in Possession | CASE NUMBER: 2:10-bk-19227-VZ |

## SERVICE LIST

### Served Via Fed Ex

### U.S. Trustee
Dare Law
725 S. Figueroa St. 26th Floor
Los Angeles, CA 90017

### Judge
Vincent P. Zurzolo
255 E. Temple St. Suite 1360
Los Angeles, CA 90012

## TOP 20 CREDITORS

### Served via Fax or E-Mail

AT&T
c/o Pillsbury, Winthrop, Shaw, Pittman, LLP
Mark Houle   mark.houle@pillsburylaw.com
David Tabibian  david.tabibian@pillsburylaw.com
Dave Egan  de5269@att.com

Hi-Tech Gateway
Attn: Armen
(208)275-1818

Global Crossing Tel Cable
Attn: David Gagliardi
(585) 324-4054

Cedar Point Communications, Inc
Attn: Joe Santiago
(603)898-3090

HCI, Inc.
Mirau, Edwards, Cannon, Lewin & Tooke
William Tooke, Esq.   wtooke@mechlaw.com

U.S.Colo, LLC
Rick Fisher  rick@uscolo.com

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*January 2009*     **F 9013-3.1**

| In re:<br>ConnectTo Communications, Inc.<br><br>Debtor(s) and<br>Debtors in Possession | CHAPTER 11<br>CASE NUMBER: 2:10-bk-19227-VZ |
| --- | --- |

Equant LLC
+7 495 620 9484  (Russia)

Solix
Thomas Carroll  tcarroll@solixinc.com

Emdeon Buisness Services
Bill Roberts broberts@emdeon.com

Ethos
Josh Ploude  jp@ethoscg.net

Verisign
Jackie Bauer
(360) 493-6184

East West Bank
Doug Krause Agent for Service of Process
Doug.krause@eastwestbank.com

Verizon Business
Natalie Bannister   Natalie.bannister@verizonbusiness.com

Verizon Business
Stephanie Fowler- Dunn
c-stephanie.fowler@verizonbusiness.com

Pac-West
Pauline Wickstrom  pwickstr@pacwest.com

Billsoft Services
Joe Wolf   jwolf@billsoft.com

Rocket Internetworking
Brian Hinds
(562) 432-6096

MM Internet
Brian Hinds
(562) 432-6096

Check-O-Matic
(800) 466-1395

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

January 2009                                                                                            F 9013-3.1

| In re:<br>ConnectTo Communications, Inc.<br><br>Debtor(s) and<br>Debtors in Possession | CHAPTER  11<br><br>CASE NUMBER:  2:10-bk-19227-VZ |
| --- | --- |

Telepacific Communications
(213) 666-9680

MPower Communicatios
blear@telepacific.com

## UTILITIES

### Served via Fax or E-mail

The Gas Company
Attn: Edward Lee BK Clerk
(213)244-8345

City of Glendale Power and Water
(818) 240-9418

## SECURED CREDITORS WITH AN INTEREST IN CASH COLLATERAL

### Served via Fax or E-mail

Wells Fargo Bank, N.A.
c/o Ed Miller
(951) 296-1776
emiller@dfflaw.com

Wilshire State Bank
Anil Sah
anilsah@wilshirebank.com

John Choy, Esq.
Wilshire State Bank
213-384-4888
johnchoi@kpcylaw.com

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

January 2009                                                                                                F 9013-3.1

| In re:<br>   ConnectTo Communications, Inc.<br><br>                                Debtor(s) and<br>                         Debtors in Possession | CHAPTER  11<br><br>CASE NUMBER:  2:10-bk-19227-VZ |

## SECURED CREDITOR

### Served via Fax or E-mail

Landmark Financial
c/o Irwin M. Wittlin
(818) 501-3800
iwittlin@hemar-rousso.com

## OTHER CREDITORS

### Served via Fax or E-mail

Franchise Tax Board
916-845-9799

Local IRS Office
213-627-1528

LA County Tax Collector
213-633-5004

State of California Employment Development Dept
916-464-3504

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*January 2009*                                                                                                    **F 9013-3.1**