1  SCOTT C. CLARKSON, ESQ. SBN 143271
   EVE A. MARSELLA, ESQ. SBN 165797
2  CHRISTINE M. FITZGERALD, ESQ. SBN 259014
3  CLARKSON, GORE & MARSELLA
   A PROFESSIONAL LAW CORPORATION
4  3424 Carson Street, Suite 350
   Torrance, California 90503
5  (310) 542-0111 Telephone
   (310) 214-7254 Facsimile
6
7  [Proposed] Attorneys for ConnectTo Communications,
   Inc., Debtor and Debtor in Possession
8
9
                  UNITED STATES BANKRUPTCY COURT
10
                  CENTRAL DISTRICT OF CALIFORNIA,
11
                     LOS ANGELES DIVISION
12

| | |
|---|---|
| In Re | Case No. 2:10-bk-19227-VZ |
| **ConnectTo Communications, Inc.** a Nevada corporation, | Chapter 11 |
| Debtor in Possession. | **EMERGENCY MOTION FOR ORDER AUTHORIZING DEBTOR TO (1) HONOR AND PAY ACCRUED EMPLOYEE WAGES AND CONTRIBUTIONS; (2) MAKE PAYMENTS FOR WHICH PAYROLL DEDUCTIONS WERE MADE AND (3) PAY ALL COSTS INCIDENT TO THE FOREGOING; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION OF ARAKSIYA NADJARIAN IN SUPPORT THEREOF** |
| | Date:    TBD Time:    TBD Ctrm:    1368 |

TO THE HONORABLE VINCENT P. ZURZOLO, UNITED STATES

BANKRUPTCY JUDGE, SECURED CREDITORS, CREDITORS HOLDING THE

TWENTY LARGEST UNSECURED CLAIMS, AND THE OFFICE OF THE UNITED

STATES TRUSTEE:

    ConnectTo Communications Inc., Chapter 11 Debtor and Debtor in Possession (the

1  "Debtor"), pursuant to Local Bankruptcy Rule 2081-1, hereby moves the Court for entry of an

2  order authorizing the Debtor to (1) pay accrued employee wages and unpaid benefit plan

3  contributions, (2) make payments for which payroll deductions were made and, (3) pay all costs

4  incident to the foregoing  (the "Motion").

5      The Debtor by this Motion specifically requests that the Court allow the Debtor to (1)

6  honor pre-petition payroll checks for the period of February 13, 2010 through February 26, 2010

7  in the amount of $13,261.43 (consisting of $9,652.58 in wages and $3,608.85 of withholding)

8  and (2) pay pre-petition wages for the period of February 27, 2010 through March 12, 2010 in

9  the amount of $12,326.15 (consisting of $9,267.52 in wages and $3,058.90 of withholding)

10  **A.    SUMMARY**

11      The Motion[1] seeks authority to honor previously issued checks to non-insider employees

12  and to make payroll payments and cost reimbursements to employees in conformity with

13  standard practice and the ordinary course of the Debtor's business.  The Motion requests that the

14  Court (1) authorize the Debtor, in its sole discretion, to pay certain pre-petition accrued

15  employee wages, salaries or other compensation, (2) authorize the Debtor to make all payments

16  for which pre-petition payroll deductions were made, (3) pay all costs incident to the foregoing

17  and (4) grant such other and further relief as the Court deems just and proper.

18      The Motion is brought on an emergency basis pursuant to Local Bankruptcy Rule 2081-1,

19  based upon the Debtor's immediate, critical business need to honor personnel policies and pay

20  wages and related claims to induce employees to remain in the Debtor's employ.  If the

21  employees are not paid, they will likely not continue working, and the Debtor's business

22  operations will be impaired.  Uninterrupted continuation of the Debtor's business operations will

23  maximize the Debtor's ability to successfully emerge from chapter 11.

24  **B.    BACKGROUND**

25

26  [1] The Motion is based upon the accompanying Memorandum of Points and Authorities, the
   Declaration of Araksiya Nadjarian, and all relevant documents filed in the Case, as well as any
27  additional evidence which may be presented at or before the hearing on the Motion.

28

1   The Debtor incorporated in the state of Nevada on May 19, 2004 and is registered to do

2   business in the state of California.  The Debtor is a telecommunications company and services

3   approximately 20,000 customers by reselling local telecommunications service purchased in bulk

4   from Pacific Bell Telephone Company, doing business as AT&T California, and from Verizon.

5   The Debtor also provides long distance and ISP services.  Approximately 80% of the Debtor's

6   customers are low income.  The service the Debtor provides to its low income customers is

7   significantly subsidized by the California Public Utilities Commission (PUC).  As a result of the

8   failure of the CA PUC to timely provide the promised subsidies, the Debtor fell behind on its

9   payment to AT&T.  The Debtor filed a voluntary Chapter 11 bankruptcy petition on November

10  30, 2009, Case No.: 2:09-bk-43560-VZ.  This case was converted to a Chapter 7 on January 25,

11  2010, and was dismissed on March 12, 2010.  Unfortunately the Debtor was misguided in the

12  previous Chapter 11 bankruptcy by a non-bankruptcy practicing attorney, who performed few or

13  no services for the Debtor, which lead to conversion and dismissal of the pervious bankruptcy

14  case. Further, AT&T, the Debtor's largest service provider, refused to engage with the Debtor in

15  an out-of-bankruptcy workout, which has lead to re-filing the instant bankruptcy case.

16  **C.    DISCUSSION**

17  On March 12, 2010 ("Petition Date"), the Debtor filed a voluntary petition under chapter

18  11 of title 11 of the United States Code.  Under 11 U.S.C. §§ 1107 and 1108, the Debtor has

19  remained in possession of all of its assets and continues to operate and manage its business as a

20  debtor in possession during the pendency of its Chapter 11 case ("Case").

21  At the time the Case was commenced, Debtor had approximately eleven (11) non-insider

22  employees ("Employee[s]")and owed, or will owe $25,587.58 in wages (and withholding) for

23  prepetition services for two periods, the first being February 13, 2010 to February 26, 2010, and

24  the second period being February 27, 2010,  to March 12, 2010.  All Employees are still

25  employed with the Debtor.  None of the Employees set out in this motion are insiders.  The

26  prospect for reorganization is high and payment of these pre-petition obligations will not render

27  the estate administratively insolvent.  This is evidenced by the budget, attached hereto as **Exhibit**

28

1  "A".  The budget indicates that the Debtor's estimated income for March 2010 is $174,170.00,

2  $317,170.00 for April, $323,170.00 for May, $329,170.00 for June, $364,170.00 for July,

3  $370,170.00 for August, and $376,170.00 for September.  After all proposed paid expenses

4  (including these wages), for March 2010, Debtor will have approximately $16,027.58 cash on

5  hand, $11,330.52 for April, $12,633.46 for May, $14,936.40 for June, $47,239.34 for July,

6  $85,542.28 for August, and $129,845.22 for September.  The Debtor anticipates continuing cash

7  flow sufficient to meet all of its post-petition ordinary and necessary operating expenses

8  (including secured creditor payments to provide adequate assurance) during the next six months

9         The Motion seeks authority to pay and honor certain pre-petition employment related

10  obligations. As is set forth below, adequate staffing of the Debtor's business is absolutely

11  essential to the Debtor's ability to operate without substantial disruption.  Due to the timing of

12  the commencement of the Case, certain Employee-related obligations accrued, but were unpaid,

13  prior to the filing of this Case. If the Debtor is not permitted to meet all payroll-related

14  obligations in the ordinary course of business, the Debtor will suffer unmanageable staff turnover

15  to the detriment of all creditors. Accordingly, for reasons amplified below, the Debtor

16  respectfully requests that the Court grant the Motion.

17         **1.     Pre-petition Personnel Policies**

18         As of the Petition Date, the Debtor employed approximately eleven employees who

19  performed services for the Debtor. The Debtor's workforce includes hourly, salaried and hourly

20  employees.  The Employees are paid according to payroll schedules which vary, depending on

21  whether the Employees are salaried or hourly Employees.  As of the Petition Date, the

22  Employees had accrued, unpaid compensation, deductions and benefits.  These payroll items are

23  described in relative detail below.

24         **2.     Compensation**

25         The Debtor pays its Employees bi-weekly, two weeks in arrears.  Thus, Employees are

26  owed for the period of March 1, 2010 through March 12, 2010, with the next payroll occurring

27  on March 26, 2010.   The Petition Date fell during a normal Employee payroll cycle. Thus, all

28

1  Employees are due their normal wages for the two week period prior to the Petition Date.

2   The Debtor estimates that, as of the Petition Date, approximately $12,326.15 in Pre-

3  petition Compensation had accrued but remained unpaid. Prior to the filing of the Petition on

4  March 12, 2010, the Debtor issued checks to non-insiders totaling $13,261.43, for the February

5  13 – 26, 2010.  As a note, the Debtor is not including estimates of the cash value of accrued

6  Employee holiday, vacation and sick time as of the Petition Date.  Employees who hold accrued

7  vacation, holiday and sick time are not entitled to receive the cash value at this time, and the

8  Debtor does not seek authority to deviate from the norm.

9    **3.** **Payroll Deductions and Administrative Fees**

10   In addition to Pre-petition Compensation, as of the Petition Date, the Debtor made

11  deductions from certain Employees' paychecks for payroll taxes and other similar programs on

12  account of which the Debtor deducts money from an Employee's paycheck and remits the funds

13  to a third party (collectively, "Deductions").

14   The Deductions represent funds that the Debtor is not entitled to hold for any protracted

15  period, since the Debtor holds these amounts in trust and the Employees hold a direct claim

16  against such funds (the "Trust Funds").  The Debtor seeks authority to remit all the Trust Funds

17  to the proper payee, which total for the two remaining pre-petition periods $6,667.75.

18   Pre-petition Compensation, and Deductions, were due and owing as of the Petition Date

19  because, among other things, and many payroll checks issued to Employees prior to the Petition

20  Date have not yet been presented for payment or have not yet cleared the banking systems and

21  accordingly were not honored and paid as of the Petition Date. Additionally, due to the timing of

22  the commencement of the case, Employees accrued pre-petition wages for which payment would

23  otherwise be made Post-petition.

24   The Debtor must be allowed to pay Pre-petition Compensation, and Deductions, in the

25  regular course of business. If there is any interruption in the Debtor's compensation of its

26  Employees for work performed, the Employees may suffer extreme personal hardship and, in

27  many cases, be unable to meet their living expenses. The inevitable consequence include

28

1 company resentment, loss of goodwill and disintegration of Employee morale. These factors

2 would most certainly have an adverse affect upon the Debtor's operational efficiency. At this

3 critical early stage in the Case, the Debtor cannot risk the substantial disruption to its business

4 operations.

5   The total dollar value of the requested payments is relatively *de minimis* when compared

6 to the size of the Chapter 11 estate ("Estate") and the importance of Employees' continued

7 service. Moreover, **absolutely all** of the pre-petition Compensation which the Debtor requests

8 authority to pay are entitled to priority payment under §§507(a)(4) and (5) of the Bankruptcy

9 Code[2]. The Debtor has made a determination that such payment will not have an adverse impact

10 on the Debtor's cash flow or will not otherwise have a detrimental effect on the Debtor's

11 ongoing operations or ability to reorganize.

12   Debtor seeks authority, in its discretion, to pay outstanding Pre-petition Compensation,

13 and Deductions. The Debtor requests authority to pay all such amounts in the ordinary course of

14 the Debtor's business as long as the Employee continues to provide services to the Debtor. The

15 Debtor also requests authority to pay all costs incident to Pre-petition Compensation, Benefits

16 and Deductions, such as payroll-related taxes and processing costs, if any. Finally, the Debtor

17 requests authority to reimburse Employee Business Expenses. For the reasons set forth below,

18 the Debtor believes that the relief requested is necessary and appropriate under the

19 circumstances.

20 **D. THE COURT HAS THE AUTHORITY PURSUANT TO §105(a) OF THE**

21 **BANKRUPTCY CODE TO GRANT THE RELIEF REQUESTED HEREIN**

22   Pursuant to §105 of the Bankruptcy Code, "the court may issue any order, process, or

23 judgment that is necessary or appropriate to carry out the provisions of this title." The basic

24 purpose of §105(a) is to "enable a court to do whatever is necessary to aid in their jurisdiction, in

25 anything arising in or relating to a bankruptcy case." 2 *Collier on Bankruptcy* ¶105.2 at 105-4

26

_____

27 [2] Unless otherwise indicated, all section (including §) references are to the "Bankruptcy Code"

28 title 11, United States Code § 101, et. seq.

1   (15th ed.1988). Essentially, §105(a) codifies the bankruptcy court's inherent equitable powers.

2   *See In re Feit & Drexler, Inc.*, 760 F.2d 406 (2nd Cir. 1985).

3        Where business exigencies require, courts have exercised their equitable power under

4   §105(a) to authorize debtors to pay pre-petition claims of particular creditors. *In re Ionosphere*

5   *Clubs, Inc.*, 98 B.R. 174 (Bankr. S.D.N.Y. 1989). Courts have labeled this power the "Necessity

6   of Payment Doctrine". The "Necessity of Payment Doctrine" empowers a court to authorize a

7   debtor to pay pre-petition claims essential to continued operations. *Id.* at 175-76, *citing*

8   *Miltenberger v. Logansport, C. & S.W.R. Co.*, 106 U.S. 286 (1982):

9

10       The "necessity of payment" doctrine permits immediate payment of claims of
    creditors where those creditors will not supply services or materials essential to
    the conduct of the business until their prereorganization claims have been paid.

11

12  *Ionosphere Clubs*, 98 B.R. At 176, *quoting In re Leigh and New England Railway Company*, 657

13  F.2d 570, 581 (3rd Cir. 1981). This doctrine applies in all chapter 11 cases because the "rationale

14  for the necessity of payment rule, *i.e.*, facilitating the continued operation and rehabilitation of

15  the debtor ... is...a paramount goal of chapter 11." *Ionosphere Clubs*, 98 B.R. At 176, *citing*

16  *Dudley v. Mealey,* 147 F.2d 268 (2nd cir. 1945), *cert. Den'd,* 325 U.S. 873 (1945). Therefore,

17  where continued operation and rehabilitation of a debtor require payment of pre-petition wages,

18  the court may authorize such payment under §105(a) of the Bankruptcy Code.

19       For example, in *In re James A. Phillips, Inc.*, 29 B.R. 391, 394 (S.D.N.Y. 1983), the

20  district court recognized the "special status" of suppliers holding unstated lien rights, and

21  authorized the debtor to pay their claims in the ordinary course of their business activities. *See,*

22  *also, In re Dave Noake, Inc.*, 45 B.R. 555 (Bankr. D.Vt. 1984) (rejecting a challenge under §549

23  to Post-petition payments made to creditor holding lien rights under local law). Similarly, one

24  former bankruptcy judge recognized that when "confronted with special circumstances.

25  Particularly in the early stages of the case, a court may preserve the potential for rehabilitation."

26  Ordin, *Finality of Order of Bankruptcy Court*, 54 AM. Bankr. L.J. 173 (1980).

27       In addition, the bankruptcy court for the Southern District of Texas authorized

28

1    Continental Airlines Corporation ("Continental"), a debtor in possession, to pay approximately

2    $4 million in pre-petition obligations owed to Continental's foreign creditors.  Continental urged

3    that such action was necessary "to maintain a continued and uninterrupted flow of repair and

4    maintenance services, supplies and necessaries in order to meet their current operating needs and

5    thereby continued their foreign airline business operations." *In re Continental Airlines*

6    *Corporation, et al.*, Order dated September 29, 1983, Chapter 11 Case No. 83-0419-H2-5

7    (Bankr. S.D. Tex.). Similarly, in *In re Gulf Air, Inc.*, 112 B.R. 152 (Bankr. W.D. La. 1989), the

8    Court noted that cases decided both under the Bankruptcy Act and the Bankruptcy Code

9    endorsed the Necessity of Payment Doctrine so long as, absent such payment, "there is a risk that

10    the services of key Employees will be lost to the debtor and without such Employees, the ability

11    of the debtor to reorganize will be impaired." *Id.*

12       For a number of reasons, the Bankruptcy Code affords special treatment to certain pre-

13    petition employee claims. Compared to a typical claim in bankruptcy, wages represent a large

14    part of an Employee's wealth. In addition, unlike an ordinary trade creditor, the typical

15    Employee does not have other sources of income and thus cannot diversify the risk of the

16    employers default.

17       As set forth in the accompanying Declaration of Araksiya Nadjarian, the Debtor believes

18    that the Employees may resign if they are not paid the Pre-petition Compensation, Benefits and

19    Deductions, in full, and in a timely fashion. The Employees, who work at low levels of income,

20    require their paychecks to live on a week to week basis.  Further, the current Employees must be

21    retained in order to ensure this reorganization case.  These Employees are intimately familiar

22    with the Debtor's operations and are essential to a successful reorganization.  Therefore, the

23    failure to pay the Employees for pre-petition services will likely result in severe disruptions to

24    the operation of the Debtor's business, to the detriment of the creditors of the Debtor's Estate.

25       Additionally, payment of the great majority of the Pre-petition Compensation and

26    Benefits is justified because all of those wages and benefits are granted a priority payment right

27    under the Bankruptcy Code. Under Bankruptcy Code §507(a)(4) each Employee may be granted

28

1 a priority claim for:

2

3    allowed unsecured claims, but only to the extent of $ 10,950.00 for each individual or corporation, as the case may be, earned within 180 days before the date of the filing of the petition or the date of the cessation of the Debtor's

4    business, whichever occurs first, for

5      (A) wages, salaries, or commission, including vacation, severance, and sick leave pay earned by an individual; or

6

7      (B) sales commissions earned by an individual or by a corporation with only 1 Employee, acting as an independent contractor in the sale of goods or services for the debtor in the ordinary course of the debtor's business if, and only

8    if, during the 12 months preceding that date, at least 75 percent of the amount that the individual or corporation earned by acting as an independent contractor in the

9    sale of goods or services was earned from the debtor.

10 11 U.S.C. §507(a)(4). Likewise, Employees may ultimately be granted a priority claim for:

11    contributions to an Employee benefit plan –

12      (A) arising from services rendered within 180 days before the date of the filing of the petition or the date of the cessation of the debtor's business,

13    whichever occurs first; but only

14      (B) for each such plan, to the extent of -

15        (i) the number of Employees covered by each such plan multiplied by $10,800, less

16

17        (ii) the aggregate amount paid to such Employees under paragraph (4) of this subsection, plus the aggregate amount paid by the estate on behalf of such Employees to any other Employee benefit plan.

18

19 11 U.S.C. §507(a)(5).

20    Since the Pre-petition Compensation which Debtor seeks to pay was earned within 180

21 days of the commencement of the Case, Employees' claims for payment of such compensation

22 are entitled to priority pursuant to §507(a)(4). Additionally, subject to the statutory cap, a

23 significant portion of the Benefits are entitled to priority pursuant to §507(a)(5) because they

24 represent contributions to Employee benefit plans arising from services rendered within 180 days

25 of the Petition Date.

26    Finally, the Deductions and certain of the Benefits represent funds that the Debtor is not

27 entitled to hold for any protracted period, since the Debtor effectively holds these amounts in

28

1  trust and the Employees themselves hold a direct claim against such funds.  Because it is

2  unlikely that, whatever the outcome of this Case, the Debtor will ultimately be required to

3  disgorge funds equivalent to the amount of the Trust Funds, there is ample justification for the

4  payment of the Trust Funds to, or on behalf of, the Employees in the ordinary course of the

5  Debtor's business.

6  <center>**CONCLUSION**</center>

7    To maintain the continuity and to preserve the morale of Employees, the Debtor must be

8  permitted to pay the Pre-petition Compensation, Deductions and Pre-petition Benefits, and to

9  honor their Employee personnel policies in the ordinary course of business.  Approval of the

10  payments sought herein will avoid hardship to the Debtor's Employees and maintain the viability

11  of the Debtor's business.  For the foregoing reasons, the Debtor respectfully requests this Court

12  grant the relief requested in the Motion.

13

14  Dated: March 12, 2010     CLARKSON, GORE & MARSELLA, APLC

15          By /s/ Scott C. Clarkson

16           Scott C. Clarkson
         Eve A. Marsella

17           Christine M. Fitzgerald
         [Proposed] Attorneys for ConnectTo Communications, Inc.

18           Debtor and Debtor in Possession

19

20

21

22

23

24

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### DECLARATION OF ARAKSIYA NADJARIAN

I, Araksiya Nadjarian, declare as follows:

1.   I am the Chief Executive Officer of ConnectTo Communications, Inc., (the "Debtor").  I have direct supervisory responsibilities over the financial affairs and operations of the Debtor as they relate to the human resources department.  I have reviewed the relevant books and records of the Debtor which are maintained and obtained in the ordinary course of business, and have personal knowledge of the matters set forth here because of that review or because of direct personal knowledge.  If called upon as a witness in this case, I would and could testify competently thereto.

2.   I make this Declaration to support the preceding Motion.  For the sake of brevity I adopt the definitions contained in the Motion.

3.   On March 12, 2010 (the "Petition Date"), the Debtor filed a voluntary petition under Chapter of the Bankruptcy Code.  Under 11 U.S.C. §§ 1107 and 1108, the Debtor has remained in possession of all of its assets and continues to operate and manage its business as a debtor-in-possession during the pendency of the Chapter 11 case.  The Debtor filed a voluntary Chapter 11 bankruptcy petition on November 30, 2009, Case No.: 2:09-bk-43560-VZ.  This case was converted to a Chapter 7 on January 25, 2010, and was dismissed on March 12, 2010. Unfortunately the Debtor was misguided in the previous bankruptcy, which has lead to the filing of the instant bankruptcy case.

4.   The Debtor incorporated in the state of Nevada on May 19, 2004 and is registered to do business in the state of California.

5.   The Debtor is a telecommunications company and services approximately 20,000 customers by reselling local telecommunications service purchased in bulk from Pacific Bell Telephone Company, doing business as AT&T California, and from Verizon.  The Debtor also provides long distance and ISP services.  Approximately 80% of the Debtor's customers are low income.  The service the Debtor provides to its low income customers is significantly subsidized by the California Public Utilities Commission (PUC).  As a result of the failure of the CA PUC

1   to timely provide the promised subsidies, the Debtor fell behind on its payment to AT&T.

2      6.  As indicated in the Motion, adequate staffing of the Debtor's business is absolutely

3   essential to the Debtor's ability to operate without substantial disruption.  Due to the timing of

4   the commencement the Case, certain Employee-related obligations accrued, but were unpaid,

5   prior to the filing of the Case. If the Debtor is not permitted to meet all payroll-related

6   obligations in the ordinary course of business, the Debtor will suffer unmanageable staff turnover

7   to the detriment of all creditors.

8      7.  The Debtor by this Motion specifically requests that the Court allow the Debtor to (1)

9   honor pre-petition payroll checks for the period of February 13, 2010 through February 26, 2010

10   in the amount of $13,261.43 (consisting of $9,652.58 in wages and $3,608.85 of withholding)

11   and (2) pay pre-petition wages for the period of February 27, 2010 through March 12, 2010 in

12   the amount of $12,326.15 (consisting of $9,267.52 in wages and $3,058.90 of withholding). At

13   the time the Case was commenced, Debtor had approximately eleven (11) employees and owed

14   approximately $approximately $26,000.00 in wages for prepetition services ("Employee[s]").

15   All Employees are still employed with the Debtor.  None of the Employees are insiders.

16      8.  The prospect for reorganization is high and payment of these pre-petition obligations will

17   not render the estate administratively insolvent.  This is evidenced by the budget that I created,

18   attached hereto as **Exhibit "A"**.  The budget indicates that the Debtor's estimated income for

19   March 2010 is $174,170.00, $317,170.00 for April, $323,170.00 for May, $329,170.00 for June,

20   $364,170.00 for July, $370,170.00 for August, and $376,170.00 for September.  After all

21   proposed paid expenses, for March 2010, Debtor will have approximately $16,027.58 cash on

22   hand, $11,330.52 for April, $12,633.46 for May, $14,936.40 for June, $47,239.34 for July,

23   $85,542.28 for August, and $129,845.22 for September.  The Debtor anticipates continuing cash

24   flow sufficient to meet all of its post-petition ordinary and necessary operating expenses

25   (including secured creditor payments to provide adequate assurance) during the next six months

26      9.  The Debtor pays its Employees bi-weekly, two weeks in arrears. The Petition Date fell

27   during a normal Employee payroll cycle. Thus, all Employees are due their normal wages for the

28

1    period prior to the Petition Date.

2        10. In addition to Pre-petition Compensation, as of the Petition Date, the Debtor made

3    deductions from certain Employees' paychecks for payroll taxes and other similar programs on

4    account of which the Debtor deducts money from an Employee's paycheck and remits the funds

5    to a third party (collectively, "Deductions").  The Deductions represent funds that the Debtor is

6    not entitled to hold for any protracted period, since the Debtor holds these amounts in trust and

7    the Employees hold a direct claim against such funds (the "Trust Funds").  The Debtor seeks

8    authority to remit all the Trust Funds to the proper payee. The Debtor estimates that, as of the

9    Petition Date, approximately $7,000.00 in Deductions accrued and were unpaid.

10        12.    It goes without saying that any cessation in Employee benefits will cause many to

11   simply walk out; the negative effect on the Debtor would be irreversible.

12        I declare under penalty of perjury under the laws of the United States of America that the

13   above is true and correct and that this Declaration was executed on March 12, 2010 in Los

14   Angeles County, California.

15                                        /S/Araksiya Nadjarian
                                         Araksiya Nadjarian
16

17

18

19

20

21

22

23

24

25

26

27

28

EXHIBIT "A"

MONTHLY CASH FLOW PROJECTION

| | 3/15/2010 | 04/01/10 | 05/01/10 | 06/01/10 | 07/01/10 | 08/01/10 | 09/01/10 | NOTES | Usage Based |
|---|---|---|---|---|---|---|---|---|---|
| **1. CASH ON HAND** | | | | | | | | | |
| (Beginning of month) | 14,060.73 | 16,027.58 | 11,330.52 | 12,633.46 | 14,936.40 | 47,239.34 | 85,542.28 | 1 | |
| **2. CASH RECEIPTS** | | | | | | | | | |
| (a) Anticipated Customer Payments | 124,000.00 | 255,000.00 | 258,000.00 | 261,000.00 | 264,000.00 | 268,000.00 | 272,000.00 | 2 | |
| (b) Receivables received post petition | 170.00 | 170.00 | 170.00 | 170.00 | 170.00 | 170.00 | 170.00 | 3 | |
| (c) USAC | 45,000.00 | 45,000.00 | 47,000.00 | 49,000.00 | 50,000.00 | 51,000.00 | 52,000.00 | 4 | |
| (d) CABS | 5,000.00 | 17,000.00 | 18,000.00 | 19,000.00 | 20,000.00 | 21,000.00 | 22,000.00 | 5 | * |
| (e) Loan or Other Cash Injection | | | | | 30,000.00 | 30,000.00 | 30,000.00 | 6 | |
| **3. TOTAL CASH RECEIPTS** | | | | | | | | | |
| [2a + 2b + 2c + 2d + 2e =3] | 174,170.00 | 317,170.00 | 323,170.00 | 329,170.00 | 364,170.00 | 370,170.00 | 376,170.00 | | |
| **4. TOTAL CASH AVAILABLE** | | | | | | | | | |
| [Before cash out (1 + 3) | 188,230.73 | 333,197.58 | 334,500.52 | 341,803.46 | 379,106.40 | 417,409.34 | 461,712.28 | | |
| **5. CASH PAID OUT** | | | | | | | | | |
| (a) Office Rent | - | 4,188.84 | 4,188.84 | 4,188.84 | 4,188.84 | 4,188.84 | 4,188.84 | | |
| (b) Payroll | 18,802.47 | 37,604.93 | 37,604.93 | 37,604.93 | 37,604.93 | 37,604.93 | 37,604.93 | 7 | |
| (c) Payroll Processing | 135.00 | 135.00 | 135.00 | 135.00 | 135.00 | 135.00 | 135.00 | | |
| (d) Blue Cross | - | 3,500.00 | 3,500.00 | 3,500.00 | 3,500.00 | 3,500.00 | 3,500.00 | 8 | * |
| (e) Bank Fees | 857.60 | 1,715.20 | 1,715.20 | 1,715.20 | 1,715.20 | 1,715.20 | 1,715.20 | | |
| (f) Utilities | - | 1,125.17 | 1,125.17 | 1,125.17 | 1,125.17 | 1,125.17 | 1,125.17 | 9 | * |
| (g) Utility Deposit | 1,125.17 | | | | | | | | |
| (h) Office Supplies | 750.00 | 1,300.00 | 1,300.00 | 1,300.00 | 1,300.00 | 1,300.00 | 1,300.00 | 10 | |
| (h) Billing | 8,252.39 | 8,252.39 | 8,252.39 | 8,252.39 | 8,252.39 | 8,252.39 | 8,252.39 | 11 | * |
| (i) Telecom Professionals | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 12 | |
| (j) Sprint | 1,174.39 | 1,174.39 | 1,174.39 | 1,174.39 | 1,174.39 | 1,174.39 | 1,174.39 | 13 | |
| (k) Internet | 4,270.70 | 4,270.70 | 4,270.70 | 4,270.70 | 4,270.70 | 4,270.70 | 4,270.70 | 14 | * |
| (l) Hi-Tech Gateway | - | 30,000.00 | 30,000.00 | 30,000.00 | 30,000.00 | 30,000.00 | 30,000.00 | | |
| (m) US Collo | 3,150.00 | 3,150.00 | 3,150.00 | 3,150.00 | 3,150.00 | 3,150.00 | 3,150.00 | | |
| (n) Telecom Services | - | 7,922.00 | 7,922.00 | 7,922.00 | 7,922.00 | 7,922.00 | 7,922.00 | | |
| (o) Tax Escrow | 8,000.00 | 8,000.00 | 8,000.00 | 8,000.00 | 8,000.00 | 8,000.00 | 8,000.00 | 15 | * |
| (p) International Termination | 55,000.00 | 70,000.00 | 70,000.00 | 75,000.00 | 80,000.00 | 80,000.00 | 80,000.00 | 16 | |
| (q) Verizon | - | 2,622.14 | 2,622.14 | 2,622.14 | 2,622.14 | 2,622.14 | 2,622.14 | 17 | * |
| (r) AT&T | 40,235.43 | 120,706.30 | 120,706.30 | 120,706.30 | 120,706.30 | 120,706.30 | 120,706.30 | 18 | * |
| (s) Landmark Lease | 22,500.00 | 7,500.00 | 7,500.00 | 7,500.00 | 7,500.00 | 7,500.00 | 7,500.00 | 19 | |
| (t) Miscellaneous Expense | 750.00 | 1,500.00 | 1,500.00 | 1,500.00 | 1,500.00 | 1,500.00 | 1,500.00 | 20 | |
| (u) Subtotal | 166,003.15 | 315,667.06 | 315,667.06 | 320,667.06 | 325,667.06 | 325,667.06 | 325,667.06 | | |
| **LEGAL AND ACCOUNTING FEES** | | | | | | | | | |
| (v) Legal Fees | 3,000.00 | 3,000.00 | 3,000.00 | 3,000.00 | 3,000.00 | 3,000.00 | 3,000.00 | | |
| (w) Accounting Services | 700.00 | 700.00 | 700.00 | 700.00 | 700.00 | 700.00 | 700.00 | 21 | |
| **PAYMENTS TO SECURED CREDITORS** | | | | | | | | | |
| (x) Wilshire State Bank | 2,000.00 | 2,000.00 | 2,000.00 | 2,000.00 | 2,000.00 | 2,000.00 | 2,000.00 | 22 | |
| (y) Wells Fargo Bank | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 23 | |
| **6. TOTAL CASH PAID OUT** | | | | | | | | | |
| [Total 5a thru 5y] | 172,203.15 | 321,867.06 | 321,867.06 | 326,867.06 | 331,867.06 | 331,867.06 | 331,867.06 | | |
| **7. CASH POSITION** | | | | | | | | | |
| [End of month] (4 minus 6) | 16,027.58 | 11,330.52 | 12,633.46 | 14,936.40 | 47,239.34 | 85,542.28 | 129,845.22 | | |

ConnectTo Communications, Inc.
Case No.: 2:10-bk-19227-VZ
Notes for Budget

\* Expenses that are usage may increase or decrease significantly depending on the Debtor's business.

1. The current cash on hand is as of March 12, 2010. This does not reflect employee payments in approximately $24,800.65 and a deposit of approximately $19,000.00 from customer payments.
2. These amounts are estimates based on the Debtor's previous customers payments
3. These amounts are estimates, the Debtor anticipates on receiving approximately $170.00/month on outstanding accounts receivable.
4. These amounts are estimates for the Federal Low Income Reimbursement, and are based on the Debtor's anticipated number of customers. The Debtor anticipates that the number should increase approximately $1,000.00 every month.
5. These amounts are estimates for Wholesale Income. This number is based on costumer use and the Debtor's anticipates the number to increase proportionally with the number of costumers.
6. This amount is an estimate of the anticipated CA Low Income Reimbursement from the Public Utilities Commission for claims submitted after March 2010. The amount varies from $30,000 to $90,000.
7. The payroll includes all amounts for employees and insiders, and payroll and workers compensation insurance.
8. Blue Cross provides medical insurance for the Debtor's employees.
9. These amounts represent estimated expenses for the following utilities: Gas ($48.17/month) and Water and Power ($1,077.00/month). These amounts represent an average of past monthly expenses.
10. These amounts are estimates miscellaneous office supplies (i.e. paper, envelopes, stamps, etc.)
11. These amounts represent estimated expenses for the following: Billsoft Billing Service ($2,526.16/month); Emdeon Bill Printing Service ($4,726.23/month); and Ethos ($1,000.00/month).
12. Telecom Professionals provides administrative and regulatory support for the Debtor.
13. These amounts represent estimated expenses for Sprint NEXTEL Techs ($542.56/month); and Sprint PCS ($631.83/month). The Sprint services provide wireless service to the Debtor.
14. These amounts represent estimated expenses for Time Warner ($1,722.02/month) and Sonic ($2,548.68/month).
15. These funds are placed into an account for Telecom Taxes and then distributed to the appropriated governmental agency or unit.
16. International Termination provides long distance termination service for the Debtor.
17. These amounts represent estimated expenses for the following: Verizon ($1,718.93/month); Verizon Local ($138.21/month); and Verizon Internet ($765.00/month).

18. These amounts represent estimated expenses for the following: AT&T U-Verse Interest ($86.96/month); DSL Line Charge ($9,582.91/month); DSL ($10,300.00/month); Collocation ($2,917.93/month); LWC ($79,597.17/month); and UNB ($18,221.33/month).

19. The Debtor has a lease with Landmark for Zhone Technologies equipment.  The payment for March 2010 in the amount of $22,500.00 for 3 months of past due payments.  The payments for April 2010 through September 2010, in the amount of $7,500.00 represent monthly payments on an ongoing basis.

20. The Debtor anticipates that it may need to employ and incur fees for accounting services.

21. This category is for anticipated miscellaneous expenses that may arise during the ordinary operation of the Debtor's business.

22. This is an estimate of monthly interest payments owed to Wilshire State Bank based on the Debtor's last interest payment of $1,777.29/month and may be subject to change

23. This is an estimate of monthly interest payments owed to Wells Fargo Bank based on the Debtor's last interest payment of $407.37/month and may be subject to change.

| In re:                          | CHAPTER 11                        |
|                                 |                                   |
| ConnectTo Communications, Inc.  | CASE NUMBER: 2:10-bk-19227-VZ     |
|                    Debtor(s) and |                                   |
|              Debtors in Possession |                                 |

**NOTE:** When using this form to indicate service of a proposed order, **DO NOT** list any person or entity in Category I. Proposed orders do not generate an NEF because only orders that have been entered are placed on the CM/ECF docket.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:

3424 Carson Street, Suite 350  Torrance, CA 90503

A true and correct copy of the foregoing document described **EMERGENCY MOTION FOR ORDER AUTHORIZING DEBTOR TO (1) HONOR AND PAY  ACCRUED EMPLOYEE WAGES AND CONTRIBUTIONS; (2) MAKE PAYMENTS FOR WHICH PAYROLL DEDUCTIONS WERE MADE AND (3) PAY ALL COSTS INCIDENT TO THE FOREGOING; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION OF ARAKSIYA NADJARIAN IN SUPPORT THEREOF** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner indicated below:

I.  **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On  I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:

☐                                                   Service information continued on attached page

II.  **SERVED BY U.S. MAIL OR OVERNIGHT MAIL**(indicate method for each person or entity served)**:**
On **March 12, 2010**  I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.
**See Attached Service List**

☒                                                   Service information continued on attached page.

**SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL** (indicate method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on  I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on the judge will be completed no later than 24 hours after the document is filed
**See Attached Service List**

☒                                                   Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| March 12,  2010 | Brenda L. Campos | _[signature]_ |
| Date            | Type Name        | Signature     |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

January 2009                                                                                      F 9013-3.1

| In re:                                ConnectTo Communications, Inc. | CHAPTER 11 |
|---|---|
| Debtor(s) and Debtors in Possession | CASE NUMBER: 2:10-bk-_____-VZ |

## SERVICE LIST

### Served Via Fed Ex

#### U.S. Trustee
Dare Law
725 S. Figueroa St. Suite 2600
Los Angeles, CA 90017

#### Judge
Vincent P. Zurzolo
255 E. Temple St. Suite 1360
Los Angeles, CA 90012

## TOP 20 CREDITORS

### Served via Fax or E-Mail

AT&T
c/o Pillsbury, Winthrop, Shaw, Pittman, LLP
Mark Houle  mark.houle@pillsburylaw.com
David Tabibian  david.tabibian@pillsburylaw.com
Dave Egan  de5269@att.com

Hi-Tech Gateway
Attn: Armen
(208)275-1818

Global Crossing Tel Cable
Attn: David Gagliardi
(585) 324-4054

Cedar Point Communications, Inc
Attn: Joe Santiago
(603)898-3090

HCI, Inc.
Mirau, Edwards, Cannon, Lewin & Tooke
William Tooke, Esq.    wtooke@mechlaw.com

U.S.Colo, LLC
Rick Fisher  rick@uscolo.com

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

January 2009                                                                                            **F 9013-3.1**

| In re:<br><br>ConnectTo Communications, Inc.<br><br>Debtor(s) and<br>Debtors in Possession | CHAPTER 11<br><br>CASE NUMBER: 2:10-bk-_____-VZ |
| --- | --- |

Equant LLC
+7 495 620 9484  (Russia)

Solix
Thomas Carroll  tcarroll@solixinc.com

Emdeon Buisness Services
Bill Roberts broberts@emdeon.com

Ethos
Josh Ploude  jp@ethoscg.net

Verisign
Jackie Bauer
(360) 493-6184

East West Bank
Doug Krause Agent for Service of Process
Doug.krause@eastwestbank.com

Verizon Business
Natalie Bannister    Natalie.bannister@verizonbusiness.com

Verizon Business
Stephanie Fowler- Dunn
c-stephanie.fowler@verizonbusiness.com

Pac-West
Pauline Wickstrom  pwickstr@pacwest.com

Billsoft Services
Joe Wolf   jwolf@billsoft.com

Rocket Internetworking
Brian Hinds
(562) 432-6096

MM Internet
Brian Hinds
(562)432-6096

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

_January 2009_                                                                          **F 9013-3.1**

| In re:<br><br>ConnectTo Communications, Inc.<br><br>Debtor(s) and<br>Debtors in Possession | CHAPTER 11<br><br>CASE NUMBER: 2:10-bk-_____-VZ |
|---|---|

Check-O-Matic
(800) 466-1395

Telepacific Communications
(213) 666-9680

MPower Communicatios
blear@telepacific.com

## SECURED CREDITORS WITH AN INTEREST IN CASH COLLATERAL

### Served via Fax or E-mail

Wells Fargo Bank, N.A.
c/o Ed Miller
(951) 296-1776
emiller@dfflaw.com

Wilshire State Bank
Anil Sah
(213) 427-2062
anilsah@wilshirebank.com

John Choi, Esq.
213-384-4888
johnchoi@kpcylaw.com

## SECURED CREDITOR

Landmark Financial
c/o Irwin M. Wittlin
(818) 501-3800
iwittlin@hemar-rousso.com

National City Commercial
c/o Steven Glass sglass@glassgoldberg.com

## OTHER CREDITORS

Franchise Tax Board
916-845-9799

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*January 2009*                                                                                    **F 9013-3.1**

| In re:<br><br>ConnectTo Communications, Inc.<br><br>Debtor(s) and<br>Debtors in Possession | CHAPTER 11<br><br>CASE NUMBER: 2:10-bk-_____-VZ |
| --- | --- |

Local IRS Office
213-627-1528

LA County Tax Collector
213-633-5004


State of California Employment Development Dept
916-464-3504

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*January 2009*

**F 9013-3.1**