1  PILLSBURY WINTHROP SHAW PITTMAN LLP
   CRAIG A. BARBAROSH (State Bar No. 160224)
2  craig.barbarosh@pillsburylaw.com
   MARK D. HOULE (State Bar No. 194861)
3  mark.houle@pillsburylaw.com
   DAVID TABIBIAN (State Bar No. 251719)
4  david.tabibian@pillsburylaw.com
   725 South Figueroa Street, Suite 2800
5  Los Angeles, California 90017-5406
   Telephone: (213) 488-7100
6  Facsimile:  (213) 629-1033

7
   Attorneys for Creditor,
8  Pacific Bell Telephone Company d/b/a AT&T California

9
                    UNITED STATES BANKRUPTCY COURT
10
                    CENTRAL DISTRICT OF CALIFORNIA
11
                         (LOS ANGELES DIVISION)
12

13  _____

14  In re:                                Case No. 2:10-bk-19227-VZ

15  ConnectTo Communications, Inc.,       Chapter 11

16           Debtor.                       **MEMORANDUM OF POINTS
                                           AND AUTHORITIES IN
17                                         SUPPORT OF AT&T'S MOTION
                                           FOR RELIEF FROM THE
18                                         AUTOMATIC STAY UNDER 11
                                           U.S.C. § 362**

19                                         [Filed Concurrently with Declaration
                                           of David J. Egan in Support of
20                                         Motions; Declaration of Mark D.
                                           Houle in Support of Motions;
21                                         Request for Judicial Notice in
                                           Support of Motions]
22
                                           DATE:     TBD
23                                         TIME:     TBD
                                           PLACE:    Courtroom 1368
24                                                   Roybal Federal Building
                                                     255 E. Temple Street
25                                                   Los Angeles, CA 90012

26  _____

27

28

# **Table of Contents**

**Page**

I.      INTRODUCTION ................................................................................................ 1

II.     FACTUAL BACKGROUND ............................................................................. 4

    A.      Contractual Relationship Between AT&T And Debtor ......................... 4

    B.      Procedural History ................................................................................ 4

    C.      Debtor's Outstanding Debt Owed To AT&T ....................................... 7

III.    RELIEF FROM STAY IS WARRANTED UNDER SECTION 362(D)(1)
       FOR "CAUSE" ................................................................................................. 8

    A.      "Cause" Defined .................................................................................... 8

    B.      The Facts Of This Case Satisfy The Ninth Circuit Standard For A
        Finding Of "Bad Faith" ...................................................................... 10

    C.      The Petition Constitutes A Serial Filing In Further Evidence Of "Bad
        Faith" .................................................................................................. 13

    D.      A Finding Of "Bad Faith" Does Not Require A Showing Of Actual
        Fraud, Only An Improper Purpose ..................................................... 15

    E.      The Debtor's Burden Of Proof ........................................................... 16

IV.     CONCLUSION ................................................................................................ 17

MEMO OF POINTS AND AUTHORITIES IN SUPPORT
OF AT&T'S MOTION FOR RELIEF FROM STAY
CASE NO.: 2:10-bk-19227-VZ

# **Table of Authorities**

**Page(s)**

<u>Cases</u>

In re ACI Sunbow, LLC,
    206 B.R. 213 (Bankr. S.D. Cal. 1997)......................................................................... 9

In re Albany Partners, Ltd.,
    749 F.2d 670 (11th Cir. 1984) ................................................................................ 9

In re Arnold,
    806 F.2d 937 (9th Cir. 1986) ........................................................................ 9, 10, 11

In re Burns,
    169 B.R. 563 (Bankr. W.D. Pa. 1994)..................................................................... 13

In re Can-Alta Properties, Ltd.,
    87 B.R. 89 (9th Cir. BAP 1988) ............................................................................ 11

In re Coones Ranch, Inc.,
    138 B.R. 251 (Bankr. D.S.D. 1991) ....................................................................... 13

In re Curtis,
    40 B.R. 795 (Bankr. D. Utah 1984) ....................................................................... 16

In re Delray Assoc. Ltd. Partnership,
    212 B.R. 511 (Bankr. D. Md. 1997) ....................................................................... 13

In re Eighty South Lake, Inc.,
    63 B.R. 501, 508 (Bankr. C.D. Cal. 1986),
    <u>aff'd</u>, 81 B.R. 580 (9th Cir. BAP 1987) ................................................................. 16

In re Family Health Services, Inc.,
    104 B.R. 279 (Bankr. C.D. Cal. 1989) ................................................................... 11

In re Grieshop,
    63 B.R. 657 (N.D. Ind. 1986) ............................................................................... 15

In re Hammonds,
    139 B.R. 535 (Bankr. D. Colo. 1992)..................................................................... 13

In re Holly's Inc.,
    140 B.R. 643 (Bankr. W.D. Mich. 1992) .................................................................. 9

In re Kemble,
    776 F.2d 802 (9th Cir. 1985) .................................................................................. 9

In re Leavitt,
    171 F.3d 1219 (9th Cir. 1999) .......................................................................... 15, 16

In re Littlecreek Development Co.,
    779 F.2d 1068 (5th Cir. 1986) ........................................................................... 9, 10

In re Loeb Apartments, Inc.,
    89 F.2d 461 (7th Cir. 1937) ........................................................................... 9

In re Mazzeo,
    167 F.3d 139 (2d Cir. 1999) ......................................................................... 9

In re Missouri Flats Assoc.,
    86 B.R. 634 (Bankr. E.D. Cal. 1988) ....................................................... 11

In re N.R. Guaranteed Retirement, Inc.,
    112 B.R. 263 (Bankr. N.D. Ill.),
    aff'd, 119 B.R. 149 (N.D. Ill 1990) ........................................................ 10

In re Natural Land Corp.,
    825 F.2d 296 (11th Cir. 1987) ..................................................................... 9

In re Powers,
    135 B.R. 980 (Bankr. C.D. Cal. 1991) ........................................... 9, 15, 16

In re Rainbow Magazine, Inc.,
    136 B.R. 545 (9th Cir. BAP 1991) ......................................................... 11

In re Southern California Sound Systems, Inc.,
    69 B.R. 893 (Bankr. S.D. Cal. 1987) ................................................. 11, 12

In re Spectee Group, Inc.,
    185 B.R. 146 (Bankr. S.D.N.Y. 1995) ..................................................... 13

In re Stolrow's, Inc.,
    84 B.R. 167 (9th Cir. BAP 1988) ............................................................ 11

In re Texas State Optical, Inc.,
    188 B.R. 552 (Bankr. E.D. Tex. 1995) ..................................................... 9

In re Thirtieth Place, Inc.,
    30 B.R. 503 (9th Cir. BAP 1983) ............................................................ 17

In re Tuscon Estates, Inc.,
    912 F.2d 1162 (9th Cir. 1990) ..................................................................... 9

In re Unioil,
    54 B.R. 192 (Bankr. Colo. 1985).............................................................. 16

In re Universal Life Church, Inc.,
    127 B.R. 453 (E.D. Cal.  1991) ................................................................. 9

In re Victory Construction, Co.,
    9 B.R. 549 (Bankr. C.D. Cal. 1981) .......................................................... 9

In re Waldron,
    785 F.2d 936 (11th Cir. 1986) .................................................................. 15

In re Walter,
    108 B.R. 244 (Bankr. C.D. Cal. 1989) ............................................... 11, 12

iii

In re Yukon Enterprises, Inc.,
    39 B.R. 919 (Bankr. C.D. Cal. 1984) ........................................................... 9, 10, 17

Marsch v. Marsch (In re Marsch),
    36 F.3d 825 (9th Cir. 1994) ........................................................................... 10, 11

Nationsbank of Virginia v. DCI Pub. of Alexandria,
    160 B.R. 538 (E.D. Va. 1993) ................................................................................ 9

### Statutes and Codes

11 United States Code
    Section 362(d) ......................................................................................... 8, 9, 16, 17

11 United States Code
    Section 362(d)(1)................................................................................... 8, 9, 10, 17

11 United States Code
    Section 362(g) ..................................................................................................... 16

### Other Authorities

Collier on Bankruptcy,
    1112.04[8] (15th ed. Rev. 2000) ............................................................................ 16

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

601111059v1

MEMO OF  POINTS AND AUTHORITIES IN SUPPORT
OF AT&T'S MOTION FOR RELIEF FROM STAY
CASE NO.: 2:10-bk-19227-VZ

1    Creditor PACIFIC BELL TELEPHONE COMPANY d/b/a AT&T

2    CALIFORNIA ("AT&T") hereby submits its Memorandum of Points and

3    Authorities in Support of its Motion for Relief from the Automatic Stay,

4    against the above-entitled debtor and debtor-in-possession CONNECTTO

5    COMMUNICATIONS ("Debtor").

6    **I.    INTRODUCTION**

7    This chapter 11 case was filed by the Debtor in bad faith, and thus

8    "cause" exists to grant relief from the automatic stay to AT&T.  Through this

9    serial bankruptcy filing, Debtor has had enough bites of the apple at the

10    expense of AT&T and the Debtor's other creditors.  Indeed, the sole purpose

11    of this second bankruptcy case (on the eve of dismissal of the prior case) is to

12    avoid payment to AT&T and frustrate AT&T's valid and legal efforts to

13    terminate its contracts with Debtor.

14    As this Court is aware, Debtor previously filed a chapter 11 case ("Prior

15    Case") on November 30, 2009 ("Original Petition Date").  The Prior Case was

16    converted to chapter 7 on January 25, 2010, based upon the U.S. Trustee's

17    motion to convert for multiple filing deficiencies.  Ultimately, Debtor filed a

18    motion to dismiss the Prior Case on the express basis that "Debtor will be able

19    to pay its bills and sustain its business outside of chapter 7…."  Dismissal

20    Motion (defined below), page 9, lines 7-14.

21    AT&T sought relief from stay in the Prior Case on the basis of the

22    Debtor's failure to make any material payments on account of the growing

23    post-petition debt owing to AT&T.  However, the February 16, 2010 hearing

24    on AT&T's prior relief from stay motion was continued by the Court for one

25    month to March 16, 2010, in part upon Debtor's counsel's oral request that he

26    was newly engaged for less than two weeks (as Debtor's second bankruptcy

27

28

counsel), and in order to allow Debtor's new counsel an opportunity to respond to AT&T's relief from stay motion.

Importantly, during the term of the Prior Case, from November 30, 2010, to March 12, 2010, Debtor continued to use services provided by AT&T in an amount in excess of $450,000.00, but during that entire three and one half month period Debtor only made one payment to AT&T in the *de minimus* amount of approximately $59,000.

On March 11, 2010, one day prior to entry of the Order dismissing the Prior Case, Debtor contacted AT&T with a woefully insufficient and ambiguous payment proposal, and moreover threatened AT&T that it would immediately re-file a chapter 11 if AT&T did not agree that AT&T would not seek to terminate the contracts between the parties.  AT&T refused to acquiesce to Debtor's threats, for among other reasons that AT&T no longer had any faith in Debtor's credibility.  Thereafter, on March 12, 2010, the same day that the Order dismissing the Prior Case was entered,  Debtor filed the instant chapter 11 case by its now third bankruptcy counsel.

This case is simply the Part 2 of a serial bankruptcy commenced by Debtor, and Debtor should not be given another opportunity to prejudice creditors, including AT&T, by its improper actions.  In particular, AT&T will be extremely prejudiced by allowing this case to continue for the following reasons:

First, during the past 3-½ months, Debtor has only paid AT&T approximately $59,000 out of approximately $450,000 administrative priority claim owed to AT&T for services rendered after the Original Petition Date, while Debtor continues to use AT&T's services.  It is, moreover, clear that Debtor did not have the financial wherewithal to repay this $450,000 as an administrative claim in the Prior Case.

2

Second, AT&T previously sought relief from stay in the Prior Case at a regularly noticed hearing on February 16, 2010, which efforts were frustrated by Debtor's switch from its first to second bankruptcy counsel.  At that hearing, Debtor's second counsel represented that he had just been engaged less than two weeks prior to the hearing, that Debtor had the funds to pay AT&T, and that if the Court granted the motion to dismiss, Debtor could pay AT&T.[1]  In light of the filing of the instant case, Debtor's counsel's representations were clearly designed to dupe the Court and AT&T as to the Debtor's true intentions.  The hearing on AT&T's motion for relief from stay was ultimately continued by the Court to March 16, 2010, to allow Debtor's new counsel opportunity to respond to AT&T's motion for relief from stay, which was rendered moot by dismissal of Prior Case on March 12, 2010.

Third, because of the circus of Debtor's bankruptcy case with, among other things, (i) now three different bankruptcy counsel, (ii) conversion to chapter 7 for failure to comply with bankruptcy filing requirements, (iii) an immediate re-filing into chapter 11 when AT&T refused to cave to Debtor's threats, and (iv) false promises of repayment along the way, AT&T is being forced to jump through an excessive number of costly and time-consuming hoops, including the re-filing of its motion for relief from stay along with a motion to dismiss in this new chapter 11 case, to protect its interests.

Finally, since Debtor re-filed this chapter 11 case, thereby resetting the clock, the post-petition administrative liability to AT&T of approximately $450,000 to date is arguably now treated as a pre-petition general unsecured debt in this new case.

---

[1] AT&T is currently in the process of obtaining a transcript of the February 16, 2010 hearing on an expedited basis, and will present such transcript to the Court as soon as it is available.

3

In short, AT&T is grossly prejudiced by Debtor's bad faith actions.  As such, and for the reasons set forth below, AT&T respectfully requests that this Court grant it relief from the automatic stay in order to terminate the Agreements (as defined below).

## II.    FACTUAL BACKGROUND

### A.    Contractual Relationship Between AT&T And Debtor

Debtor has been receiving wholesale telecommunication services from AT&T since approximately May 2006 pursuant to that certain Interconnection and/or Resale Agreement (the "IR Agreement") and that certain Commercial Agreement (the "Commercial Agreement").  See Supplemental Declaration of David J. Egan filed concurrently herewith in support of the Motion ("Egan Declaration"), ¶ 3a.  True and correct copies of the IR Agreement and the Commercial Agreement (collectively referred to herein as the "Agreements") are attached as Exhibits "A" and "B," respectively, to the Egan Declaration and incorporated herein by this reference.  Pursuant to the Agreements, Debtor has twenty-two (22) different AT&T accounts for which AT&T issues invoices to Debtor for payment on a monthly basis.  Egan Declaration, ¶ 3b. Debtor's approximate monthly fees incurred under the IR Agreement are $27,000 and $94,000 under the Commercial Agreement, for a monthly total of approximately $121,000.  Egan Declaration, ¶ 3b.

### B.    Procedural History

Debtor filed its prior chapter 11 voluntary petition for relief[2] on the Original Petition Date, represented by counsel Law offices of Yeznick O. Kazandjian ("First Counsel").  A true and correct copy of the Debtor's petition

---

[2] Bankruptcy Case No. 2:09-bk-43560-VZ.

4

in the Prior Case is attached as Exhibit "A" to the Request for Judicial Notice filed concurrently herewith ("RJN"), and incorporated herein by this reference.

On December 23, 2009, the Office of the United States Trustee ("OUST") filed a Motion to Convert or Dismiss Case [docket no. 14] based on Debtor's failure to comply with various filing requirements.  A true and correct copy of the OUST's Motion to Convert or Dismiss Case (without exhibits) is attached as Exhibit "B" to the RJN, and incorporated herein by this reference.  This Court converted the Debtor's case to chapter 7 by Order entered on January 25, 2010.  A true and correct copy of the January 25, 2010 Order is attached as Exhibit "C" to the RJN, and incorporated herein by this reference.

On January 22, 2010, AT&T filed its motion for relief from stay, or, in the alternative, for adequate protection (the "Stay Motion") [docket no. 23], which was set for hearing on February 16, 2010.  A true and correct copy of the Stay Motion (without exhibits) is attached as Exhibit "D" to the RJN, and incorporated herein by this reference.

On February 4, 2010, represented by new bankruptcy counsel Michael Jay Berger of the Law Offices of Michael Jay Berger ("Second Counsel"), Debtor filed a Motion to Dismiss Case and Declaration of Araksiya Nadjarian in support thereof (the "Dismissal Motion") [docket no. 38], wherein Mr. Nadjarian testified in his declaration, in relevant part, that:

> I believe, after a discussion of the merits of our company's filing with Michael Jay Berger of the Law Offices of Michael Jay Berger, that the dismissal of this case would be in the best interests of the Debtor's creditors and in the Debtor's own best interests.  The Debtor will be able to pay its bills and sustain its business outside of Chapter 7; inside Chapter 7 the Debtor's business will cease to exist and this will lead to all of the Debtor's customers' service being completely disconnected.

5

Dismissal Motion, page 9, lines 7-14 (emphasis added).  A true and correct copy of the Dismissal Motion (without exhibits) is attached as Exhibit "E" to the RJN and incorporated herein by this reference.

At the hearing on the Stay Motion on February 16, 2010, even though there was no opposition filed to the Stay Motion, this Court continued the hearing by one month to March 16, 2010, based on oral requests of Debtor's Second Counsel on the ground that he had recently been engaged and to provide Debtor an opportunity to respond to the Stay Motion.  See Declaration of Mark D. Houle filed concurrently in support herewith ("Houle Declaration"), ¶ 4.  At the February 16, 2010 hearing, Second Counsel also represented that Debtor had the funds to pay AT&T, and that if the Court granted the motion to dismiss, Debtor could pay AT&T.  Houle Declaration, ¶ 4.

Immediately after the hearing on the Stay Motion on February 16, 2010, in the presence of Debtor's Second Counsel, Debtor's principal Araksiya Nadjarian stated to both of AT&T's counsel present that as soon as the case was dismissed, Debtor could pay all of the post-petition arrears owing to AT&T in the then-amount of approximately $250,000.  Houle Declaration, ¶ 5.

The Order dismissing the Prior Case was entered by the Court on March 12, 2010 (the "Dismissal Order") [docket no. 51].  A true and correct copy of the Dismissal Order is attached as Exhibit "F" to the RJN, and incorporated herein by this reference.

Subsequent to the discussions immediately after the hearing on the Stay Motion on February 16, 2010, Debtor did not engage in any further payment discussions with AT&T until March 11, 2010.  Houle Declaration, ¶ 6.

6

On March 11, 2010, Debtor's now third bankruptcy counsel, Scott C. Clarkson of Clarkson, Gore & Marsella, APLC ("Third Counsel"), contacted AT&T's counsel and stated, among a great many other things, that AT&T would have to agree to refrain from terminating the underlying contracts immediately upon entry of the Dismissal Order or Debtor would have to re-file a chapter 11 case as soon as the Dismissal Order was entered, and further made a repayment proposal to AT&T including an up-front payment of less than $50,000.  Houle Declaration, ¶ 7.

AT&T responded to Debtor on March 11, 2010, and indicated that the proposal was insufficient and AT&T did not accept it, that the Debtor had lost credibility with AT&T given Debtor's repeated failures to perform, and that AT&T would not agree to refrain from seeking to terminate the underlying contracts.  Houle Declaration, ¶ 8.

On March 12, 2010 (the "Second Petition Date"), Debtor re-filed this chapter 11 case.  A true and correct copy of the new petition is attached as Exhibit "G" to the RJN, and incorporated herein by this reference.

Debtor also filed its schedules on March 12, 2010, which reflect, in relevant part, that four creditors make up approximately eighty percent of Debtor's total liabilities.  A true and correct copy of the Debtor's schedules [docket no. 2] is attached as Exhibit "H" to the RJN, and incorporated herein by this reference.

C.    Debtor's Outstanding Debt Owed To AT&T

Debtor has a history of consistently missing and delaying payments to AT&T for services received pursuant to the Agreements.  Egan Declaration, ¶ 3c.  As of March 15, 2010, Debtor owes AT&T $1,054,559.79 in total outstanding debt.  Egan Declaration, ¶ 3c.  Of this amount, $584,649.58 represents amounts owing prior to the Original Petition Date of November 30,

7

2009.  Egan Declaration, ¶ 3c.  However, Debtor has since incurred an additional $469,910.21 in charges from the Original Petition Date up through March 15, 2010.  Egan Declaration, ¶ 3c.  True and correct copies of the Debtor's approximate past due amounts along with the supporting invoices are attached as composite Exhibit "C" to the Egan Declaration and incorporated herein by this reference.

Further, Debtor failed to make any considerable payments to AT&T for its continued use of AT&T's telecommunications services.  Egan Declaration, ¶ 3d.  Since the Original Petition Date, AT&T has received payments in the sum of only $58,836.93 from Debtor.  Egan Declaration, ¶ 3d.  A true and correct copy of the Debtor's post-petition payment history is attached as Exhibit "D" to the Egan Declaration and incorporated herein by this reference.  Given that Debtor's monthly invoices for use of AT&T's services are approximately $121,000, AT&T is damaged each day in the amount of approximately $4,000 due to Debtor's failure to make payments.  Egan Declaration, ¶ 3e.

## III.    RELIEF FROM STAY IS WARRANTED UNDER SECTION 362(d)(1) FOR "CAUSE"

A.    "Cause" Defined

Section 362(d) states, in relevant part:

(d)    On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay –
(1)    **for cause**…

11 U.S.C. § 362(d) (emphasis added).

The term "cause" in 11 U.S.C. Section 362(d)(1) (when not including an allegation of a lack of adequate protection) is not defined in the Bankruptcy Code or in the relevant legislative history, which only gives "general

8

guidance." In re Mazzeo, 167 F.3d 139, 142 (2d Cir. 1999). The "facts of each request [for relief from stay] will determine whether relief is appropriate under the circumstances." Id. (citation and internal quotation marks omitted and descriptive added); see also Nationsbank of Virginia v. DCI Pub. of Alexandria, 160 B.R. 538, 540 (E.D. Va. 1993) (holding that § 362(d)(1) has a relatively broad sweep); In re Universal Life Church, Inc., 127 B.R. 453, 455 (E.D. Cal. 1991) (citing In re Tuscon Estates, Inc., 912 F.2d 1162, 1166 (9th Cir. 1990)) ("cause" has no clear definition and is determined on a case-by-case basis); In re Texas State Optical, Inc., 188 B.R. 552 (Bankr. E.D. Tex. 1995) ("cause" for modification of automatic stay is an intentionally broad and flexible concept that permits bankruptcy court, as court of equity, to respond to inherently fact-sensitive situations); In re Holly's Inc., 140 B.R. 643, 687 (Bankr. W.D. Mich. 1992) (holding "cause" is a broad and flexible concept).

It is well settled throughout the circuits, including in the Ninth Circuit, that "cause" for relief from stay may include a finding by the Court that a debtor's petition was filed in bad faith.[3]; In re Natural Land Corp., 825 F.2d 296 (11th Cir. 1987); In re Little Creek Development Co., 779 F.2d 1068 (5th Cir. 1986); In re Kemble, 776 F.2d 802, 807 (9th Cir. 1985); In re Albany Partners, Ltd., 749 F.2d 670 (11th Cir. 1984); In re Loeb Apartments, Inc., 89 F.2d 461 (7th Cir. 1937); In re Powers, 135 B.R. 980, 998 (Bankr. C.D. Cal. 1991) (citing In re Arnold, 806 F.2d 937, 939 (9th Cir. 1986)); In re Yukon Enterprises, Inc., 39 B.R. 919, 921 (Bankr. C.D. Cal. 1984).

As set forth below, most of the badges of bad faith that typify a bad-faith filing under well established Ninth Circuit law are present in this case.

---

[3] "[T]he absence of good faith, though not expressly set out in Section 362, is a basis for granting relief from stay []." In re ACI Sunbow, LLC, 206 B.R. 213, 217 (Bankr. S.D. Cal. 1997) (citations omitted). In this context, a finding of "bad faith" as discussed herein necessitates relief from stay under Section 362(d).

601111059v1

MEMO OF POINTS AND AUTHORITIES IN SUPPORT
OF AT&T'S MOTION FOR RELIEF FROM STAY
CASE NO.: 2:10-bk-19227-VZ

1    As such, relief for cause under Section 362(d)(1) is warranted, and this Court

2    should grant AT&T's Motion for Relief from the Automatic Stay.

3        B.        The Facts Of This Case Satisfy The Ninth Circuit Standard For A

4                  Finding Of "Bad Faith"

5        Courts have identified some common "badges of bad faith." <u>See</u>, <u>e.g.</u>,

6    <u>In re Yukon Enterprises, Inc.</u>, 39 B.R. 919, 921 (Bankr. C.D. Cal. 1984)

7    (enumerating various factors indicative of bad faith); <u>In re Little Creek</u>

8    <u>Development Co.</u>, 779 F.2d 1069 (5th Cir. 1986) (cited with approval by

9    <u>Arnold</u>, 806 F.2d at 937).  However, the existence of bad faith in any

10   bankruptcy case depends not on the presence of any one specific fact, but upon

11   an amalgam of factors after examination of the debtor's financial status and

12   motives.  <u>Marsch v. Marsch (In re Marsch)</u>, 36 F.3d 825, 828 (9th Cir. 1994)

13   (citing <u>Arnold</u>, 806 F.2d at 939).  Ultimately, the test for bad faith is "whether

14   a debtor is attempting to unreasonably deter and harass creditors or attempting

15   to effect a speedy, efficient reorganization on a feasible basis." <u>Marsch</u>, 36

16   F.3d at 828 (citing <u>Arnold</u>, 806 F.2d at 939).

17       The requirement that chapter 11 cases be filed in good faith

18   encompasses several, distinct equitable limitations that courts have placed on

19   chapter 11 filings.  <u>Marsch</u>, 36 F.3d at 828 (citing <u>In re N.R. Guaranteed</u>

20   <u>Retirement, Inc.</u>, 112 B.R. 263, 270 (Bankr. N.D. Ill.) <u>aff'd</u>, 119 B.R. 149

21   (N.D. Ill 1990)).  Courts have implied such limitations to deter filing that seek

22   to achieve objectives outside the legitimate scope of the bankruptcy laws.

23   <u>Marsch</u>, 36 F.3d at 828 (emphasis added and citations omitted).

24       The law in the Ninth Circuit is clear and unequivocal—if the Court

25   finds that some, but not necessarily all, of the following factors are present,

26   then a petition will be deemed to have been filed in bad faith:

27       1.    The debtor has one asset;

28

10

2.    The secured creditors' liens encumber this asset;

3.    The debtor generally has no employees except for the principals;

4.    The debtor has little or no cash flow;

5.    The debtor has no available sources of income to sustain a plan of reorganization or to make adequate protection payments;

6.    There are few, if any, unsecured creditors;

7.    The property has been posted for foreclosure because of arrearages on the debt;

8.    Bankruptcy offers the only possibility of forestalling loss of the property;

9.    There are allegations of wrongdoing by the debtor or its principals; and

10.    The "new debtor syndrome" in which an entity is created or revitalized on the eve of foreclosure to isolate the insolvent property and its creditors.

See Marsch, 36 F.3d at 825; Arnold, 806 F.2d at 939; In re Rainbow Magazine, Inc., 136 B.R. 545 (9th Cir. BAP 1991); In re Can-Alta Properties, Ltd., 87 B.R. 89 (9th Cir. BAP 1988); In re Stolrow's, Inc., 84 B.R. 167 (9th Cir. BAP 1988); In re Walter, 108 B.R. 244 (Bankr. C.D. Cal. 1989) (March, J.); In re Family Health Services, Inc., 104 B.R. 279 (Bankr. C.D. Cal. 1989) (Wilson, J.), rev'd on other grounds 143 B.R. 232 (C.D. Cal. 1992); In re Missouri Flats Assoc., 86 B.R. 634 (Bankr. E.D. Cal. 1988); In re So. Cal. Sound Systems, Inc., 69 B.R. 893 (Bankr. S.D. Cal. 1987).

Moreover, the Ninth Circuit has specifically held that "not all of the factors listed are necessary to a finding of bad faith." Can-Alta Properties, 87 B.R. at 91. Indeed, bankruptcy courts in the Ninth Circuit continue to recognize that the above factors are merely "ten common conditions ... which

11

indicate bad faith." <u>Walter</u>, 108 B.R. at 247 (emphasis added). <u>See also</u>
<u>Southern California Sound Systems</u>, 69 B.R. at 893 (court referred to these ten
indicia of a bad faith filing with approval and found bad faith based on the
presence of <u>only four</u> of the ten factors).

Notwithstanding the sufficiency of only a few of these factors, the
Debtor in this case satisfies a significant number of the bad-faith indicia
adopted by the Ninth Circuit:

<u>Little to No Cash-Flow</u>:  As indicated in Debtor's Monthly Cash Flow
Projection filed as part of Debtor's schedules [docket no. 2], Debtor's
projected cash position is less than $10,000 over the course of the next several
months.  In comparison, as shown in the Egan Declaration, Debtor currently
owes AT&T in excess of $1.05 million, of which $450,000 was accrued since
the filing of the Prior Case.  Clearly, but for the dismissal of the Prior Case
and re-filing of this bankruptcy case, Debtor would not be able to satisfy the
administrative claim owed to AT&T.  This reason alone is sufficient to find
the Debtor's actions in bad faith.

<u>No Available Source of Income to Support Plan</u>:  As indicated by
Debtor's misrepresentations about its current financial position and the ability
to pay AT&T outside of bankruptcy, along with the re-filing of its petition, it
does not appear that Debtor has any reliable or significant sources of income
to sustain a plan of reorganization.  Clearly, there does not seem to be any
basis to believe that Debtor would have been able to repay the $450,000
administrative claim to AT&T in the Prior Case.

<u>Few Creditors</u>:  Debtor's schedules state that only four (4) creditors
make up approximately eighty percent (80%) of Debtor's total liabilities.

12

1     <u>Filing is Only Hope to Avoid Loss of Property</u>:  Bankruptcy offers

2   Debtor's principal the only possibility of preventing AT&T from proceeding

3   with termination of the Agreements.

4     <u>Serial Bankruptcy Filings</u>:  This factor is because Debtor's filed

5   multiple chapter 11 bankruptcies, is represented by its third bankruptcy

6   counsel, made false representations to the Court and AT&T regarding its

7   intentions to make payments upon dismissal of the Prior Case, failed to make

8   any significant payments to AT&T for post-petition services over the course

9   of 3-½ months in the Prior Case while continuing to receive AT&T services,

10   and overall abused the bankruptcy process in an attempt to avoid its

11   contractual obligations, all of which serve to grossly prejudice AT&T.

12     C.     <u>The Petition Constitutes A Serial Filing In Further Evidence Of</u>

13         <u>"Bad Faith"</u>

14     The filing of successive bankruptcy petitions indicates bad faith where

15   the subsequent filing was designed to frustrate statutory requirements and to

16   abuse the bankruptcy process.  <u>In re Spectee Group, Inc.</u>, 185 B.R. 146, 156

17   (Bankr. S.D.N.Y. 1995) ("Serial filings are a 'badge' of bad faith."); <u>In re</u>

18   <u>Burns</u>, 169 B.R. 563, 567 (Bankr. W.D. Pa. 1994);  <u>In re Coones Ranch, Inc.</u>,

19   138 B.R. 251, 258 (Bankr. D.S.D. 1991); <u>In re Hammonds</u>, 139 B.R. 535, 542

20   (Bankr. D. Colo. 1992) ("Certain characteristics of a chapter 7 case ripe for

21   dismissal on grounds of bad faith … include … multiple case filings"); <u>In re</u>

22   <u>Delray Assoc. Ltd. Partnership</u>, 212 B.R. 511 (Bankr. D. Md. 1997) (The mere

23   fact that the second chapter 11 filing was, at least in name, an involuntary

24   bankruptcy case did not preclude dismissal of second petition as a bad faith,

25   serial filing, given evidence that debtor had orchestrated this second filing).

26     Here, Debtor engaged in bad faith by re-filing its bankruptcy case only

27   hours after dismissal of the Prior Case.  This Court's ruling on the Dismissal

28

601111059v1

Motion was presumably based on, <u>inter alia</u>, the specific testimony in support

of the Dismissal Motion that "the Debtor will be able to pay its bills and

sustain its business outside of chapter 7."  Dismissal Motion, page 9, lines 7-

14.  Further, Debtor and its attorneys made numerous post-petition promises to

AT&T of curing the post-petition amounts owed to AT&T immediately upon

dismissal of the Prior Case.  In fact, immediately after the February 16, 2010

hearing on the AT&T Stay Motion, Debtor's principal personally represented

that they had sufficient funds to cure all of AT&T's post-petition arrears of

approximately $250,000 and would do so as soon as the case was dismissed.

Houle Declaration, ¶ 5.

Further, the Court's decision to continue the hearing on the Stay Motion

for one month was premised upon Debtor's <u>second</u> bankruptcy counsel's

request that it had been engaged for less than two weeks, and the continuance

was granted to provide counsel an opportunity to respond to the Stay Motion.

Importantly, at that same hearing, Second Counsel represented to the Court

that Debtor had sufficient funds to pay AT&T and that if the bankruptcy case

was dismissed, Debtor could pay AT&T.

Based upon representations from Debtor's now <u>third</u> bankruptcy

counsel that Debtor would file a chapter 11 case immediately upon the

dismissal of the Prior Case if AT&T did not agree to refrain from terminating

the Agreements, along with an extremely minimal repayment proposal, it

appears clear that Debtor intended to dupe the Court and AT&T as to its true

intentions to avoid payment to AT&T and circumvent AT&T's honest efforts

to seek relief from stay.  In particular, as evidence of this bad faith, there were

no repayment proposals made by Debtor from February 16, 2010 until

March 11, 2010.  Debtor was apparently ready to file papers for this new

chapter 11 bankruptcy case before the Dismissal Order was even signed and

14

entered by this Court, and had apparently hired Third Counsel for this very purpose.

Thus, for all practical purposes, this case should be viewed as a serial filing further evidencing Debtor's bad faith.

### D.    A Finding Of "Bad Faith" Does Not Require A Showing Of Actual Fraud, Only An Improper Purpose

In the case of <u>In re Leavitt</u>, 171 F.3d 1219, 1224 (9th Cir. 1999), the Ninth Circuit **specifically rejected** the notion that a finding of "bad faith" must be premised upon actual fraud or malice:

> A finding of bad faith <u>does not</u> require fraudulent intent by the debtor. Neither malice nor actual fraud is required to find a lack of good faith. The bankruptcy judge is not required to have evidence of debtor ill will directed at creditors, or that debtor was affirmatively attempting to violate the law-malfeasance is not a prerequisite to bad faith.

<u>Id</u>. at 1224-1225 (emphasis added) (quoting <u>In re Powers</u>, 135 B.R. 980, 994 (Bankr. C.D. Cal. 1991)); <u>see also</u> <u>In re Waldron</u>, 785 F.2d 936, 941 (11th Cir. 1986) ("manifestations of bad faith need not be based upon a finding of actual fraud, requiring proof of malice, scienter or an intent to defraud.  We simply require that the bankruptcy courts preserve the integrity of the bankruptcy process by refusing to condone its abuse."); <u>In re Grieshop</u>, 63 B.R. 657, 663 (N.D. Ind. 1986).

As such, there is no need for AT&T to establish actual fraud, and as shown herein and in the supporting declarations, AT&T has established that this bankruptcy case was filed for an improper purpose:  to frustrate AT&T's legitimate efforts to terminate the Agreements and to convert approximately $450,000 of administrative debt owing to AT&T as a general unsecured pre-petition claim, which it otherwise clearly would not have been able to pay.

601111059v1

E.     The Debtor's Burden Of Proof

Section 362(g) of the Bankruptcy Code allocates the burden of proof in

motions seeking relief from stay and must be read in conjunction with Section

362(d).  See In re Unioil, 54 B.R. 192, 194 (Bankr. Colo. 1985).  Section

362(g) provides that:

> (g)     In any hearing under subsection (d) or (e) of this section
> concerning relief from the stay of any act under subsection (a) of this
> section –
> (1)     the party requesting such relief has the burden of proof on the
> issue of the debtor's equity in property; and
> (2)     the party opposing such relief has the burden of proof on all other
> issues.

11 U.S.C. Section 362(g) (emphasis added).  Consequently, absent any issues

concerning the debtor's equity in property, it follows that the debtor has the

burden of proof in opposing motions for relief from stay.  Unioil, 54 B.R at

194 (citing In re Highcrest Management Co., Inc., 30 B.R. 776 (Bankr.

S.D.N.Y. 1983)).  "Once the party seeking relief from stay establishes a

legally sufficient basis, i.e., 'cause,' for such relief, the burden then lies with

the debtor to demonstrate that it is entitled to the stay."  Unioil, 54 B.R. at 194

(citing In re Curtis, 40 B.R. 795 (Bankr. D. Utah 1984)).

Once a prima facie case of bad faith filing is established, the burden

shifts to the debtor to demonstrate a good faith business reason for the filing.

In re Eighty South Lake, Inc., 63 B.R. 501, 508 (Bankr. C.D. Cal. 1986), aff'd,

81 B.R. 580 (9th Cir. BAP 1987); see also In re Leavitt, 209 B.R. 935, 940

(Bankr. 9th Cir. 1997) ("Debtor bears the burden of proving that the petition

was filed in good faith."); In re Powers, 135 B.R. 980, 997 (Bankr. C.D. Cal.

1991) ("[O]nce a debtor's good faith is in issue, the debtor bears the burden of

proving the petition was filed in good faith."); Collier on Bankruptcy,

1112.04[8] (15th ed. Rev. 2000) ("[I]f the issue is whether the petition was

filed in good faith, the burden rests on the petitioner.").

16

"If, in addition to the prima facie showing of bad faith, the creditor proves that its substantive or procedural rights have been adversely affected by the filing, 'cause' is established pursuant to 11 U.S.C. § 362(d)(1) and the Court must lift the stay." Duvar, 205 B.R. 200-201, 39 B.R. at 921-22) (citing Yukon. In considering harm to a creditor, delay in and of itself does not constitute bad faith. In re Thirtieth Place, Inc., 30 B.R. 503, 506 (9th Cir. BAP 1983). However, a court can consider delay coupled with other bad faith factors in determining the harm to a particular creditor. Duvar, 205 B.R. at 200-201 ("The considerable bad faith indicia that are present, coupled with the delay of the foreclosure sale and the delay of receiving any payments on the property, adversely affected Amresco's rights. We find that cause existed to support the bankruptcy court's order lifting the stay.").

Accordingly, for the purposes of this Motion, the Debtor must establish by a preponderance of the evidence that the second petition was filed in good faith. If it cannot do so, the Motion should be granted.

## IV.   CONCLUSION

Based on the misrepresentations of Debtor, mishandling of the multiple bankruptcy cases, Debtor's immediate re-filing of its chapter 11 petition upon dismissal of the Prior Case, and the resulting undue prejudice to AT&T, the Debtor's bankruptcy case is a bad faith filing, and thus cause exists to grant relief from the automatic stay. AT&T respectfully requests that this Court grant it relief from the automatic stay under 11 U.S.C. § 362 in order to permit AT&T to terminate the Agreements with Debtor.

Dated: March 17, 2010        PILLSBURY WINTHROP SHAW PITTMAN LLP
                             By:  _____/s/ Mark D. Houle_____
                             Mark D. Houle, Esq.
                             Attorneys for Creditor,
                             Pacific Bell Telephone Company d/b/a AT&T California

17