PILLSBURY WINTHROP SHAW PITTMAN LLP
CRAIG A. BARBAROSH (State Bar No. 160224)
craig.barbarosh@pillsburylaw.com
MARK D. HOULE (State Bar No. 194861)
mark.houle@pillsburylaw.com
DAVID TABIBIAN (State Bar No. 251719)
david.tabibian@pillsburylaw.com
725 South Figueroa Street, Suite 2800
Los Angeles, California 90017-5406
Telephone: (213) 488-7100
Facsimile:  (213) 629-1033

Attorneys for Creditor,
Pacific Bell Telephone Company d/b/a AT&T California

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

### (LOS ANGELES DIVISION)

| In re:<br><br>ConnectTo Communications, Inc.,<br><br>                Debtor. | Case No. 2:10-bk-19227-VZ<br><br>Chapter 11<br><br>**NOTICE OF MOTION AND MOTION OF AT&T TO DISMISS THE BANKRUPTCY CASE WITH A 180-DAY BAR; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>[Filed Concurrently with Declaration of David J. Egan in Support of Motions; Declaration of Mark D. Houle in Support of Motions; Request for Judicial Notice in Support of Motions]<br><br>DATE:     TBD<br>TIME:     TBD<br>PLACE:   Courtroom 1368<br>               Roybal Federal Building<br>               255 E. Temple Street<br>               Los Angeles, CA 90012 |

1   **TO THE HONORABLE VINCENT P. ZURZOLO, UNITED STATES**

2   **BANKRUPTCY JUDGE; OFFICE OF THE UNITED STATES**

3   **TRUSTEE; AND ALL PARTIES IN INTEREST:**

4        PLEASE TAKE NOTICE that Creditor PACIFIC BELL TELEPHONE

5   COMPANY d/b/a AT&T CALIFORNIA ("AT&T") will and hereby does

6   move the Court for an order dismissing the chapter 11 bankruptcy case of

7   debtor CONNECTTO COMMUNICATIONS ("Debtor"), pursuant to 11

8   U.S.C. § 1112(b), with a 180-day bar to re-filing ("Motion").  This Motion is

9   being heard on shortened time.  If you wish to oppose this Motion, you must

10  appear at the hearing.  A Motion for Order Shortening Time has been filed and

11  remains pending.  Once the Court has ruled on that motion, you will be served

12  with another notice or an order that will specify the date, time and place of the

13  hearing on the Motion and the deadline for filing and serving a written

14  opposition to the Motion.

15       The Motion is based upon these moving papers, the Memorandum of

16  Points and Authorities attached in support hereof, the Declarations of David J.

17  Egan and Mark D. Houle filed concurrently herewith, the Request for Judicial

18  Notice filed concurrently herewith, the pleadings and documents on file in this

19  case, the arguments and representations of counsel, and any such other and

20  further evidence and arguments as may be presented to the Court at or before

21  any hearing or ruling on this Motion.

22

23

24

25

26

27

28

1         WHEREFORE, AT&T respectfully requests that the Court enter an

2    order dismissing the above entitled chapter 11 bankruptcy case with a 180-day

3    bar to re-filing, and such other relief as the Court deems just and proper.

4

5    Dated: March 17, 2010        PILLSBURY WINTHROP SHAW PITTMAN LLP
                       CRAIG A. BARBAROSH

6                           MARK D. HOULE
                       DAVID TABIBIAN

7

8

9                           By:         /s/ Mark D. Houle
                       Mark D. Houle, Esq.

10                          Attorneys for Creditor,
                       Pacific Bell Telephone Company d/b/a AT&T

11                          California

12

13

14

15

16

17

19

20

21

22

23

24

25

26

27

28

# **Table of Contents**

Page

I.   INTRODUCTION ................................................................................................1

II.  STATEMENT OF FACTS ...................................................................................4

   A.  CONTRACTUAL RELATIONSHIP BETWEEN AT&T AND DEBTOR .............4

   B.  PROCEDURAL HISTORY ...........................................................................4

   C.  DEBTOR'S OUTSTANDING DEBT OWED TO AT&T .................................7

III. DISMISSAL IS WARRANTED UNDER SECTION 1112(B) FOR "CAUSE" ...........8

   A.  "BAD FAITH" CONSTITUTES "CAUSE" TO DISMISS UNDER
      SECTION 1112(B) .......................................................................................8

   B.  THE FACTS OF THIS CASE SATISFY THE NINTH CIRCUIT
      STANDARD FOR A FINDING OF "BAD FAITH" .......................................11

   C.  THE PETITION CONSTITUTES A SERIAL FILING IN FURTHER
      EVIDENCE OF "BAD FAITH" ...................................................................14

   D.  A FINDING OF "BAD FAITH" DOES NOT REQUIRE A SHOWING OF
      ACTUAL FRAUD, ONLY AN IMPROPER PURPOSE .................................16

   E.  THE DEBTOR'S BURDEN OF PROOF ......................................................17

IV. THE DEBTOR SHOULD BE BARRED FROM RE-FILING FOR A PERIOD
   OF AT LEAST 180 DAYS ..................................................................................18

V.  AT&T REQUESTS THAT THE COURT RESERVE JURISDICTION TO
   ENTERTAIN A MOTION FOR SANCTIONS NOTWITHSTANDING THE
   DISMISSAL ......................................................................................................20

VI. CONCLUSION .................................................................................................20

# **Table of Authorities**

Page(s)

Cases

Duggan v. Highland-First Avenue,
    25 B.R. 955 (Bankr. C.D. Cal. 1992) .................................................................... 10

In re Alison Corp.,
    9 B.R. 827 (Bankr. S.D. Cal. 1981).................................................................... 17

In re Arnold,
    806 F.2d 937 (9th Cir. 1986) ......................................................... 9, 11, 12

In re Boynton,
    184 B.R. 580 (Bankr. S.D. Cal. 1995).................................................................... 10

In re Burns,
    169 B.R. 563 (Bankr. W.D. Pa. 1994).................................................................... 14

In re Can-Alta Properties, Ltd.
    87 B.R. 89 (9th Cir. BAP 1988) ......................................................................... 12

In re Can-Alta Properties, Ltd.,
    87 B.R. 89 (9th Cir. BAP 1988) ......................................................................... 9, 13

In re Coones Ranch, Inc.,
    138 B.R. 251 (Bankr. D.S.D. 1991) ...................................................................... 14

In re Dami,
    172 B.R. 6 (Bankr. E.D. Pa. 1994) .................................................................... 19

In re Damien,
    35 B.R. 685 (Bankr. S.D. Fla. 1983 .................................................................... 19

In re Delray Assoc. Ltd. Partnership,
    212 B.R. 511 (Bankr. D. Md. 1997)...................................................................... 14

In re Dilley,
    125 B.R. 189 (Bankr. N.D. Ohio 1991)................................................................ 19

In re Earl,
    140 B.R. 728 (Bankr. N.D. Ind. 1992) ................................................................ 19

In re Eighty South Lake, Inc.,
    63 B.R. 501 (Bankr. C.D. Cal. 1986) .................................................................. 18

In re Family Health Services, Inc.
    104 B.R. 279 (Bankr. C.D. Cal. 1989) ................................................................ 12

In re Grieshop,
    63 B.R. 657 (N.D. Ind. 1986) ............................................................................. 16

In re Hammonds,
    139 B.R. 535 (Bankr. D. Colo. 1992)....................................................... 14

In re Herrera,
    194 B.R. 178 (Bankr. N.D. Ill. 1996) ....................................................... 19

In re Hundley,
    103 B.R. 768 (Bankr. E.D. Va. 1989) ....................................................... 19

In re Jolly,
    143 B.R. 383 (E.D. Va. 1992) ................................................................... 19

In re Kempner,
    152 B.R. 37 (D. Dela. 1993) ..................................................................... 17

In re Leavitt
    171 F.3d 1219 (9th Cir. 1999)........................................................... 16, 18

In re Little Creek Development Co.,
    779 F.2d 1068 (5th Cir. 1986)........................................................... 10, 11

In re Missouri Flats Assoc.
    86 B.R. 634 (Bankr. E.D. Cal. 1988) ....................................................... 13

In re N.R. Guaranteed Retirement, Inc.
    112 B.R. 263 (Bankr. N.D. Ill.),
    aff'd, 119 B.R. 149 (N.D. Ill 1990) .......................................................... 11

In re Powers,
    135 B.R. 980 (Bankr. C.D. Cal. 1991) ........................................... 9, 16, 18

In re Rainbow Magazine, Inc.
    136 B.R. 545 (9th Cir. BAP 1991) ........................................................... 12

In re Southern California Sound Systems, Inc.
    69 B.R. 893 (Bankr. S.D. Cal. 1987).................................................. 13, 17

In re Spectee Group, Inc.,
    185 B.R. 146 (Bankr. S.D.N.Y. 1995) ..................................................... 14

In re Stolrow's, Inc.
    84 B.R. 167 (9th Cir. BAP 1988) ............................................................. 12

In re Talladega Steaks, Inc.,
    50 B.R. 42 (Bankr. N.D. Ala. 1985)......................................................... 17

In re Thirtieth Place, Inc.,
    30 B.R. 503 (9th Cir. BAP 1983) ............................................................... 9

In re Waldron
    785 F.2d 936 (11th Cir. 1986).................................................................. 16

In re Walter,
    108 B.R. 244 (Bankr. C.D. Cal. 1989) ........................................... 9, 12, 13

Lerch v. Federal Land Bank,
    94 B.R. 998 (N.D. Ill. 1989) ........................................................................ 18, 19

Marsch v. Marsch (In re Marsch)
    36 F.3d 825 (9th Cir. 1994) ........................................................................ 11, 12

<u>Constitution</u>

11 United States Constitution
    Section 1112(b) ............................................................................................ passim

<u>Statutes and Codes</u>

Bankruptcy Code,
    Section 349(a) ............................................................................................. 18, 19

Bankruptcy Code,
    Sections 105(a) ........................................................................................... 18, 19

<u>Rules and Regulations</u>

Bankruptcy Rules,
    Rule 9011 .................................................................................................... 18, 19

<u>Other Authorities</u>

Collier on Bankruptcy,
    (15th ed. 1992) .................................................................................................. 17

Collier on Bankruptcy,
    1112.04[8] (15th ed. Rev. 2000) ...................................................................... 18

Collier on Bankruptcy,
    1112.07 (15th ed. Rev. 2000) ........................................................................... 10

## **MEMORANDUM OF POINTS AND AUTHORITIES**

Creditor PACIFIC BELL TELEPHONE COMPANY d/b/a AT&T

CALIFORNIA ("AT&T") hereby submits its Memorandum of Points and

Authorities in Support of its Motion to Dismiss the Bankruptcy Case of the

above-entitled debtor and debtor-in-possession CONNECTTO

COMMUNICATIONS ("Debtor"), pursuant to 11 U.S.C. § 1112(b), with a

180-day bar to re-filing.

## I.    INTRODUCTION

This chapter 11 case was filed by the Debtor in bad faith, and thus

"cause" exists to grant dismissal.  Through this serial bankruptcy filing,

Debtor has had enough bites of the apple at the expense of AT&T and the

Debtor's other creditors.  Indeed, the sole purpose of this second bankruptcy

case (on the eve of dismissal of the prior case) is to avoid payment to AT&T

and frustrate AT&T's valid and legal efforts to terminate its contracts with

Debtor.

As this Court is aware, Debtor previously filed a chapter 11 case ("Prior

Case") on November 30, 2009 ("Original Petition Date").  The Prior Case was

converted to chapter 7 on January 25, 2010, based upon the U.S. Trustee's

motion to convert for multiple filing deficiencies.  Ultimately, Debtor filed a

motion to dismiss the Prior Case on the express basis that "Debtor will be able

to pay its bills and sustain its business outside of chapter 7…."  Dismissal

Motion (defined below), page 9, lines 7-14.

AT&T sought relief from stay in the Prior Case on the basis of the

Debtor's failure to make any material payments on account of the growing

post-petition debt owing to AT&T.  However, the February 16, 2010 hearing

on AT&T's prior relief from stay motion was continued by the Court for one

month to March 16, 2010, in part upon Debtor's counsel's oral request that he

was newly engaged for less than two weeks (as Debtor's second bankruptcy counsel), and in order to allow Debtor's new counsel an opportunity to respond to AT&T's relief from stay motion.

Importantly, during the term of the Prior Case, from November 30, 2010, to March 12, 2010, Debtor continued to use services provided by AT&T in an amount in excess of $450,000.00, but during that entire three and one half month period Debtor only made one payment to AT&T in the *de minimus* amount of approximately $59,000.

On March 11, 2010, one day prior to entry of the Order dismissing the Prior Case, Debtor contacted AT&T with a woefully insufficient and ambiguous payment proposal, and moreover threatened AT&T that it would immediately re-file a chapter 11 if AT&T did not agree that AT&T would not seek to terminate the contracts between the parties.  AT&T refused to acquiesce to Debtor's threats, for among other reasons that AT&T no longer had any faith in Debtor's credibility.  Thereafter, on March 12, 2010, the same day that the Order dismissing the Prior Case was entered,  Debtor filed the instant chapter 11 case by its now third bankruptcy counsel.

This case is simply the Part 2 of a serial bankruptcy commenced by Debtor, and Debtor should not be given another opportunity to prejudice creditors, including AT&T, by its improper actions.  In particular, AT&T will be extremely prejudiced by allowing this case to continue for the following reasons:

First, during the past 3-½ months, Debtor has only paid AT&T approximately $59,000 out of approximately $450,000 administrative priority claim owed to AT&T for services rendered after the Original Petition Date, while Debtor continues to use AT&T's services.  It is, moreover, clear that Debtor did not have the financial wherewithal to repay this $450,000 as an

administrative claim in the Prior Case.

Second, AT&T previously sought relief from stay in the Prior Case at a regularly noticed hearing on February 16, 2010, which efforts were frustrated by Debtor's switch from its first to second bankruptcy counsel.  At that hearing, Debtor's second counsel represented that he had just been engaged less than two weeks prior to the hearing, that Debtor had the funds to pay AT&T, and that if the Court granted the motion to dismiss, Debtor could pay AT&T.[1]  In light of the filing of the instant case, Debtor's counsel's representations were clearly designed to dupe the Court and AT&T as to the Debtor's true intentions.  The hearing on AT&T's motion for relief from stay was ultimately continued by the Court to March 16, 2010, to allow Debtor's new counsel opportunity to respond to AT&T's motion for relief from stay, which was rendered moot by dismissal of Prior Case on March 12, 2010.

Third, because of the circus of Debtor's bankruptcy case with, among other things, (i) now three different bankruptcy counsel, (ii) conversion to chapter 7 for failure to comply with bankruptcy filing requirements, (iii) an immediate re-filing into chapter 11 when AT&T refused to cave to Debtor's threats, and (iv) false promises of repayment along the way, AT&T is being forced to jump through an excessive number of costly and time-consuming hoops, including the re-filing of its motion for relief from stay along with a motion to dismiss in this new chapter 11 case, to protect its interests.

Finally, since Debtor re-filed this chapter 11 case, thereby resetting the clock, the post-petition administrative liability to AT&T of approximately $450,000 to date is arguably now treated as a pre-petition general unsecured

---

[1] AT&T is currently in the process of obtaining a transcript of the February 16, 2010 hearing on an expedited basis, and will present such transcript to the Court as soon as it is available.

1  debt in this new case.

2       In short, AT&T is grossly prejudiced by Debtor's bad faith actions.  As

3  such, and for the reasons set forth below, AT&T respectfully requests that this

4  Court enter an order dismissing the above-entitled chapter 11 bankruptcy case

5  with a 180-day bar to re-filing, and such other relief as the Court deems just

6  and proper.

7  **II.    STATEMENT OF FACTS**

8       A.    <u>Contractual Relationship Between AT&T And Debtor</u>

9       Debtor has been receiving wholesale telecommunication services from

10  AT&T since approximately May 2006 pursuant to that certain Interconnection

11  and/or Resale Agreement (the "<u>IR Agreement</u>") and that certain Commercial

12  Agreement (the "<u>Commercial Agreement</u>").  See Supplemental Declaration of

13  David J. Egan filed concurrently herewith in support of the Motion ("Egan

14  Declaration"), ¶ 3a.  True and correct copies of the IR Agreement and the

15  Commercial Agreement (collectively referred to herein as the "Agreements")

16  are attached as Exhibits "A" and "B", respectively, to the Egan Declaration

17  and incorporated herein by this reference.  Pursuant to the Agreements, Debtor

19  has twenty-two (22) different AT&T accounts for which AT&T issues

20  invoices to Debtor for payment on a monthly basis.  Egan Declaration, ¶ 3b.

21  Debtor's approximate monthly fees incurred under the IR Agreement are

22  $27,000 and $94,000 under the Commercial Agreement, for a monthly total of

23  approximately $121,000.  Egan Declaration, ¶ 3b.

24       B.    <u>Procedural History</u>

25       Debtor filed its prior chapter 11 voluntary petition for relief[2] on the

26  Original Petition Date, represented by counsel Law offices of Yeznick O.

27

28  _____

[2] Bankruptcy Case No. 2:09-bk-43560-VZ.

Kazandjian ("First Counsel").  A true and correct copy of the Debtor's petition

in the Prior Case is attached as Exhibit "A" to the Request for Judicial Notice

filed concurrently herewith ("RJN"), and incorporated herein by this reference.

On December 23, 2009, the Office of the United States Trustee

("OUST") filed a Motion to Convert or Dismiss Case [docket no. 14] based on

Debtor's failure to comply with various filing requirements.  A true and

correct copy of the OUST's Motion to Convert or Dismiss Case (without

exhibits) is attached as Exhibit "B" to the RJN, and incorporated herein by this

reference.  This Court converted the Debtor's case to chapter 7 by Order

entered on January 25, 2010.  A true and correct copy of the January 25, 2010

Order is attached as Exhibit "C" to the RJN, and incorporated herein by this

reference.

On January 22, 2010, AT&T filed its motion for relief from stay, or, in

the alternative, for adequate protection (the "Stay Motion") [docket no. 23],

which was set for hearing on February 16, 2010.  A true and correct copy of

the Stay Motion (without exhibits) is attached as Exhibit "D" to the RJN, and

incorporated herein by this reference.

On February 4, 2010, represented by new bankruptcy counsel Michael

Jay Berger of the Law Offices of Michael Jay Berger ("Second Counsel"),

Debtor filed a Motion to Dismiss Case and Declaration of Araksiya Nadjarian

in support thereof (the "Dismissal Motion") [docket no. 38], wherein Mr.

Nadjarian testified in his declaration, in relevant part, that:

> I believe, after a discussion of the merits of our company's filing with
> Michael Jay Berger of the Law Offices of Michael Jay Berger, that the
> dismissal of this case would be in the best interests of the Debtor's
> creditors and in the Debtor's own best interests.  The Debtor will be
> able to pay its bills and sustain its business outside of Chapter 7; inside
> Chapter 7 the Debtor's business will cease to exist and this will lead to
> all of the Debtor's customers' service being completely disconnected.

1        Dismissal Motion, page 9, lines 7-14 (emphasis added).  A true and

2   correct copy of the Dismissal Motion (without exhibits) is attached as Exhibit

3   "E" to the RJN and incorporated herein by this reference.

4        At the hearing on the Stay Motion on February 16, 2010, even though

5   there was no opposition filed to the Stay Motion, this Court continued the

6   hearing by one month to March 16, 2010, based on oral requests of Debtor's

7   Second Counsel on the ground that he had recently been engaged and to

8   provide Debtor an opportunity to respond to the Stay Motion.  See Declaration

9   of Mark D. Houle filed concurrently in support herewith ("Houle

10  Declaration"), ¶ 4.  At the February 16, 2010 hearing, Second Counsel also

11  represented that Debtor had the funds to pay AT&T, and that if the Court

12  granted the motion to dismiss, Debtor could pay AT&T.  Houle Declaration, ¶

13  4.

14       Immediately after the hearing on the Stay Motion on February 16, 2010,

15  in the presence of Debtor's Second Counsel, Debtor's principal Araksiya

16  Nadjarian stated to both of AT&T's counsel present that as soon as the case

17  was dismissed, Debtor could pay all of the post-petition arrears owing to

19  AT&T in the then-amount of approximately $250,000.  Houle Declaration, ¶

20  5.

21       The Order dismissing the Prior Case was entered by the Court on March

22  12, 2010 (the "Dismissal Order") [docket no. 51].  A true and correct copy of

23  the Dismissal Order is attached as Exhibit "F" to the RJN, and incorporated

24  herein by this reference.

25       Subsequent to the discussions immediately after the hearing on the Stay

26  Motion on February 16, 2010, Debtor did not engage in any further payment

27  discussions with AT&T until March 11, 2010.  Houle Declaration, ¶ 6.

28

1    On March 11, 2010, Debtor's now third bankruptcy counsel, Scott C.

2    Clarkson of Clarkson, Gore & Marsella, APLC ("Third Counsel"), contacted

3    AT&T's counsel and stated, among a great many other things, that AT&T

4    would have to agree to refrain from terminating the underlying contracts

5    immediately upon entry of the Dismissal Order or Debtor would have to re-file

6    a chapter 11 case as soon as the Dismissal Order was entered, and further

7    made a repayment proposal to AT&T including an up-front payment of less

8    than $50,000.  Houle Declaration, ¶ 7.

9    AT&T responded to Debtor on March 11, 2010, and indicated that the

10    proposal was insufficient and AT&T did not accept it, that the Debtor had lost

11    credibility with AT&T given Debtor's repeated failures to perform, and that

12    AT&T would not agree to refrain from seeking to terminate the underlying

13    contracts.  Houle Declaration, ¶ 8.

14    On March 12, 2010 (the "Second Petition Date"), Debtor re-filed this

15    chapter 11 case.  A true and correct copy of the new petition is attached as

16    Exhibit "G" to the RJN, and incorporated herein by this reference.

17    Debtor also filed its schedules on March 12, 2010, which reflect, in

18    relevant part, that four creditors make up approximately eighty percent of

19    Debtor's total liabilities.  A true and correct copy of the Debtor's schedules

20    [docket no. 2] is attached as Exhibit "H" to the RJN, and incorporated herein

21

22    by this reference.

23    C.    Debtor's Outstanding Debt Owed To AT&T

24    Debtor has a history of consistently missing and delaying payments to

25    AT&T for services received pursuant to the Agreements.  Egan Declaration, ¶

26    3c.  As of March 15, 2010, Debtor owes AT&T $1,054,559.79 in total

27    outstanding debt.  Egan Declaration, ¶ 3c.  Of this amount, $584,649.58

28    represents amounts owing prior to the Original Petition Date of November 30,

2009.  Egan Declaration, ¶ 3c.  However, Debtor has since incurred an

additional $469,910.21 in charges from the Original Petition Date up through

March 15, 2010.  Egan Declaration, ¶ 3c.  True and correct copies of the

Debtor's approximate past due amounts along with the supporting invoices are

attached as composite Exhibit "C" to the Egan Declaration and incorporated

herein by this reference.

Further, Debtor failed to make any considerable payments to AT&T for

its continued use of AT&T's telecommunications services.  Egan Declaration,

¶ 3d.  Since the Original Petition Date, AT&T has received payments in the

sum of only $58,836.93 from Debtor.  Egan Declaration, ¶ 3d.  A true and

correct copy of the Debtor's post-petition payment history is attached as

Exhibit "D" to the Egan Declaration and incorporated herein by this reference.

Given that Debtor's monthly invoices for use of AT&T's services are

approximately $121,000, AT&T is damaged each day in the amount of

approximately $4,000 due to Debtor's failure to make payments.  Egan

Declaration, ¶ 3e.

## III.    DISMISSAL IS WARRANTED UNDER SECTION 1112(b) FOR "CAUSE"

### A.    "Bad Faith" Constitutes "Cause" To Dismiss Under Section 1112(b)

Section 1112(b) of the Bankruptcy Code provides, in relevant part, that:

(b) … on request of a party in interest … the court may convert a case
under this chapter to a case under chapter 7 of this title or **may dismiss
a case under this chapter… for cause …**

11 USCA § 1112(b) (emphasis added).  The legislative history of Section

1112 indicates that it was intended to give the Court broad discretion to

1    dismiss a case for "cause":

2
3    > Subsection (b) gives <u>wide discretion</u> to the court to make an appropriate
   > disposition of the case *sua sponte* or upon motion of a party in interest,
4    > or the court is permitted to convert a reorganization case to a liquidation
   > case ...  This list is not exhaustive.  The court will be able to consider
5    > other factors as they arise, and to use its equitable powers to reach an
6    > appropriate result in individual cases.

7    <u>See</u> Revision Notes and Legislative Reports to Section 1112 (emphasis
8    added).

9        While nothing in the Bankruptcy Code expressly requires a showing of
10   good faith by a debtor as a prior condition to his or her right to relief under
11   any bankruptcy chapter, it is now well established in the Ninth Circuit that the
12   lack of good faith in commencing a case is "cause" for dismissal of a chapter
13   11 case under Section 1112(b).[3]  <u>In re Powers</u>, 135 B.R. 980, 990-91 (Bankr.
14   C.D. Cal. 1991)  (citing <u>In re Arnold</u>, 806 F.2d 937, 939 (9th Cir. 1986) ); <u>In re</u>
15   <u>Can-Alta Properties, Ltd.</u>, 87 B.R. 89, 91 (9th Cir. BAP 1988) ; <u>In re Walter</u>,
16   108 B.R. 244 (Bankr. C.D. Cal. 1989) ).  In this context, courts have observed
17   that "[a] petition filed in bad faith may manifest an intent to cause hardship or
19   delay creditors by resort to the chapter 11 device merely for purpose of
20   invoking the automatic stay, without an intent or ability to reorganize [one's]
21   financial activities."  <u>Powers</u>, 135 B.R. at 991 (citing <u>In re Thirtieth Place,</u>
22   <u>Inc.</u>, 30 B.R. 503, 505 (9th Cir. BAP 1983) ).  Moreover, "it is the detriment to
23   creditors, not the advantage to prior owners which has the greater relevance in
24   determining whether creditors are fraudulently hindered or delayed by the
25
26

27   ---
     [3]  "While the case law refers to these dismissals as dismissals for "bad faith" filing, it is
28   probably more accurate in light of the precise language of Section 1112(b) to call them
     dismissals "for cause."  <u>Marsch v. Marsch (In re Marsch)</u>, 36 F.3d 825, 828 (9th Cir. 1994).

filing." Id. (citing Duggan v. Highland-First Avenue, 25 B.R. 955, 962

(Bankr. C.D. Cal. 1992)).

As set forth in Collier on Bankruptcy:

> In addition to granting relief for one of the reasons enumerated in
> section 1112(b), the court may also dismiss a chapter 11 case in its
> entirety for lack of good faith.   [T]he requirement of good faith has
> been held to be an implicit condition to the filing and maintenance of
> a bankruptcy case for almost a century. As the Court of Appeals for
> the Fifth Circuit explained: "Every bankruptcy statute since 1898 has
> incorporated literally, or by judicial interpretation, a standard of
> good faith for the commencement, prosecution, and confirmation of
> bankruptcy proceedings."
>
> In general, a court may dismiss any case for lack of good faith in
> order to prevent abuse of the chapter 11 process, or in response to
> misconduct that is incompatible with the functioning of the
> bankruptcy system…
>
> [T]he good faith standard focuses directly on the subjective
> intentions of the debtor, and is designed to prevent "abuse of the
> bankruptcy process, or the rights of others, involv[ing] conduct or
> situations only peripherally related to the economic interplay
> between the debtor and the creditor community." As one court has
> explained: "Generally, the facts surrounding good faith will be
> determined by circumstantial evidence.  It is unlikely that a debtor
> will ever acknowledge its own bad faith; therefore, one will reach
> conclusions about the party's intent from the totality of the
> circumstances surrounding the filing of the case."  [¶]
>
> One of the basic underpinnings of the good faith doctrine, and a
> factor that helps explain its unique purpose, is the fundamental
> policy that bankruptcy relief is generally limited to the "'honest but
> unfortunate debtor.'"  As one court has explained in the context of
> dismissing a chapter 11 case for lack of good faith: "Congress has
> never intended that  bankruptcy be a refuge for the irresponsible,
> unscrupulous or cunning individual."  Thus, good faith is generally
> held to require a showing of "honesty of intention."  [¶]
>
> Accordingly, if the totality of the circumstances demonstrates that
> continuation of the chapter 11 case would promote injustice and
> shelter misconduct, the court may terminate the proceedings.

Collier on Bankruptcy, ¶ 1112.07 (15th ed. Rev. 1999) (citations omitted).

See also In re Boynton, 184 B.R. 580, 581 (Bankr. S.D. Cal. 1995) ("This

Court has the authority to dismiss a chapter 11 case "for cause" pursuant to 11

U.S.C. § 1112(b).  A filing that lacks good faith establishes cause for dismissal

under § 1112(b)."); In re Little Creek Development Co., 779 F.2d 1068, 1072

(5th Cir. 1986) ("Numerous cases have found a lack of good faith to constitute

1    'cause' for lifting the stay to permit foreclosure or for dismissing the case.").

2    Accordingly, it is beyond dispute that the Court may dismiss a chapter

3    11 case as a bad faith filing. As set forth herein, most of the badges of bad

4    faith that typify a bad-faith filing under well established Ninth Circuit law are

5    present in this case. As such, dismissal for cause under Section 1112(b) is

6    warranted, and this Court should grant AT&T's Motion to Dismiss.

7          B.     The Facts Of This Case Satisfy The Ninth Circuit Standard For A

8                  Finding Of "Bad Faith"

9    Courts have identified some common "badges of bad faith." See, e.g.,

10   In re Yukon Enterprises, Inc., 39 B.R. 919, 921 (Bankr. C.D. Cal. 1984)

11   (enumerating various factors indicative of bad faith); In re Little Creek

12   Development Co., 779 F.2d 1069 (5th Cir. 1986) (cited with approval by

13   Arnold, 806 F.2d at 937). However, the existence of bad faith in any

14   bankruptcy case depends not on the presence of any one specific fact, but upon

15   an amalgam of factors after examination of the debtor's financial status and

16   motives. Marsch v. Marsch (In re Marsch), 36 F.3d 825, 828 (9th Cir. 1994)

17   (citing Arnold, 806 F.2d at 939). Ultimately, the test for bad faith is "whether

19   a debtor is attempting to unreasonably deter and harass creditors or attempting

20   to effect a speedy, efficient reorganization on a feasible basis." Marsch, 36

21   F.3d at 828 (citing Arnold, 806 F.2d at 939).

22   The requirement that chapter 11 cases be filed in good faith

23   encompasses several, distinct equitable limitations that courts have placed on

24   chapter 11 filings. Marsch, 36 F.3d at 828 (citing In re N.R. Guaranteed

25   Retirement, Inc., 112 B.R. 263, 270 (Bankr. N.D. Ill.) aff'd, 119 B.R. 149

26   (N.D. Ill 1990)). Courts have implied such limitations to deter filing that seek

27   to achieve objectives outside the legitimate spe of the bankruptcy laws.

28   Marsch, 36 F.3d at 828 (emphasis added and citations omitted). Pursuant to

1   11 U.S.C. § 1112(b), courts have dismissed cases filed for a variety of tactical

2   reasons unrelated to a bona fide reorganization.  Id.

3       The law in the Ninth Circuit is clear and unequivocal—if the Court

4   finds that some, but not necessarily all, of the following factors are present,

5   then a petition will be deemed to have been filed in bad faith:

6       1.   The debtor has one asset;

7       2.   The secured creditors' liens encumber this asset;

8       3.   The debtor generally has no employees except for the

9            principals;

10      4.   The debtor has little or no cash flow;

11      5.   The debtor has no available sources of income to sustain a plan

12           of reorganization or to make adequate protection payments;

13      6.   There are few, if any, unsecured creditors;

14      7.   The property has been posted for foreclosure because of

15           arrearages on the debt;

16      8.   Bankruptcy offers the only possibility of forestalling loss of the

17           property;

19      9.   There are allegations of wrongdoing by the debtor or its

20           principals; and

21      10.  The "new debtor syndrome" in which an entity is created or

22           revitalized on the eve of foreclosure to isolate the insolvent

23           property and its creditors.

24  See Marsch, 36 F.3d at 825; Arnold, 806 F.2d at 939;  In re Rainbow

25  Magazine, Inc., 136 B.R. 545 (9th Cir. BAP 1991); In re Can-Alta Properties,

26  Ltd., 87 B.R. 89 (9th Cir. BAP 1988); In re Stolrow's, Inc., 84 B.R. 167 (9th

27  Cir. BAP 1988); In re Walter, 108 B.R. 244 (Bankr. C.D. Cal. 1989) (March,

28  J.); In re Family Health Services, Inc., 104 B.R. 279 (Bankr. C.D. Cal. 1989)

1  (Wilson, J.), rev'd on other grounds 143 B.R. 232 (C.D. Cal. 1992); In re

2  Missouri Flats Assoc., 86 B.R. 634 (Bankr. E.D. Cal. 1988); In re Southern

3  California Sound Systems, Inc., 69 B.R. 893 (Bankr. S.D. Cal. 1987).

4       Moreover, the Ninth Circuit has specifically held that "not all of the

5  factors listed are necessary to a finding of bad faith." Can-Alta Properties, 87

6  B.R. at 91.  Indeed, bankruptcy courts in the Ninth Circuit continue to

7  recognize that the above factors are merely "ten common conditions ... which

8  indicate bad faith." Walter, 108 B.R. at 247 (emphasis added).  See also

9  Southern California Sound Systems, 69 B.R. at 893 (court referred to these ten

10  indicia of a bad faith filing with approval and found bad faith based on the

11  presence of only four of the ten factors).

12       Notwithstanding the sufficiency of only a few of these factors, the

13  Debtor in this case satisfies a significant number of the bad-faith indicia

14  adopted by the Ninth Circuit:

15       Little to No Cash-Flow:  As indicated in Debtor's Monthly Cash Flow

16  Projection filed as part of Debtor's schedules [docket no. 2], Debtor's

17  projected cash position is less than $10,000 over the course of the next several

19  months.  In comparison, as shown in the Egan Declaration, Debtor currently

20  owes AT&T in excess of $1.05 million, of which $450,000 was accrued since

21  the filing of the Prior Case.  Clearly, but for the dismissal of the Prior Case

22  and re-filing of this bankruptcy case, Debtor would not be able to satisfy the

23  administrative claim owed to AT&T.  This reason alone is sufficient to find

24  the Debtor's actions in bad faith.

25       No Available Source of Income to Support Plan:  As indicated by

26  Debtor's misrepresentations about its current financial position and the ability

27  to pay AT&T outside of bankruptcy, along with the re-filing of its petition, it

28  does not appear that Debtor has any reliable or significant sources of income

to sustain a plan of reorganization.  Clearly, there does not seem to be any basis to believe that Debtor would have been able to repay the $450,000 administrative claim to AT&T in the Prior Case.

Few Creditors:  Debtor's schedules state that only four (4) creditors make up approximately eighty percent (80%) of Debtor's total liabilities.

Filing is Only Hope to Avoid Loss of Property:  Bankruptcy offers Debtor's principal the only possibility of preventing AT&T from proceeding with termination of the Agreements.

Serial Bankruptcy Filings:  This factor is because Debtor's filed multiple chapter 11 bankruptcies, is represented by its third bankruptcy counsel, made false representations to the Court and AT&T regarding its intentions to make payments upon dismissal of the Prior Case, failed to make any significant payments to AT&T for post-petition services over the course of 3 ½ months in the Prior Case while continuing to receive AT&T services, and overall abused the bankruptcy process in an attempt to avoid its contractual obligations, all of which serve to grossly prejudice AT&T.

C.    The Petition Constitutes A Serial Filing In Further Evidence of "Bad Faith"

The filing of successive bankruptcy petitions indicates bad faith where the subsequent filing was designed to frustrate statutory requirements and to abuse the bankruptcy process.  In re Spectee Group, Inc., 185 B.R. 146, 156 (Bankr. S.D.N.Y. 1995) ("Serial filings are a 'badge' of bad faith."); In re Burns, 169 B.R. 563, 567 (Bankr. W.D. Pa. 1994); In re Coones Ranch, Inc., 138 B.R. 251, 258 (Bankr. D.S.D. 1991); In re Hammonds, 139 B.R. 535, 542 (Bankr. D. Colo. 1992) ("Certain characteristics of a chapter 7 case ripe for dismissal on grounds of bad faith…include…multiple case filings"); In re Delray Assoc. Ltd. Partnership, 212 B.R. 511 (Bankr. D. Md. 1997) (The mere

1   fact that the second chapter 11 filing was, at least in name, an involuntary

2   bankruptcy case did not preclude dismissal of second petition as a bad faith,

3   serial filing, given evidence that debtor had orchestrated this second filing).

4        Here, Debtor engaged in bad faith by re-filing its bankruptcy case only

5   hours after dismissal of the Prior Case.  This Court's ruling on the Dismissal

6   Motion was presumably based on, *inter alia*, the specific testimony in support

7   of the Dismissal Motion that "the Debtor will be able to pay its bills and

8   sustain its business outside of chapter 7."  Dismissal Motion, page 9, lines 7-

9   14.  Further, Debtor and its attorneys made numerous post-petition promises to

10   AT&T of curing the post-petition amounts owed to AT&T immediately upon

11   dismissal of the Prior Case.  In fact, immediately after the February 16, 2010

12   hearing on the AT&T Stay Motion, Debtor's principal personally represented

13   that they had sufficient funds to cure all of AT&T's post-petition arrears of

14   approximately $250,000 and would do so as soon as the case was dismissed.

15   Houle Declaration, ¶ 5.

16        Further, the Court's decision to continue the hearing on the Stay Motion

17   for one month was premised upon Debtor's <u>second</u> bankruptcy counsel's

19   request that it had been engaged for less than two weeks, and the continuance

20   was granted to provide counsel an opportunity to respond to the Stay Motion.

21   Importantly, at that same hearing, Second Counsel represented to the Court

22   that Debtor had sufficient funds to pay AT&T and that if the bankruptcy case

23   was dismissed, Debtor could pay AT&T.

24        Based upon representations from Debtor's now <u>third</u> bankruptcy

25   counsel that Debtor would file a chapter 11 case immediately upon the

26   dismissal of the Prior Case if AT&T did not agree to refrain from terminating

27   the Agreements, along with an extremely minimal repayment proposal, it

28   appears clear that Debtor intended to dupe the Court and AT&T as to its true

1   intentions to avoid payment to AT&T and circumvent AT&T's honest efforts

2   to seek relief from stay.  In particular, as evidence of this bad faith, there were

3   no repayment proposals made by Debtor from February 16, 2010 until March

4   11, 2010.  Debtor was apparently ready to file papers for this new chapter 11

5   bankruptcy case before the Dismissal Order was even signed and entered by

6   this Court, and had apparently hired Third Counsel for this very purpose.

7          Thus, for all practical purposes, this case should be viewed as a serial

8   filing further evidencing Debtor's bad faith.

9          D.      A Finding Of "Bad Faith" Does Not Require A Showing Of

10                 Actual Fraud, Only An Improper Purpose

11         In the case of In re Leavitt, 171 F.3d 1219, 1224 (9th Cir. 1999), the

12  Ninth Circuit **specifically rejected** the notion that a finding of "bad faith"

13  must be premised upon actual fraud or malice:

14
15         A finding of bad faith does not require fraudulent intent by the debtor.
           Neither malice nor actual fraud is required to find a lack of good faith.
           The bankruptcy judge is not required to have evidence of debtor ill will
16         directed at creditors, or that debtor was affirmatively attempting to
           violate the law-malfeasance is not a prerequisite to bad faith.
17

19  Id. at 1224-1225 (emphasis added) (quoting In re Powers, 135 B.R. 980, 994

20  (Bankr. C.D. Cal. 1991)); see also In re Waldron, 785 F.2d 936, 941 (11th Cir.

21  1986) ("manifestations of bad faith need not be based upon a finding of actual

22  fraud, requiring proof of malice, scienter or an intent to defraud.  We simply

23  require that the bankruptcy courts preserve the integrity of the bankruptcy

24  process by refusing to condone its abuse."); In re Grieshop, 63 B.R. 657, 663

25  (N.D. Ind. 1986).

26         Rather, dismissal based upon bad faith may be premised solely upon an

27  abuse of the bankruptcy process or an "unworthy purpose."  Bankruptcy courts

28  have frequently found "bad faith" filings where the debtor has improperly

1    sought to take advantage of remedies provided for in the Bankruptcy Code.

2    See Southern California Sound Systems, 69 B.R. at 900 ("Where the Court

3    becomes convinced that the true purpose of filing a petition is other than to

4    reorganize a financially distressed business, but to merely take advantage of

5    one of the remedies available under the Code, dismissal is appropriate in order

6    to protect the jurisdictional integrity of the Court."); see also In re Kempner,

7    152 B.R. 37, 39 (D. Del. 1993) ("Bad faith may be found when the debtor has

8    a frivolous, noneconomic motive for filing a bankruptcy petition, when there

9    is a sinister or unworthy purpose, or when there is an abuse of the judicial

10    process.") (quoting 4 Lawrence P. King, et al., Collier on Bankruptcy ¶

11    707.03, at pp. 707-9 to 707-10 (15th ed. 1992)); In re Talladega Steaks, Inc.,

12    50 B.R. 42 (Bankr. N.D. Ala. 1985); In re Alison Corp., 9 B.R. 827 (Bankr.

13    S.D. Cal. 1981).

14        As such, there is no need for AT&T to establish actual fraud, and as

15    shown herein and in the supporting declarations, AT&T has established that

16    this bankruptcy case was filed for an improper purpose:  to frustrate AT&T's

17    legitimate efforts to terminate the Agreements and to convert approximately

19    $450,000 of administrative debt owing to AT&T as a general unsecured pre-

20    petition claim, which it otherwise clearly would not have been able to pay.

21        E.    The Debtor's Burden of Proof

22        With respect to an alleged bad faith filing, a creditor can establish a

23    prima facie case of bad faith filing by showing the transfer of distressed

24    property to the debtor within close proximity to the bankruptcy filing.  In re

25    Yukon Enter., Inc., 39 B.R. 919, 921 (Bankr. C.D. Cal. 1984); Duvar, 205

26    B.R. at 200-201.  Once a prima facie case is established, the burden shifts to

27    the debtor to demonstrate a good faith business reason for the transfer and the

28    filing.  In re Eighty South Lake, Inc., 63 B.R. 501, 508 (Bankr. C.D. Cal.

1    1986), aff'd, 81 B.R. 580 (9th Cir. BAP 1987); see also In re Leavitt, 209 B.R.

2    935, 940  (Bankr. 9th Cir. 1997) ("Debtor bears the burden of proving that the

3    petition was filed in good faith."); In re Powers, 135 B.R. 980, 997 (Bankr.

4    C.D. Cal. 1991) ("[O]nce a debtor's good faith is in issue, the debtor bears the

5    burden of proving the petition was filed in good faith."); Collier on

6    Bankruptcy, ¶ 1112.04[8] (15th ed. Rev. 2000)  ("[I]f the issue is whether the

7    petition was filed in good faith, the burden rests on the petitioner.").

8        Accordingly, for the purposes of this Motion, the Debtor must establish

9    by a preponderance of the evidence that the second petition was filed in good

10    faith.  If it cannot do so, the Motion should be granted.

11    **IV.    THE DEBTOR SHOULD BE BARRED FROM RE-FILING FOR**

12    **A PERIOD OF AT LEAST 180 DAYS**

13        For the reasons set forth above, AT&T requests that the Court enter an

14    order barring Debtor from re-filing for relief under the Bankruptcy Code for a

15    period of at least 180 days.  Ample authority exists to bar Debtor from re-

16    filing pursuant to Bankruptcy Code Sections 105(a) and 349(a), and

17    Bankruptcy Rule 9011.

19        In Lerch v. Federal Land Bank, 94 B.R. 998 (N.D. Ill. 1989), the

20    bankruptcy court ordered that the debtor was prohibited from filing a

21    bankruptcy petition for a period of two years.  The district court affirmed,

22    holding that Section 349(a) clearly affords a bankruptcy court the

23    discretionary power to determine whether there is "cause" for a dismissal with

24    prejudice.  Id. at 1002.  Specifically, the phrase "[u]nless the court, for cause,

25    orders otherwise" at the beginning of Section 349(a) gave the bankruptcy court

26    authority to prohibit a future petition; the bankruptcy court can use its own

27    factors to determine what may constitute "cause."  Id.  The Lerch decision

28    supports the proposition that the court, in its discretion, may prohibit the filing

1    of any bankruptcy case beyond the limits of Section 109(g).  Id. at 1001

2    ("[T]his Court holds that Section 349(a) is not modified or limited by Section

3    109(g) so long as the bankruptcy court 'for cause, rules otherwise' and the

4    bankruptcy court's dismissal of the case with prejudice for the two-year period

5    falls under the 'for cause' exception of Section 349(a).").

6        Courts have also recognized their authority to bar subsequent

7    bankruptcy petitions based upon Section 105(a) and Bankruptcy Rule 9011.

8    See In re Dami, 172 B.R. 6, 11 (Bankr. E.D. Pa. 1994) (Bankruptcy Rule

9    9011); In re Earl, 140 B.R. 728, 741 (Bankr. N.D. Ind. 1992) (§ 105(a)); In re

10   Jolly, 143 B.R. 383, 388 (E.D. Va. 1992) (§ 105(a)).  Similarly, the

11   Bankruptcy Court has the authority to bar the Debtor from filing a subsequent

12   petition for time periods in excess of 180 days.  See Lerch v. Federal Land

13   Bank, 94 B.R. 1001 (two year bar pursuant to § 349(a)); In re Herrera, 194

14   B.R. 178, 190 (Bankr. N.D. Ill. 1996)(one year bar pursuant to § 349(a)); In re

15   Dilley, 125 B.R. 189, 197 (Bankr. N.D. Ohio 1991) (dismissing with prejudice

16   for one year for abusive practices pursuant to §§ 349(a) and 105(a)); In re

17   Hundley, 103 B.R. 768, 771 (Bankr. E.D. Va. 1989) (dismissing chapter 13

19   debtor with prejudice for one year pursuant to §§ 105, 349 and 1307); In re

20   Damien, 35 B.R. 685, 686 (Bankr. S.D. Fla. 1983) (pursuant to § 105,

21   "[d]ismissal is with prejudice to the filing of any other bankruptcy proceeding

22   by these debtors earlier than one year after the date this order becomes final.").

23       Accordingly, this Court has the authority pursuant to Sections 105(a)

24   and 349(a), and Bankruptcy Rule 9011, to enter an order prohibiting Debtor

25   from filing a subsequent petition for a period of 180 days or more.

26

27

28

## V.    AT&T REQUESTS THAT THE COURT RESERVE JURISDICTION TO ENTERTAIN A MOTION FOR SANCTIONS NOTWITHSTANDING THE DISMISSAL

AT&T is requesting dismissal of Debtor's chapter 11 bankruptcy case for cause pursuant to Section 1112(b).  AT&T also believes that sanctions are warranted against the Debtor, Debtor's principal, and Debtor's Third Counsel for the bad-faith filing of Debtor's chapter 11 petition.  Accordingly, AT&T respectfully requests that the Court reserve jurisdiction over the issue of sanctions in the event that AT&T brings such a motion before the Court.

## VI.    CONCLUSION

Based on the misrepresentations of Debtor, mishandling of the multiple bankruptcy cases, Debtor's immediate re-filing of its chapter 11 petition upon dismissal of the Prior Case, and the resulting undue prejudice to AT&T, the Debtor's bankruptcy case is a bad faith filing, and thus cause exists to grant dismissal.  AT&T respectfully requests that this Court enter an order dismissing the above-entitled chapter 11 bankruptcy case pursuant to 11 U.S.C. § 1112(b), with a 180-day bar to re-filing, and for such other relief as the Court may deem just and proper.

Dated: March 17, 2010

PILLSBURY WINTHROP SHAW PITTMAN LLP
CRAIG A. BARBAROSH
MARK D. HOULE
DAVID TABIBIAN


By: _____/s/ Mark D. Houle_____
Mark D. Houle, Esq.
Attorneys for Creditor,
Pacific Bell Telephone Company d/b/a AT&T
California