1   BARRY R. GORE ESQ. SBN 143278
    CHRISTINE M. FITZGERALD, ESQ. SBN 259014
2   SMITH | CAMPBELL | CLIFFORD | KEARNEY | GORE
    A Professional Law Corporation
3   3424 Carson Street, Suite 350
    Torrance, CA 90503
4   Telephone:  (310) 542-0111
    Facsimile:   (310) 241-7254
5
    Counsel for ConnectTo Communications, Inc.
6

7               UNITED STATES BANKRUPTCY COURT

8               CENTRAL DISTRICT OF CALIFORNIA

9                   LOS ANGELES DIVISION

10  In Re                                Case No.  2:10-bk-19227-VZ

11  CONNECTTO COMMUNICATIONS,            Chapter 11
    INC.
12          a Nevada corporation,        DEBTOR'S DISCLOSURE STATEMENT
                                         DESCRIBING DEBTOR'S CHAPTER 11 PLAN
13          Debtor in Possession.
                                         Date:     May 28, 2011
14                                       Time:     1:30 p.m.
                                         Place:    Courtroom 1368
15                                                 255 E. Temple Street
16                                                 Los Angeles, CA 90012

17

18       DISCLOSURE STATEMENT AND PLAN OF REORGANIZATION FOR

    CONNECTTO COMMUNICATIONS, INC.
19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

Page(s)

I.    INTRODUCTION ........................................................................................ 2

II.   GENERAL DISCLAIMER AND VOTING PROCEDURE ......................................... 2

III.  WHO MAY OBJECT TO CONFIRMATION OF THE PLAN ................................. 3

IV.  WHO MAY VOTE TO ACCEPT OR REJECT THE PLAN ................................... 3

V.    VOTES NECESSARY TO CONFIRM THE PLAN ............................................... 5

VI.  INFORMATION REGARDING VOTING IN THIS CASE ...................................... 6

VII. DESCRIPTION OF DEBTOR'S PAST AND FUTURE BUSINESS
      AND EVENTS PRECIPITATING BANKRUPTCY FILING ................................... 6

VIII. CRITICAL PLAN PROVISIONS .................................................................... 7

IX.  DESCRIPTION AND TREATMENT OF CLAIMS ............................................... 7

     a.    Overview of Plan Payments .......................................................... 7

     b.    Administrative Expenses ............................................................ 10

     c.    Unsecured Tax Claims ............................................................... 11

     d.    Lease Assumption ..................................................................... 13

     e.    Secured Claims ......................................................................... 16

           CLASS ONE .......................................................................... 16

           CLASS TWO .......................................................................... 17

           CLASS THREE ........................................................................ 17

     f.    Unsecured Claims ..................................................................... 18

           CLASS FOUR ......................................................................... 18

     g.    Insiders ................................................................................... 18

           CLASS FIVE .......................................................................... 18

     h.    Shareholders Interests ................................................................ 19

           CLASS SIX ............................................................................ 19

X.    SOURCE OF MONEY TO PAY CLAIMS AND INTEREST-
      HOLDERS ................................................................................................ 19

XI.    FINANCIAL RECORDS TO ASSIST IN DETERMINING
       WHETHER PROPOSED PAYMENT IS FEASIBLE ............................................. 20

XII.   ASSETS AND LIABILITIES OF THE ESTATE ....................................................... 20

       a.    Assets ...................................................................................................... 20

       b.    Liabilities ................................................................................................ 20

       c.    Summary .................................................................................................. 20

XIII.  TREATMENT OF NONCONSENTING CLASSES ................................................ 21

XIV.   TREATMENT OF NONCONSENTING MEMBERS OF
       CONSENTING CLASS (CHAPTER 7 LIQUIDATION ANALYSIS .................... 22

XV.    FUTURE DEBTOR ................................................................................................. 23

       a.    Management of Debtor ............................................................................ 23

       b.    Disbursing Agent .................................................................................... 24

       c.    Future Financial Outlook ........................................................................ 24

XVI.   ASSUMPTION OF CONTRACTS AND LEASES; OTHER
       PROVISIONS .......................................................................................................... 25

       a.    Assumptions ............................................................................................ 25

       b.    Rejections ................................................................................................ 26

XVII.  BANKRUPTCY PROCEEDINGS .......................................................................... 26

XVIII. TAX CONSEQUENCES OF PLAN ........................................................................ 30

       A.    Introduction ............................................................................................. 30

       B.    Consequences to the Debtor .................................................................... 30

       C.    Consequences to the Creditors ................................................................ 31

XIX.   EFFECT OF CONFIRMATION OF PLAN ............................................................. 31

       a.    General comments ................................................................................... 31

       b.    Discharge of liability for payment of debts; status of liens; equity
             security holders ....................................................................................... 31

       c.    Modification of the Plan ......................................................................... 32

       d.    Post-Confirmation Causes of Action ...................................................... 32

       e.    Final Decree ............................................................................................ 32

1

**XX.    RECOMMENDATION** ................................................................................................. 33

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## I.    INTRODUCTION

On March 12, 2010, ConnectTo Communications, Inc., ("Debtor") filed a bankruptcy petition under Chapter 11 of the Bankruptcy Code ("Code").  The document you are reading is both the Plan of Reorganization ("Plan") and the Disclosure Statement.  Debtor ("Proponent") has proposed the Plan to treat the claims of the Debtor's creditors and, if applicable, the interests of shareholders or partners, and to reorganize the Debtor's business affairs.  A disclosure statement describes the assumptions that underlie the Plan and how the Plan will be executed. The Bankruptcy Court ("Court") has approved the form of this document as an adequate disclosure statement, containing enough information to enable parties affected by the Plan to make an informed judgment about the Plan.  The Court has not yet confirmed the Plan, which means the terms of the Plan are not now binding on anyone.

The Proponent has reserved _____, at 1:30 p.m., in Courtroom 1368 for a hearing to determine whether the Court will confirm the Plan.

Any interested party desiring further information should contact Debtor's counsel in writing:

Christine M. Fitzgerald, Esq.
Smith Campbell Clifford Kearny Gore
A Professional Law Corporation
3424 Carson Street, Suite 350
Torrance, CA 90503
Telephone: (310) 542-0111
Facsimile: (310) 241-7254

The financial data relied upon in formulating the Plan is based on the Debtor's books and records. The information contained in this Disclosure Statement is provided by the Debtor.  The Proponent represents that everything stated in the Disclosure Statement is true to the Proponent's best knowledge.  The court has not yet determined whether or not the Plan is confirmable and makes no recommendation as to whether or not you should support or oppose the Plan.

## II.    GENERAL DISCLAIMER AND VOTING PROCEDURE

**PLEASE READ THIS DOCUMENT, INCLUDING THE ATTACHED EXHIBITS, CAREFULLY. IT EXPLAINS WHO MAY OBJECT TO CONFIRMATION OF THE PLAN.  IT EXPLAINS WHO IS ENTITLED TO VOTE TO ACCEPT OR REJECT THE**

1  PLAN.  IT ALSO TELLS ALL CREDITORS AND ANY SHAREHOLDERS OR

2  PARTNERS WHAT TREATMENT THEY CAN EXPECT TO RECEIVE UNDER THE

3  PLAN, SHOULD THE PLAN BE CONFIRMED BY THE COURT.

4        THE SOURCES OF FINANCIAL DATA RELIED UPON IN FORMULATING

5  THIS DOCUMENT ARE SET FORTH IN THE DECLARATION ATTACHED

6  HERETO.  ALL REPRESENTATIONS ARE TRUE TO THE PROPONENT'S BEST

7  KNOWLEDGE.

8        NO REPRESENTATIONS CONCERNING THE DEBTOR THAT ARE

9  INCONSISTENT WITH ANYTHING CONTAINED HEREIN ARE AUTHORIZED

10 EXCEPT TO THE EXTENT, IF AT ALL, THAT THE COURT ORDERS OTHERWISE.

11       After carefully reviewing this document and the attached exhibits, please vote on the

12 enclosed ballot and return it in the enclosed envelope.

13       The Proponent has reserved a hearing date for a hearing to determine whether the Court

14 will confirm the Plan.  Please refer to Section I above for the specific hearing date.  If, after

15 receiving the ballots, it appears that the Proponent has the requisite number of votes required by

16 the Code, the Proponent will file a motion for an order confirming the Plan (the "Motion").

17       The Motion shall at least be served on all impaired creditors and partners or shareholders

18 who reject the Plan and on the Office of the United States Trustee.  Any opposition to the Motion

19 shall be filed and served on the Proponent and Office of the United States Trustee no later than

20 fourteen days prior to the hearing date.  Failure to oppose the confirmation of the Plan may be

21 deemed consent to the Plan's confirmation.

22 **III.   WHO MAY OBJECT TO CONFIRMATION OF THE PLAN**

23       Any party in interest may object to confirmation of the Plan, but as explained below not

24 everyone is entitled to vote to accept or reject the Plan.

25 **IV.   WHO MAY VOTE TO ACCEPT OR REJECT THE PLAN**

26       It requires both an allowed and impaired claim or interest in order to vote either to accept

27 or reject the Plan.  A claim is defined by the Code to include a right to payment from the Debtor.

28

ConnectTo DS and Plan v.1

3    Debtor's Disclosure Statement and Chapter 11 Plan

1    An interest represents an ownership stake in the Debtor.

2         In order to vote a creditor or interest-holder must first have an <u>allowed claim or interest</u>.

3    With the exceptions explained below, a claim is allowed if proof of the claim or interest is

4    properly filed before any bar date and no party in interest has objected, or if the court has entered

5    an order allowing the claim or interest.  Please refer to Section VI below for specific information

6    regarding bar dates in this case.

7         Under certain circumstances a creditor may have an allowed claim even if a proof of

8    claim was not filed and the bar date for filing a proof of claim has passed.  A claim is deemed

9    allowed if the claim is listed on the Debtor's schedules and is not scheduled as disputed,

10   contingent, or unliquidated.  **Exhibit "A"** contains a list of claims that are not scheduled as

11   disputed, contingent, or unliquidated.  For purposes of added disclosure, **Exhibit "A"** also

12   provides a listing by class of all schedule claims, all claims for which a Proof of Claim was filed,

13   claim amounts assumed for the Plan, and explanatory footnotes.

14        Similarly, an interest is deemed allowed if it is shown on the list of equity security

15   holders filed by the Debtor with the court and is not scheduled as disputed.

16        In order to vote, an allowed claim or interest must also be impaired by the Plan.

17        <u>Impaired creditors</u> include those whose legal, equitable, and contractual rights are altered

18   by the Plan, even if the alteration is beneficial to the creditor.  A contract provision that entitles a

19   creditor to accelerated payment upon default does not, however, necessarily render the claimant

20   impaired, even if the Debtor defaulted and the Plan does not provide the creditor with accelerated

21   payment.  The creditor is deemed unimpaired so long as the Plan cures the default, reinstates the

22   maturity of such claim as it existed before default, compensates for any damages incurred as a

23   result of reasonable reliance upon the acceleration clause, and (except for a default arising from

24   failure to operate a nonresidential lease subject to 11 U.S.C.A. § 365 (b)(1)(A) (West Supp.

25   2006)) compensates for any actual pecuniary loss incurred as a result of any failure to perform a

26   non-monetary obligation.

27   ///

28

ConnectTo DS and Plan v.1

4     Debtor's Disclosure Statement and Chapter 11 Plan

1    <u>Impaired interest-holders</u> include those whose legal, equitable, and contractual rights are

2    altered by the Plan, even if the alteration is beneficial to the interest holder.

3         There are also some types of claims that the Code requires be treated a certain way.  For

4    that reason they are considered unimpaired and therefore holders of these claims cannot vote.

5         <u>To summarize, there are two prerequisites to voting: a claim or interest must be both</u>

6    <u>allowed and impaired under the Plan.</u>

7         If a creditor or interest-holder has an allowed and impaired claim or interest, then he or

8    she may vote either to accept or reject the Plan (unimpaired claimants or interest-holders are

9    deemed to have accepted the Plan).  Impaired claims or interests are placed in classes and it is

10   the class that must accept the Plan.  Members of unimpaired classes do not vote, although as

11   stated above, they may object to confirmation of the Plan.  Even if all classes do not vote in favor

12   of the Plan, the Plan may nonetheless be confirmed if the dissenting classes are treated in a

13   manner prescribed by the Code.  Please refer to Section VI below for information regarding

14   impaired and unimpaired classes in this case.

15        Section IX sets forth which claims are in which class.  Secured claims are placed in

16   separate classes from unsecured claims.  Fed. R. Bankr. P. 3018(d) provides: "A creditor whose

17   claim has been allowed in part as a secured claim and in part as an unsecured claim shall be

18   entitled to accept or reject a plan in both capacities."

19   **V.    VOTES NECESSARY TO CONFIRM THE PLAN**

20        The Court may confirm the Plan if at least one noninsider impaired class of claims has

21   accepted and certain statutory requirements are met as to both nonconsenting members within a

22   consenting class and as to dissenting classes.  A class of claims has accepted the Plan when more

23   than one-half in number and at least two-thirds in amount of the allowed claims actually voting,

24   vote in favor of the Plan.  A class of interests has accepted the Plan when at least two-thirds in

25   amount of the allowed interests of such class actually voting have accepted it.  It is important to

26   remember that even if the requisite number of votes to confirm the Plan are obtained, the Plan

27   will not bind the parties unless and until the Court makes an independent determination that

28

ConnectTo DS and Plan v.1

1  confirmation is appropriate.  That is the subject of any upcoming confirmation hearing.

2  **VI.    INFORMATION REGARDING VOTING IN THIS CASE**

3      The bar date for filing a proof of claim in this case was August 1, 2010.

4      The bar date for a hearing on claim objections was December 3, 2010.

5      In this case the Proponent believes that Classes 1, 2, 3, and 4 are impaired and therefore

6  entitled to vote.  A party that disputes the Proponent's characterization of its claim or interest as

7  unimpaired may request a finding of impairment from the Court in order to obtain the right to

8  vote.

9      Ballots must be received by the Proponent, addressed to counsel for the Debtor, Christine

10  M. Fitzgerald, Esq., Smith Campbell Clifford Kearney Gore, A Professional Law Corporation,

11  3424 Carson Street, Suite 350, Torrance, CA 90503 by _____ at 4:00 p.m. pacific time.

12  **VII.    DESCRIPTION OF DEBTOR'S PAST AND FUTURE BUSINESS AND EVENTS**

13  **PRECIPITATING BANKRUPTCY FILING**

14      The Debtor is a Nevada corporation.  The Debtor has conducted 100% of its business

15  activity in Los Angeles, CA since 2004.  What follows is a brief summary of the dates and

16  circumstances that led Debtor to file bankruptcy.

17      The Debtor is a telecommunications company and services approximately 20,000

18  customers by reselling local telecommunications service purchased in bulk from AT&T, and

19  from Verizon.  The Debtor also provides long distance and ISP services to its customers.

20  Approximately 80% of the Debtor's customers are low income families and individuals.  The

21  services the Debtor provides to its low income customers are significantly subsidized by the

22  California Public Utilities Company ("CPUC").  As a result of CPUC withholding anticipated

23  reimbursements from July 2009 to February 2011, the Debtor fell behind on its payment to

24  AT&T.

25      What follows is a brief description of the Debtor's business and future business plans.

26  Further details relating to the Debtor's financial condition and post-confirmation operation of

27  the Debtor are found in sections X, XI, XII, XVI, and XV.  Before bankruptcy, Debtor provided

28

ConnectTo DS and Plan v.1

1    the following services for pay: telecommunications.  Debtor will continue this business.

2    **VIII.    CRITICAL PLAN PROVISIONS**

3    Future earnings from continued operations of the Debtor, and receipt of post-petition

4    reimbursements from March 12, 2010 to February 2011 from the CPUC in the approximate

5    amount of $375,369.46, are the sources of money earmarked to pay creditors.

6    Administrative Expenses will be paid on or within 365 days of the Effective Date.  Class

7    1 will be paid over a 5 year period on a monthly basis.  Class 2 will be paid over an 8 year period

8    on a monthly basis.  Class 3 will be paid over a 5 year period on a monthly basis.  Class 4

9    general unsecured creditors, holding a total of claims in the amount of $986,853.86 can expect

10   payment over an 8 year period on a monthly basis.

11   **IX.    DESCRIPTION AND TREATMENT OF CLAIMS**

12   a.   Overview of Plan Payments

13   Below is a summary of who gets paid what and when and from what source.  The identity

14   of members within a particular class is explained beginning on the next page.  The second

15   column lists two amounts.  First, the amount of each payment, or if only one is to be made, then

16   that amount; second, the total amount that will be paid.  The Proponent is usually not required by

17   law to pay an unsecured creditor or interest holder everything it would otherwise be entitled to,

18   had a bankruptcy case not commenced.  The "Payment Due Date" column states the frequency

19   with which payments will be made and the starting and ending dates.  Look at the starting date to

20   figure out who will be paid before and after you and in what amount.  The "Source of Payment"

21   column describes the expected source of payment.  Further details regarding the source of

22   payment are found in sections X and XI.

23   The timing of payments to many creditors is determined by the "Effective Date."

24   Administrative claims, unless otherwise stated, must be paid by the Effective Date.  The timing

25   of payments to impaired creditors is measured from the Effective Date (if timing is not tied to

26   Effective Date explain why).  In this case, the proposed Effective Date is January 1, 2012.

27   ///

28

ConnectTo DS and Plan v.1

| SUMMARY OF PLAN PAYMENTS | | | |
|---|---|---|---|
| Payment Recipient | Amount of each Payment [Total Amount to be Paid] | Payment Due Date | Source of Payment |
| 1. Smith Campbell Clifford Kearney Gore (Debtor's Current Counsel) | $5,000.00 (est) [$60,000.00] (est) | Within 365 days from Effective Date | Cash on hand + Post-Confirmation Income + PUC Reimbursement |
| 2. Clarkson Gore & Marsella (Debtor's Former Counsel) | $3,702.97 [$44,435.69] | Within 365 days from Effective Date | Cash on hand + Post-Confirmation Income + PUC Reimbursement |
| 3. Office of the U.S. Trustee (OUST) | $6,500.00 (est) [$6,500.00] (est) | Effective Date | Cash on hand + Post-Confirmation Income + PUC Reimbursement |
| 4. Clerk of the Court | $500.00 (est) [$500.00] (est) | Effective Date | Cash on hand + Post-Confirmation Income + PUC Reimbursement |
| 5. Universal Services Administration Co. | $17,000.00[1] (est) [$17,000.00] (est) | Effective Date | Cash on hand + Post-Confirmation Income + PUC Reimbursement |
| 6. Hartford Insurance Co. | $917.00 [$917.00] | Effective Date | Cash on hand + Post-Confirmation Income + PUC Reimbursement |
| 7. Priority Tax Claims-Sec. 507(a)(8) | $28,716.98[2] [$97,586.78] | Within 5 years from the Effective Date | Cash on hand + Post-Confirmation Income + PUC Reimbursement |
| 8. Lease Assumption (AT&T) | $10,281.49 [$863,645.16] | Monthly over 8 years | Cash on hand + Post-Confirmation Income + PUC Reimbursement |
| 9. Lease Assumption (U.S. Colo.) | $6,000.00 [$6,000.00] | Effective Date | Cash on hand + Post-Confirmation Income + PUC Reimbursement |
| 10. Lease Assumption (Billsoft Services) | $1,000.00 [$1,000.00] | Effective Date | Cash on hand + Post-Confirmation Income + PUC Reimbursement |
| 11. Lease Assumption (Emdeon Business Services) | $2,000.00 [$2,000.00] | Effective Date | Cash on hand + Post-Confirmation Income + PUC |

[1] USAC asserted the Debtor owed it approximately $58,009.72 in admin expenses. Proponent believes that USAC's administrative claim is approximately $17,000.00.
[2] As of Proof of Claims Filed April 25, 2011.

| | | | Reimbursement |
|---|---|---|---|
| 12. Lease Assumption (Hi-Tech Gateway) | $2,000.00 [$2,000.00] | Effective Date | Cash on hand + Post-Confirmation Income + PUC Reimbursement |
| 13. Lease Assumption (VeriSign/TNS) | $2,000.00 [$2,000.00] | Effective Date | Cash on hand + Post-Confirmation Income + PUC Reimbursement |
| 14. Lease Assumption (Verizon) | $3,000.00 [$3,000.00] | Effective Date | Cash on hand + Post-Confirmation Income + PUC Reimbursement |
| 15. Class 1: Secured Creditor Wells Fargo Bank, N.A. (all assets) | $1,413.57 [$84,814.20] | Monthly Over 5 years | Cash on hand + Post-Confirmation Income + PUC Reimbursement |
| 16. Class 2 Secured Creditor Wilshire State Bank | $8,831.48 [$847,822.08] | Monthly Over 9 years | Cash on hand + Post-Confirmation Income + PUC Reimbursement |
| 17. Class 3 Secured Creditor Internal Revenue Service | $849.70 [$50,982.00] | Monthly Over 5 years | Cash on hand + Post-Confirmation Income + PUC Reimbursement |
| 18. Class 4: General Unsecured Creditors | $1,988.54 [$167,037.36] | Monthly Over 8 years | Cash on hand + Post-Confirmation Income + PUC Reimbursement |
| 19. Class 5 Insiders | $0 [$0] | N/A | N/A |
| 20. Class 6 Interest Holders | $0 [$0] | N/A | N/A |

On the Effective Date, the Disbursing Agent will deposit into a segregated account ("Reserve Account") an amount of cash equal to 56% of the aggregate amount of the disputed claims. Cash together with interest accruing thereon will be held in trust for the benefit of holders of disputed claims.

When a disputed claim becomes allowed, the Disbursing Agent will distribute to the holder thereof an amount equal to its allowed claim plus accrued interest thereon. If a surplus arises from the fact that not all claims are allowed, then that money shall revert back to the Debtor.

///

///

1    <u>Below is a detailed description and treatment of administrative expenses, claims and</u>

2    <u>interests</u>

3          b.   <u>Administrative Expenses</u>

4                1.      These include the "actual, necessary costs and expenses of preserving the

5                        estate" as determined by the Court after notice to creditors of a request for

6                        payment and after a hearing thereon.

7                2.      The Code requires that allowed administrative expenses be paid on the

8                        Effective Date unless the party holding the administrative expense agrees

9                        otherwise.  The claimant(s) has not agreed otherwise.

10          <u>Administrative Expense #1.</u>

11          Claimant: Smith Campbell Clifford Kearney Gore

12          $60,000.00 (estimate), subject to Court approval, shall be paid within 365 days of

13          the Effective Date

14          <u>Administrative Expense #2</u>

15          Claimant: Clarkson, Gore & Marsella, APLC

16          $ 44,435.69 shall be paid within 365 days of the Effective Date.

17          <u>Administrative Expense # 3</u>

18          Claimant:  Office of the United States Trustee (OUST)

19          $ 6,500.00 (estimate), to be paid on the Effective Date

20          <u>Administrative Expense # 4</u>

21          Claimant:  Clerk of the Court

22          $ 500.00 (estimate), to be paid on the Effective Date

23          <u>Administrative Expense # 5</u>

24          Claimant:  Universal Service Administrative Co.

25          $17,000.00 (estimate) to be paid on the Effective Date

26    ///

27    ///

28

1        Administrative Expense #5

2        Claimant: Hartford Insurance

3        $917.00 to be paid on the Effective Date

4        TOTAL ADMINISTRATIVE CLAIMS $ 129,353.39

5    c.   Unsecured Tax Claims

6          i.   These include certain types of property, sales, and income taxes.

7         ii.   The Code requires that the holders of such claims receive regular

8            installment payments in cash over a period ending not later than five years

9            after the date of the order for relief, unless agreed otherwise.  The claimant

10           has not agreed otherwise.  The total cash payments must have a present

11           value equal to the amount of the allowed claim.  The treatment of this

12           claim is in a manner not less favorable than the most favored nonpriority

13           unsecured claim provided in this Plan (other than any cash payments to an

14           administratively convenient class). The amount of the allowed claim

15           includes the amount of tax owed plus interest at the statutory rate[3].  The

16           present value is calculated as of the Effective Date.

17        Tax Claim # 1

18        Claimant: Internal Revenue Service

19        Date(s) of order for relief: N/A

20        Total amount of allowed claim as of 04/25/2011: $35,425.30

21        Total amount of cash payments (over time) to satisfy the claim: $40,111.20 (est)

22        Interest rate (to compensate creditor because claim is paid over time): Statute Rate

23        First payment date: Within 5 years of the Effective Date

24        Amount of each installment: $668.52 (est)

25        Frequency of payments: monthly

26        Total yearly payments: $8,022.24 (est)

27

28   [3] For these calculations the Proponent assumed an interest rate of 5%

1    Final Payment date: Within 5 years of the Effective Date

2    Tax Claim # 2

3    Claimant: Franchise Tax Board

4    Date(s) of order for relief: N/A

5    Total amount of allowed claim as of 04/25/2011: $35,821.25

6    Total amount of cash payments (over time) to satisfy the claim: $40,559.40 (est)

7    Interest rate (to compensate creditor because claim is paid over time): Statute Rate

8    First payment date: Within 5 years of the Effective Date

9    Amount of each installment: $675.99 (est)

10   Frequency of payments: monthly

11   Total yearly payments: $8,111.88 (est)

12   Final Payment date: Within 5 years of the Effective Date

13   Tax Claim # 3

14   Claimant: LA County Tax Collector

15   Date(s) of order for relief: N/A

16   Total amount of allowed claim as of 04/25/2011: $215.00

17   Total amount of cash payments (over time) to satisfy the claim: $243.60 (est)

18   Interest rate (to compensate creditor because claim is paid over time): Statute Rate

19   First payment date: Within 5 years of the Effective Date

20   Amount of each installment: $4.06 (est)

21   Frequency of payments: monthly

22   Total yearly payments: $48.72 (est)

23   Final Payment date: Within 5 years of the Effective Date

24   Tax Claim # 4

25   Claimant: State of California (EDD)

26   Date(s) of order for relief: N/A

27   Total amount of allowed claim as of 04/25/2011: $21,800.97

28

ConnectTo DS and Plan v.1

12    Debtor's Disclosure Statement and Chapter 11 Plan

1    Total amount of cash payments (over time) to satisfy the claim: $24,684.60 (est)

2    Interest rate (to compensate creditor because claim is paid over time): Statute Rate

3    First payment date: Within 5 years of the Effective Date

4    Amount of each installment: $411.41 (est)

5    Frequency of payments: monthly

6    Total yearly payments: $4,936.92 (est)

7    Final Payment date: Within 5 years of the Effective Date

8    Tax Claim # 5

9    Claimant: City of Glendale

10    Date(s) of order for relief: N/A

11    Total amount of allowed claim as of 04/25/2011: $4,324.26

12    Total amount of cash payments (over time) to satisfy the claim: $4,896.00 (est)

13    Interest rate (to compensate creditor because claim is paid over time): Statute Rate

14    First payment date: Within 5 years of the Effective Date

15    Amount of each installment: $81.60 (est)

16    Frequency of payments: monthly

17    Total yearly payments: $979.20 (est)

18    Final Payment date: Within 5 years of the Effective Date

19    TOTAL UNSECURED TAX CLAIM(S) $97,586.78

20    d.  Lease Assumption

21        1.  These include expenses necessary to cure the default and assume a

22            lease agreement.

23        2.  The Code requires that to assume a lease agreement the Debtor must

24            cure all defaults.

25    Lease Assumption Claim #1

26    Claimant: Pacific Bell Telephone d/b/a/ AT&T California

27    Date(s) of order for relief: N/A

28

1    Total amount of allowed claim as of 04/25/2011: $765,000.00

2    Total amount of cash payments (over time) to satisfy the claim: $863,645.16

3    (estimate)

4    Interest rate: 3.5%[4]

5    First payment date: Within 8 years of the Effective Date

6    Amount of each installment: $10,281.49

7    Frequency of payments: monthly

8    Total yearly payments: $123,377.88

9    Final Payment date: Within 8 years of the Effective Date

10    <u>Lease Assumption Claim #2</u>

11    Claimant: U.S. Colo., LLC

12    Date(s) of order for relief: N/A

13    Total amount of allowed claim as of 04/25/2011: $6,000.00

14    Total amount of cash payments (over time) to satisfy the claim: $6,000.00

15    Interest rate: N/A

16    First payment date: Effective Date

17    Amount of each installment: $6,000.00

18    Frequency of payments: One payment

19    Total yearly payments: N/A

20    Final Payment date: Effective Date

21    <u>Lease Assumption Claim #3</u>

22    Claimant: Billsoft Services

23    Date(s) of order for relief: N/A

24    Total amount of allowed claim as of 04/25/2011: $1,000.00

25    Total amount of cash payments (over time) to satisfy the claim: $1,000.00

26    Interest rate: N/A

27

28    [4] Proponent includes interest because payments are proposed over a period of time.

1   First payment date: Effective Date

2   Amount of each installment: $1,000.00

3   Frequency of payments: One payment

4   Total yearly payments: N/A

5   Final Payment date: Effective Date

6   <u>Lease Assumption Claim #4</u>

7   Claimant: Emdeon Business Services

8   Date(s) of order for relief: N/A

9   Total amount of allowed claim as of 04/25/2011: $2,400.00

10   Total amount of cash payments (over time) to satisfy the claim: $2,400.00

11   Interest rate: N/A

12   First payment date: Effective Date

13   Amount of each installment: $2,400.00

14   Frequency of payments: One payment

15   Total yearly payments: N/A

16   Final Payment date: Effective Date

17   <u>Lease Assumption Claim #5</u>

18   Claimant: Hi-Tech Gateway

19   Date(s) of order for relief: N/A

20   Total amount of allowed claim as of 04/25/2011: $2,000.00

21   Total amount of cash payments (over time) to satisfy the claim: $2,000.00

22   Interest rate: N/A

23   First payment date: Effective Date

24   Amount of each installment: $2,000.00

25   Frequency of payments: One payment

26   Total yearly payments: N/A

27   Final Payment date: Effective Date

28

Lease Assumption Claim #6

Claimant: Verizon

Date(s) of order for relief: N/A

Total amount of allowed claim as of 04/25/2011: $3,000.00

Total amount of cash payments (over time) to satisfy the claim: $3,000.00

Interest rate: N/A

First payment date: Effective Date

Amount of each installment: $3,000.00

Frequency of payments: One payment

Total yearly payments: N/A

Final Payment date: Effective Date

TOTAL LEASE ASSUMPTION CLAIM(S) $ 779,052.00

e.   Secured Claims

**CLASS ONE**

Secured Claim of Wells Fargo Bank, N.A.

Total amount of allowed claim: $75,362.50

Total amount of payments (over time) to satisfy the secured claim: $75,362.50

plus 4.75% interest rate

Interest rate (to compensate creditor because claim is paid over time): 4.75%

Impaired

First payment date: Effective Date

Amount of each installment: $1,413.57/month

Frequency of payments: monthly

Total yearly payments: $16,962.84 annually

Final payment date: December 2017

Lien is not modified in any way by the Plan.

Description of Collateral: All of Debtor's Assets

ConnectTo DS and Plan v.1

Additional comments: None

**CLASS TWO**

Secured Claim of Wilshire State Bank

Total amount of allowed claim: $704,195.31

Total amount of payments (over time) to satisfy the secured claim: $704,195.31

plus variable interest rate, approximately 4.75%

Interest rate (to compensate creditor because claim is paid over time): Variable,

approximately 4.75%

Impaired

First payment date: Effective Date

Amount of each installment: $8,831.48/month

Frequency of payments: monthly

Total yearly payments: $105,977.76 annually

Final payment date: December 2019

Lien is not modified in any way by the Plan.

Description of Collateral: All of Debtor's Assets

Additional comments: None

**CLASS THREE**

Secured Claim of the Internal Revenue Service

Total amount of allowed claim: $45,025.97

Total amount of payments (over time) to satisfy the secured claim: $50,982.20

(est)

Interest rate (to compensate creditor because claim is paid over time): Statute

Rate[5]

Impaired

First payment date: Effective Date

---

[5] Interest Rate assumed to be 5% for these calculations.

1    Amount of each installment: $849.70 (est)

2    Frequency of payments: monthly

3    Total yearly payments: $10,196.40 (est)

4    Final payment date: December 2016

5    Lien is not modified in any way by the Plan.

6    Description of Collateral: All of Debtor's Assets

7    Additional comments:

8    f.   Unsecured Claims

9    **CLASS FOUR**

10    Unsecured Claims

11    See **Exhibit "A"** for list of claimants and amount owed each.

12    Total amount of allowed claims: $986,853.86

13    Total amount of payments (over time) to satisfy claims: $163,037.36

14    Interest rate: 3.5%[6]

15    Impaired

16    First payment date: Effective Date

17    Amount of each installment: $3,883.17

18    Frequency of payments: monthly

19    Total yearly payments: $46,598.04

20    Final payment date: December 2017

21    Additional comments: General Unsecured Claimants will be paid pro-rata 15% of

22    their total claims.

23    g.   Insiders

24    **CLASS FIVE**

25    i.  No Payments to Insiders.

26    ///

27

---

28    [6] Interest included because payments are being made over a period of time.

h.  Shareholders Interests

**CLASS SIX**

i.  Under the Plan, shareholders retain their shares of stock, if Class Four and Class Five vote to confirm the Plan.  However if Class Four and Class Five do not vote to confirm the Plan, the shareholders will not retain their stock.

**X.    SOURCE OF MONEY TO PAY CLAIMS AND INTEREST-HOLDERS**

The Plan cannot be confirmed unless the Court finds that it is "feasible," which means that the Proponent has timely submitted evidence establishing that the Debtor will have sufficient funds available to satisfy all expenses, including the scheduled creditor payments discussed above.  What follows is a statement of projected cash flow for the duration of the Plan.  The focus is on projected cash receipts and cash disbursements.  All non-cash items such as depreciation, amortization, gains and losses are omitted.  More detailed statement of cash flow projections for the duration of Plan payments are attached as follows: **Exhibit "B"** provides the "Reorganization Plan Cash Flow and Distribution Summary", and **Exhibit "C"** provides the detailed "Eight Year Forecast Income Statement" for each of the eight years in the term of the Plan.

Here is a summary over the 8 years of the Plan:

| Year | Income | Expenses |
| --- | --- | --- |
| 2012 | $3,662,800.00 | $3,452,250.30 |
| 2013 | $3,662,000.00 | $3,404,803.58 |
| 2014 | $3,638,000.00 | $3,367,403.46 |
| 2015 | $3,698,000.00 | $3,393,051.30 |
| 2016 | $3,734,000.00 | $3,458,248.57 |
| 2017 | $3,794,000.00 | $3,474,996.77 |
| 2018 | $3,840,000.00 | $3,514,297.38 |
| 2019 | $3,864,000.00 | $3,537,179.28 |

Section XV(c) states the assumptions and details surrounding the statement of projected cash flow. On the Effective Date, the Plan pays $71,601.33.

## XI.    FINANCIAL RECORDS TO ASSIST IN DETERMINING WHETHER PROPOSED PAYMENT IS FEASIBLE

Attached as Exhibits are three types of financial documents, including balance sheets, cash flow statements and income and expense statements for the a three year period, including the two years prior to the Chapter 11 filing (i.e. 2008, 2009 and 2010), the most recent twelve month calendar year (i.e. 2011), and all months subsequent thereto.

Please find attached the following exhibits:

**Exhibit "D"** Year end Balance Sheets for 2008, 2009, 2010 and 2011 year to date[7].

**Exhibit "E"** Cash Flow Statements for 2008, 2009, 2010 and 2011 year to date[8].

**Exhibit "F"** Annual Profit and Loss Statements for 2008, 2009, 2010 and 2011[9].

## XII.    ASSETS AND LIABILITIES OF THE ESTATE

a.    Assets

The identity and fair market value of the estate's assets are listed in **Exhibit "G"** so that the reader can assess what assets are at least theoretically available to satisfy claims and to evaluate the overall worth of the bankruptcy estate. Whether the Plan proposes to sell any of these assets is discussed in section XVI.

b.    Liabilities

**Exhibit "A"** shows the allowed claims against the estate, claims whose treatment is explained in detail by section IX.

c.    Summary

The fair market value of all the Debtor's assets is approximately $703,311.83, the estimated sale price of all the assets is approximately $474,090.33. Total undisputed liabilities equal $ 3,465,220.64 and the total disputed liabilities equals $87,474.37.

---

[7] 2011 Balance Sheet from January 1, 2011 to March 31, 2011.
[8] 2011 Cash Flow from January 1, 2011 to March 31, 2011.
[9] 2011 Profit and Loss Statement from January 1, 2011 to March 31, 2011.

## XIII.   TREATMENT OF NONCONSENTING CLASSES

As stated above, even if all classes do not consent to the proposed treatment of their claims under the Plan, the Plan may nonetheless be confirmed if the dissenting classes are treated in a manner prescribed by the Code.  The process by which dissenting classes are forced to abide by the terms of a plan is commonly referred to as "cramdown."  The Code allows dissenting classes to be crammed down if the Plan does not "discriminate unfairly" and is "fair and equitable."  The Code does not define discrimination, but it does provide a minimum definition of "fair and equitable."  The term can mean that secured claimants retain their liens and receive cash payments whose present value equals the value of their security interest.  For example, if a creditor lends the Debtor $100,000 and obtains a security interest in property that is worth only $80,000, the "fair and equitable" requirement means that the claimant is entitled to cash payments whose present value equals $80,000 and not $100,000.  The term means that unsecured claimants whose claims are not fully satisfied at least know that no claim or interest that is junior to theirs will receive anything under the Plan, except where the Debtor is an individual, has elected to retain property included in the Estate under 11 U.S.C.A. § 1115 (West Supp. 2006) and has satisfied 11 U.S.C.A. § 1129(b)(2)(B)(ii) (West Supp. 2006).  "Fair and equitable" means that each holder of an interest must receive the value of such interest or else no junior interest is entitled to receive anything.

Therefore, if a class of general unsecured claims votes against the Plan, the Plan cannot be confirmed where the Debtor or a class of interest holders (e.g. shareholders or partners) will receive or retain any property under the Plan, unless the Plan provides that the class of general unsecured claims shall be paid in full with interest.  If a class of interest holders votes against the Plan, the Plan cannot be confirmed where the Debtor will receive or retain any property under the Plan, unless the Plan provides that the class of interest holders shall be paid in full with interest.  These are complex statutory provisions and the preceding paragraphs do not purport to state or explain all of them.

## XIV.  TREATMENT OF NONCONSENTING MEMBERS OF CONSENTING CLASS (CHAPTER 7 LIQUIDATION ANALYSIS

The Plan must provide that a nonconsenting impaired claimant or interest holder of a consenting class receive at least as much as would be available had the Debtor filed a Chapter 7 petition instead.

In a Chapter 7 case the general rule is that the Debtor's assets are sold by a trustee. Unsecured creditors generally share in the proceeds of sale only after secured creditors and administrative claimants are paid.  Certain unsecured creditors get paid before other unsecured creditors do.  Unsecured creditors with the same priority share in proportion to the amount of their allowed claim in relationship to the total amount of allowed claims.

A creditor would recover from the assets of the bankruptcy estate less under Chapter 7 than under Chapter 11 for two reasons.   First, the liquidation value of approximately $474,090.33 is less than its estimated fair market value of approximately $703,311.83 because: (1) collectability of the accounts receivables will decrease if the company were liquidated; and (2) substantially all of the Debtor's equipment is old and has little re-sale value.  Second, in a Chapter 7 case a trustee is appointed and is entitled to compensation from the bankruptcy estate in an amount no more than 25% of the first $5,000 of all monies disbursed, 10% on any amounts over $5,000 and up to $50,000, 5% on all amounts over $50,000 and up to $1,000,000, and such reasonable compensation no more than 3% of monies over $1,000,000.

Attached hereto as **Exhibit "H"** is a liquidation analysis prepared by the Plan Proponent that estimates the probable liquidation value of the Debtor, and applies the foregoing liquidation methodology to the estimated Claims against the Estate in a Chapter 7 liquidation in an effort to quantify what each Class of Creditors would receive in a Chapter 7 liquidation ("Liquidation Analysis").  Any Liquidation Analysis of this nature entails a significant degree of estimation and projection regarding both probable asset value and probable Allowed Claim totals.  For example, in preparing the Liquidation Analysis, the Plan Proponents have been required to evaluate the very substantial amount of Disputed Claims in the Case, and have necessarily

ConnectTo DS and Plan v.1

quantified what they believe will be the Allowed Claims within each Class.  Although this

quantification was based upon a thorough assessment of the information contained in the

Debtor's books and records and the Plan Proponent's review of the Disputed Claims asserted

against the Debtor, as of the date of the preparation of the Liquidation Analysis, it was not

possible to quantify exactly the amount of Allowed Claims given the amount of Disputed Claims

and the fact that no judicial determinations had been made regarding the merits of the Disputed

Claims.  These and other factors may significantly increase or reduce the total amount of

Allowed Claims within each Class.

On the valuation side of the Liquidation Analysis, the Plan Proponents have estimated the

liquidation value of the Debtor's Assets utilizing their best estimate of the value of the Debtor's

Assets in a Chapter 7 liquidation.  In the Liquidation Analysis the Proponent assumed that the

post petition reimbursements from the CPUC in the amount of approximately $375,369.46 are

collected.  As the Liquidation Analysis sets forth, the secured creditor Wells Fargo Bank would

first receive approximately $75,362.50.  Then secured creditor Wilshire State Bank would

receive approximately $305,467.48.  Subtracting Wells Fargo and Wilshire State Bank's claims

would leave $0.00 for the secured creditor the Internal Revenue Service, all administrative

claims, priority tax claims, and unsecured creditor claims.  **The Liquidation Analysis estimates**

**that there would be no funds to pay any of the administrative costs, since there would**

**nothing left after the secured creditors were paid in case of liquidation.**  Wells Fargo Bank

would be entitled to all of those proceeds.  The Liquidation Analysis estimates that there would

be no funds available to the unsecured creditors in a Chapter 7.

## XV.    FUTURE DEBTOR

a.  Management of Debtor

i.  Name of person who will manage the Debtor's business affairs: Araksiya
Nadjarian

ii.  Proposed compensation to persons listed above: Approximately $2,692.31
bi weekly.

ConnectTo DS and Plan v.1

      iii.  Qualifications: Currently oversees all Debtor's day to day operations

      iv.  Affiliation of persons to Debtor: Owner/President/100% Shareholder

      v.  Job description: President, responsible for day to day operations of the Debtor

  b.  <u>Disbursing Agent</u>

Araksiya Nadjarian is responsible for collecting money intended for distribution to claimants and transmitting it to them.  The disbursing agent's address and telephone number are: 555 Riverdale Drive, Suite A, Glendale, California 91204, (818) 546-4602.

      i.  Proposed compensation to person listed above: included as part of compensation as President

      ii.  Qualifications: President of Debtor

      iii.  Affiliation of person to Debtor: President of Debtor

      iv.  Job description: Supervise Plan Distributions

  c.  <u>Future Financial Outlook</u>

The Proponent believes that the Debtor's economic health has improved from its pre bankruptcy state because: (1) the Debtor is now receiving its post petition reimbursement from the CPUC; and (2) the Debtor has revaluated its business model and eliminated any unnecessary expenses.

Section X provides a summary of the projected cash flow of the Debtor for the duration of the Plan.  The following assumptions underlie the projections.  The Debtor's income is based off of the Debtor's past cash flow cycle.  The projections assume that the Debtor will be successful in recovering post petition reimbursements from the CPUC for the time period of March 12, 2010 to February 2011.[10]  The Proponent estimates that its lease at the new premises will increase annually.  The Proponent estimates that its other expenses (i.e. wages, insurance,

---

[10] The CPUC is currently withholding these funds under the theory of recoupment.  The Debtor believes it may have to file a Motion for Turnover of Estate Property and Violation of the Automatic Stay, as the CPUC and Debtor have not been able to reach an agreement as to the treatment of the post petition funds.

1  utilities and maintenance) will remain substantially the same.  The Proponent estimates that is

2  gross revenue will decrease slightly as its customers discontinue their long distance services with

3  the Debtor.  However the Proponent estimates that the Debtor's number of customers will

4  increase to overcome any decrease in anticipated estimated gross revenue.  As previously stated,

5  Plan payments will come from the continued operation of the Debtor's business and potential

6  cash infusion from the CPUC.  If the business generates insufficient funds to provide all of the

7  Plan payments, then the Proponent cannot make up the shortfall.  The Proponent's financial

8  solvency, which is relevant to its ability to honor its commitment to make up any shortfall, is

9  demonstrated by the following facts. The eight year projection, based on historical results,

10  indicates that sufficient funds will be available to meet the Plan obligations.

11  **XVI.    ASSUMPTION OF CONTRACTS AND LEASES; OTHER PROVISIONS**

12         The Plan provides for the following: assumption, rejection, or assignment of an executory

13  contract or unexpired lease.

14         a.   <u>Assumptions</u>

15         The Debtor will assume the following executory contracts and leases and cure the

16  following defaults if necessary:

| Name of Party to Contract | Nature of Contract/Lease | Cure Amount | Cure Timing |
|---|---|---|---|
| Yoram Levy | Lease for Premises | $0.00 | N/A |
| Landmark Financial | Lease for Equipment | $0.00 | N/A |
| AT&T | Telecom Services | $765,000.00 | Over 8 years with 3.5% interest |
| Billsoft Services | Billing Services | $1,000.00 | Effective Date |
| Blue Cross of California | Health Insurance | $0.00 | N/A |
| Express Bill/Emdeon | Billing Services | $2,400.00 | Effective Date |
| Hi-Tech Gateway | Software Services | $2,000.00 | Effective Date |
| Solix, Inc. | Lifeline Services | $0.00 | N/A |
| Telecom Professionals | Compliance | $0.00 | N/A |
| The Hartford | Liability Insurance | $0.00 | N/A |
| U.S. Colo., LLC | License Agreement | $6,000.00 | Effective Date |
| VeriSign, Inc./TNS, Inc. | Telecom Services | $0.00 | N/A |
| Verizon California | Telecom Services | $3,000.00 | Effective Date |

       The Court must make certain findings of fact before approving the aforementioned

provisions as part of the Plan.  The Proponent will request that the Court make the appropriate

findings at the confirmation hearing, based upon evidence submitted in support of the

1   confirmation motion.

2      b. <u>Rejections</u>

3     The Debtor will reject the following executory contracts and leases:

| Name of Party to Contract | Nature of Contract/Lease | General Unsecured Claim |
|---|---|---|
| Cedar Point Communications | Technical Support | $34,300.00 |
| Zhone Technologies | Technical Support | $0.00 |

6     The Court must make certain findings of fact before approving the aforementioned

7 provisions as part of the Plan.  The Proponent will request that the Court make the appropriate

8 findings at the confirmation hearing, based upon evidence submitted in support of the

9 confirmation motion.

10 **XVII. BANKRUPTCY PROCEEDINGS**

11     The Court has approved the employment of all professionals.  The use of cash collateral

12 has approved by Wells Fargo Bank, N.A., Wilshire State Bank and the Court.  Here is a

13 summary of orders entered in the main bankruptcy case by date:

14     1. <u>3/18/2010</u>: Order Denying Application for Order Setting Hearing on Shortened

15        Notice.

16     2. <u>4/1/2010</u>: Order Requiring debtor-in-possession to appear at status conference and

17        filed report on status of reorganization case, or face possible (A) Conversion of case

18        to Chapter 7; (B) Dismissal of case; or (C) Appointment of Trustee; (2) Setting

19        hearing on status of reorganization; and (3) Establishing procedure for (A) Motion for

20        Order Approving Disclosure Statement; and (B) Motion for Order Confirming Plan.

21     3. <u>4/6/2010</u>: Order Granting Debtor's Emergency Motion for Order (1) Prohibiting

22        Utilities from Altering, Refusing, or Discontinuing Service, and (2) Establishing

23        Procedures for Determining Adequate Assurance of Payment for Future Utility

24        Service.

25 ///

26 ///

27 ///

28

4. 4/6/2010: Order Granting Emergency Motion for Order Authorizing Debtor to (1) Pay Accrued Employee Wages and Contributions; (2) Honor Existing Personnel Policies in the Ordinary course of Business; (3) Reimburse Pre-Petition Employee Business Expenses; (4) Make Payments for Which Payroll Deductions Were Made; and (5) Pay All Costs Incident to the Foregoing.

5. 4/6/2010: Order Granting Debtor's Motion for Interim Use of Cash Collateral [for the period March 12, 2010 through September 30, 2010].

6. 4/20/2010: Order Granting Application to Employ Clarkson, Gore & Marsella, APLC as Counsel

7. 5/4/2010: Order Interim Order on Debtor's Motion for Interim Use of Cash Collateral [for the Period of March 12, 2010 through September 30, 2010].

8. 5/5/2010: Order Denying Motion to Dismiss Case

9. 5/5/2010: Order Denying Motion for Relief from the Automatic Stay

10. 5/6/2010: Order Granting Motion Deadlines for Filing Proofs of Claim or Interest is 8/1/2010.

11. 5/11/2010: Order after Initial Status Conference in Chapter 11 Case: 1) Setting Deadline for Filing Proofs of Claim and requiring compliance with Local Bankruptcy Rule 3001-1; 2) Setting Deadline for a Hearing on Objections to Claims; and 3) Setting Hearing on Motion for Order Approving Adequacy of Disclosure Statement; Ordered that hearing is set for 2-24-11- at 1:30 p.m.

12. 6/18/2010: Order Granting Stipulation for Adequate Protection Between the Debtor and MCI Communications Services, Inc. d/b/a Verizon Business Services.

13. 7/13/2010: Order Granting Motion to Extend Time extended to 90 days, until October 8, 2010 (Extending time to Assume/Reject Nonresidential Property Lease).

14. 7/19/2010: Order Granting Motion to Extend Exclusivity Period for Filing a Chapter 11 Plan and Disclosure Statement.

///

ConnectTo DS and Plan v.1

27      Debtor's Disclosure Statement and Chapter 11 Plan

15. <u>10/29/2010</u>: Order Granting Motion to Extend Time, IT IS SO ORDERED that: The deadline is extended another ninety (90) days, until January 6, 2011.

16. <u>11/2/2010</u>: Order Granting Motion to Use Cash Collateral [For the period October 1, 2010 through February 28, 2011].

17. <u>11/16/2010</u>: Order Denying Motion to Disallow Claims Stipulation to Continue Hearing on Motion to Disallow Claim of Pacific Bell Telephone Company dba AT&T California.

18. <u>11/16/2010</u>: Order Denying Motion to Disallow Claims Stipulation to Continue Hearing on Motion to Disallow Claim of the California Public Utilities Commission.

19. <u>11/23/2010</u>: Order Disallow claims(s) Order Denying Revised Stipulation to Continue Hearing on Motion to Disallow Claims to Pacific Bell Telephone Company dba AT&T California.

20. <u>11/23/2010</u>: Order Disallowing claim(s) Order Denying Revised Stipulation to Continue Hearing on Motion to Disallow Claim of the California Public Utilities Commission.

21. <u>11/29/2010</u>: Order Approving Stipulation Allowing Proof of Claim Filed by U.S. Colo, LLC (Claim No. 3 and fixing the amount of Claim No. 3).

22. <u>12/3/2010</u>: Order Granting Motion to Disallow Claims (Claim 5, Hartford Fire Insurance Company).

23. <u>12/8/2010</u>: Order Granting Motion to Disallow Claims (Claim No. 6, Verisign, Inc./TNS, Inc.).

24. <u>12/8/2010</u>: Order Granting Motion to Disallow Claims (Claim No. 17, PNCEF, LLC dba PNDC Equipment Finance fka National City Commercial Capital Co., LLC).

25. <u>12/13/2010</u>: Order Granting Motion to Disallow Claims and Scheduling Order (Claim No. 12, Pacific Bell Telephone Company dba AT&T California).

26. <u>12/13/2010</u>: Order Granting Motion to Disallow Claims and Scheduling Order (Claim No. 23, California Public Utilities Commission).

27. <u>12/20/2010</u>: Order Granting Motion to Disallow Claims (Claim No. 15, Wilshire State Bank, and Claim No. 19, Hi-Tech Gateway).

28. <u>1/28/2011</u>: Order Granting Motion to Extend Deadline to Assume, Assume and assign, or Reject Nonresidential Real Property Lease Pursuant to 11 U.S.C. Section 365(d)(4) extended ninety days, until April 6, 2011.

29. <u>2/3/2011</u>: Order Approving Stipulation to Continue Hearing on Debtor's Disclosure Statement and Plan.

30. <u>2/15/2011</u>: Order Granting Application of non-resident attorney Christine E. Devine to appear.

31. <u>2/15/2011</u>: Order Granting Application of non-resident attorney Gina M. Barbieri to appear in a specific case.

32. <u>2/15/2011</u>: Order Granting Application of non-resident attorney Joseph H. Baldiga to appear in a specific case.

33. <u>2/15/2011</u>: Order Granting Application to Employ Smith Campbell Clifford Kearney Gore  A Professional Law Corporation as Bankruptcy Counsel.

34. <u>2/16/2011</u>: Order Granting Motion to Continue Hearing Date on the Debtor's Disclosure Statement.

35. <u>3/1/2011</u>: Order Granting Motion to Use Cash Collateral [For the period of March 1, 2011 through September 20, 2011].

36. <u>3/21/2011</u>: Order Granting Clarkson, Gore & Marsella's APLC's First and Final Application for Compensation for Services Rendered and Reimbursement of Expenses for the Period of March 12, 2011 through December 31, 2010.

37. <u>3/30/2011</u>: Order Denying Approval of Stipulation to Continue Hearing on Motion by the Universal Service Administrative Company for entry of an order (1) Allowing and Directing Immediate Payment of Universal Service Fees Accrued and Accruing post-petition and (2) Compelling Compliance with reporting requirements.

///

ConnectTo DS and Plan v.1

38. <u>4/25/2011</u>: Order Denying Motion by The Universal Service Administrative Company for Entry of Order: (I) Allowing and Directing the Immediate Payment of the Universal Service Fees Accrued and Accruing Post-Petition and (II) Compelling Co9mplianced with Reporting Requirements.

## XVIII. TAX CONSEQUENCES OF PLAN

    A.    <u>Introduction</u>

**CREDITORS AND INTEREST HOLDERS CONCERNED WITH HOW THE PLAN MAY AFFECT THEIR TAX LIABILITIES SHOULD CONSULT WITH THEIR OWN ACCOUNTANTS, ATTORNEYS AND/OR OTHER TAX ADVISORS.** The following disclosure of possible tax consequences of the Plan is intended solely for the purpose of alerting Creditors to possible tax issues that the Plan may present to the Debtor. The Plan Proponent CANNOT and DOES NOT represent that the tax consequences contained below are the only tax consequences of the Plan because the Internal Revenue Code embodies many complicated rules which make it difficult to state completely and accurately all of the tax implications of any action.

    B.    <u>Consequences to the Debtor</u>

    In general, the Internal Revenue Code provides that a debtor in a bankruptcy case is not taxable on cancellation of debt ("COD") income, but must reduce certain of its tax attributes (such as its net operating loss carry forwards and its tax basis in its assets) by the amount of COD income. COD income results when the amount of debt discharged exceeds the consideration given in exchange therefor, and is equal to such excess amount. In this case, it is likely that a cancellation of debt will be deemed to have occurred on the Effective Date of the Plan. Any reduction in tax attributes does not occur, however, until the end of the Debtor's taxable year or, in the case of asset basis reduction, the first day of the taxable year following the taxable year in which the COD is incurred.

///

///

C.    Consequences to the Creditors

The income tax consequences to creditors of the implementation of the Plan will depend, among other things, on the consideration to be received by the creditors, whether the creditor reports income using the accrual or cash method, and whether the creditors has taken a "bad debt" deduction or worthless security deduction with respect to its claim.  No opinion of counsel or ruling from the IRS will be sought or obtained.  The Debtor will withhold all amounts required by law to be withheld from payments to holders of claims.  In addition, such holders may be required to provide certain information to the Debtor as a condition of receiving distributions under the Plan.  Distributions made by the Debtor under the Plan may be considered income for tax year received.

**XIX.    EFFECT OF CONFIRMATION OF PLAN**

a.    General comments

The provisions of a confirmed Plan bind the Debtor, any entity acquiring property under the Plan, and any creditor, interest holder, or general partner of the Debtor, even those who do not vote to accept the Plan.  The confirmation of the Plan vests all property of the estate in the Debtor.

The automatic stay is lifted upon confirmation as to property of the estate.  However, the stay continues to prohibit collection or enforcement of pre-petition claims against the Debtor or the Debtor's property until the date the Debtor receives a discharge, if any.  If the Debtor does not seek a discharge, the discharge is deemed denied, and the stay as to the Debtor and the Debtor's property terminates upon entry of the order confirming the Plan.

b.    Discharge of liability for payment of debts; status of liens; equity security holders

Unless the Debtor is not entitled to receive a discharge pursuant to 11 U.S.C.A. 1141(d)(3) (West 2004), the debtor may obtain a discharge only upon specific order of the Court. The confirmation of the Plan does not discharge the Debtor from any debt of any kind specified in 11 U.S.C. § 523(a)(2)(A)-(B) (West 2004 & Supp. 2006) that is owed to a domestic governmental unit, or owed to a person as the result of an action filed under subchapter III of

1 | chapter 37 of title 31 or any similar State statute, or for a tax or customs duty with respect to

2 | which the debtor made a fraudulent tax return or willfully attempted in any manner to evade or to

3 | defeat such tax or such customs duty. *See* 11 U.S.C.A. § 1141(d)(5)-(6) (West Supp. 2006).

4 |      c.  Modification of the Plan

5 |      The Proponent may modify the Plan pursuant to 11 U.S.C.A. § 1127 (West 2004 & Supp.

6 | 2006).

7 |      d.  Post-Confirmation Causes of Action

8 |      Nothing is estimated to be realized from the recovery of fraudulent and preferential

9 | transfers. The Debtor has not identified any fraudulent conveyance and preference actions to be

10 | filed in this case.

11 |      e.  Final Decree

12 |      Once the Plan has been consummated, a final decree may be entered upon motion of the

13 | Proponent. The effect of the final decree is to close the bankruptcy case. After such closure, a

14 | party seeking any type of relief relating to a Plan provision can seek such relief in a state court of

15 | general jurisdiction.

16 | ///

17 | ///

18 | ///

19 | ///

20 | ///

21 | ///

22 | ///

23 | ///

24 | ///

25 | ///

26 | ///

27 | ///

28 |

ConnectTo DS and Plan v.1

Debtor's Disclosure Statement and Chapter 11 Plan

## XX.    RECOMMENDATION

The Plan Proponent recommends that all Creditors receiving a Ballot vote in favor of the Plan. The Plan Proponent believes that the Plan maximizes recoveries to all Creditors and, thus, is in the best interests of Creditors. The Plan likely will produce Distributions to Creditors in excess of those that would be available if the Debtor were liquidated under Chapter 7 of the Bankruptcy Code, and will minimize delays in recoveries by Creditors.

Dated: April 28, 2011

ConnectTo Communications, Inc.

Araksiya Nadjarian
President of ConnectTo Communications, Inc.
Chapter 11 Debtor and Debtor in Possession

Submitted by:
SMITH CAMPBELL CLIFFORD KEARNEY GORE
A Professional Law Corporation

Christine M. Fitzgerald
Counsel for Chapter 11 Debtor and Debtor in Possession

## DECLARATION IN SUPPORT OF DISCLOSURE STATEMENT

I, Araksiya Nadjarian, declare as follows:

1.    I am the President of ConnectTo Communications, Inc., (the "Debtor"), the Debtor in the above-captioned proceeding. I have direct supervisory responsibilities over the financial affairs and operations of the Debtor. I have personal knowledge of the following, or have gained such knowledge from my review of the records of the Debtor, which are obtained, created and maintained in the ordinary course of business, and if called as a witness, could and would competently testify thereto.

2.    The Debtor filed a Chapter 11 petition on March 12, 2010.

3.    I am personally familiar with the books and records of the Debtor as they relate to the Debtor's accounts payable as of the date of the filing of the Debtor's bankruptcy case, the current accounts receivables and the book values of the Debtor's assets (i.e. machinery, equipment, office furniture and supplies).

4.    I provided the data which is included **in Exhibits "A", "G", and "H"**.

5.    Attached hereto as **Exhibits "B"** and **"C"** are cash flow projection which I prepared based on my historical knowledge of the Debtor's operations. I utilized the Debtor's historical income and expenses in preparing the cash flow projections. The Debtor's projected income is based off of the Debtor's past cash flow cycle. The projections assume that the Debtor will be successful in recovering post petition reimbursements from the CPUC for the time period of March 12, 2011 to February 2011.[11] I estimated that the Debtor's lease at the new premises will increase annually. I estimated that the Debtor's other expenses (i.e. wages, insurance, utilities and maintenance) will remain substantially the same. I estimated that the Debtor's gross revenue will decrease slightly as its customers discontinue their long distance services with the Debtor. However I estimated that the Debtor's number of customers will increase to overcome any decrease in anticipated estimated gross revenue. As previously stated, Plan payments will

---

[11] The CPUC is currently withholding these funds under the theory of recoupment. The Debtor believes it may have to file a Motion for Turnover of Estate Property and Violation of the Automatic Stay, as the CPUC and Debtor have not been able to reach an agreement as to the treatment of the post petition funds.

1  come from the continued operation of the Debtor's business and potential cash infusion from the

2  CPUC.

3       6.     Attached hereto as **Exhibit "D"** are Balance Sheets for 2008, 2009, 2010, and

4  2011 year to date[12], which I prepared using the Debtor's books and records, which are obtained,

5  created and maintained in the ordinary course of business, and if called as a witness, could and

6  would competently testify thereto.

7       7.     Attached hereto as **Exhibit "E"** are Cash Flow Statements for 2008, 2009, 2010

8  and 2011 year to date[13], which are obtained, created and maintained in the ordinary course of

9  business, and if called as a witness, could and would competently testify thereto.

10       8.     Attached hereto as **Exhibit "F"** are Annual Profit and Loss Statements for 2008,

11  2009, 2010, and 2011 year to date[14], which I prepared using the Debtor's books and records,

12  which are obtained, created and maintained in the ordinary course of business, and if called as a

13  witness, could and would competently testify thereto.

14       9.     The source of all financial data is the Debtor's books and records.

15       10.     All facts and representations in the Plan and Disclosure Statement are true to the

16  best of my knowledge.

17       11.     No fact material to a claimant or equity security holder in voting to accept or

18  reject the proposed Plan has been omitted.

19       12.     I prepared the balance sheets, cash flow projections, profit and loss statements,

20  and the other financial documents while acting within the capacity of President for the Debtor.

21  ///

22  ///

23  ///

24  ///

25  ///

26

27  [12] 2011 Balance Sheet is from January 1, 2011 to March 31, 2011.
    [13] 2011 Cash Flow Statement is from January 1, 2011 to March 31, 2011.

28  [14] 2011 Profit and Loss Statement is from January 1, 2011 to March 31, 2011.

ConnectTo DS and Plan v.1

                35     Debtor's Disclosure Statement and Chapter 11 Plan

13.    The accounting method used to prepare the cash flow projections and the other financial documents is the accrual method.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that this Declaration is executed on April 28, 2011, at Glendale, California.

Araksiya Nadjarian