Barry R. Gore, Esq. (SBN 143278)
Christine M. Fitzgerald, Esq. (SBN 259014)
Smith | Campbell | Clifford | Kearney | Gore
A Professional Law Corporation
3424 Carson Street, Suite 350
Torrance, California 90503
Telephone: (310) 542-0111
Facsimile: (310) 214-7254

Counsel for ConnectTo Communications, Inc.
Chapter 11 Debtor and Debtor in Possession

# UNITED STATES BANKRUPTCY COURT
## CENTRAL DISTRICT OF CALIFORNIA
### LOS ANGELES DIVISION

| | |
|---|---|
| In re:<br><br>**CONNECTTO COMMUNICATIONS, INC.,**<br><br>Debtor and Debtor in Possession. | Case No. 2:10-BK-19227-VZ<br><br>Chapter 11<br><br>**NOTICE OF MOTION AND MOTION OF THE DEBTOR FOR ORDER:**<br>1. APPROVING DISCLOSURE STATEMENT DESCRIBING DEBTOR'S CHAPTER 11 PLAN;<br>2. ESTABLISHING PROCEDURES FOR THE SOLICTATION AND TABULATION OF VOTES TO ACCEPT OR REJECT THE PLAN;<br>3. FIXING A RECORD DATE FOR VOTING; AND<br>4. FIXING DATE, TIME AND PLACE FOR CONFIRMATION HEARING<br><br><u>Disclosure Statement Hearing</u><br>Date:   May 26, 2011<br>Time:   1:30 p.m.<br>Place:   Courtroom 1368<br>           255 E. Temple Street<br>           Los Angeles, CA 90012 |

**TO THE HONORABLE VINCENT P. ZURZOLO, UNITED STATES BANKRUPTCY JUDGE; THE OFFICE OF THE UNITED STATES TRUSTEE; AND ALL INTERESTED PARTIES:**

**PLEASE TAKE NOTICE** that on May 26, 2011, at 1:30 p.m., in Courtroom 1368 located at the Edward R. Roybal Federal Building and Courthouse, 255 East Temple Street, Los Angeles, California, 90012, ConnectTo Communications, Inc., Chapter 11 Debtor and Debtor in Possession ("Debtor" or "Movant"), shall move the Court for an order pursuant to sections 1123, 1125, 1126 and 1128 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code"), Rules 2002, 3016, 3017, 3018 and 3020 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), for entry of an order: (i) approving the adequacy of the Disclosure Statement (the "DS") with respect to the Debtor's Chapter 11 Plan of Reorganization (the "Plan"); (ii) establishing procedures for solicitation and tabulation of votes to accept or reject the Plan; (iii) fixing a record date for voting on the Plan; and (iv) fixing the date, time, and place to consider approval of the Plan (the "Motion").

The Motion is based upon this Notice of Motion and Motion, all pleadings and papers on file in this action, and upon such other matters as may be presented to the Court at the time of the hearing.

**PLEASE TAKE FURTHER NOTICE** that pursuant to Local Bankruptcy Rule 9013-1(f), any party desiring to oppose or otherwise respond to the Motion, must file and serve on the Moving Party and the Office of the United States Trustee, a complete written statement of all reasons in opposition thereto or in support or joinder thereof.

///
///
///
///
///
///

1 |       **PLEASE TAKE FURTHER NOTICE** that pursuant to Local Bankruptcy Rule 9013-
2 | 1(h) the failure to timely file and serve an objection may be deemed by the Court to be consent to
3 | the Motion.
4 |
5 | Dated: May 4, 2011         SMITH CAMPBELL CLIFFORD KEARNEY GORE
                                 A Professional Law Corporation
6 |
7 |                      By: /s/ Christine M. Fitzgerald
8 |                         Barry R. Gore
                             Christine M. Fitzgerald
9 |                          Counsel for Chapter 11 Debtor and Debtor in Possession,
                         ConnectTo Communications, Inc.
10 |
11 |
12 |
13 |
14 |
15 |
16 |
17 |
18 |
19 |
20 |
21 |
22 |
23 |
24 |
25 |
26 |
27 |
28 |

ConnectTo Communications, Inc., Chapter 11 Debtor and Debtor in Possession (the "Debtor"), by and through its undersigned counsel, respectfully submit this motion (the "Motion"), pursuant to sections 1123, 1125, 1126 and 1128 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code"), Rules 2002, 3016, 3017, 3018 and 3020 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), for entry of an order: (i) approving the adequacy of the DS with respect to the Debtor's Chapter 11 Plan of Reorganization (the "Plan"); (ii) establishing procedures for solicitation and tabulation of votes to accept or reject the Plan; (iii) fixing a record date for voting on the Plan; and (iv) fixing the date, time, and place to consider approval of the Plan. In support of the Motion, the Debtor states as follows:

## I. INTRODUCTION

On March 12, 2010, ConnectTo Communications, Inc., ("Debtor") filed a bankruptcy petition under Chapter 11 of the Bankruptcy Code ("Code"). On April 28, 2011, the Debtor filed its Combined Disclosure Statement and Plan of Reorganization ("Combined DS and Plan"). The DS has proposed a Plan to treat the claims of the Debtor's creditors and, if applicable, the interests of shareholders or partners, and to reorganize the Debtor's business affairs.

## II. OVERVIEW OF THE DEBTOR'S BUSINESS

The Debtor is a Nevada corporation. The Debtor has conducted 100% of its business activity in Los Angeles, CA since 2004. What follows is a brief summary of the dates and circumstances that led Debtor to file bankruptcy.

The Debtor is a telecommunications company and services approximately 20,000 customers by reselling local telecommunications service purchased in bulk from AT&T, and from Verizon. The Debtor also provides long distance and ISP services to its customers. Approximately 80% of the Debtor's customers are low income families and individuals. The services the Debtor provides to its low income customers are significantly subsidized by the California Public Utilities Company ("CPUC"). As a result of CPUC withholding anticipated reimbursements from July 2009 to February 2011, the Debtor fell behind on its payment to AT&T.

A more detailed factual background of the Debtor's business, as well as the facts and circumstances underlying the commencement of this Chapter 11 case, is set forth in the Debtor's DS [Docket No. 233], which was filed with the Bankruptcy Court on April 28, 2011, and is attached hereto as **Exhibit "A."**

### III. THE DISCLOSURE STATEMENT AND PLAN

A disclosure statement describes the assumptions that underlie the Plan and how the Plan will be executed. The Bankruptcy Court ("Court") is required to approve the form of the disclosure statement as containing enough information to enable parties affected by the Plan to make an informed judgment about the Plan. A summary of Plan Payments over the next eight years is set out below.

| SUMMARY OF PLAN PAYMENTS | | | |
|---|---|---|---|
| Payment Recipient | Amount of each Payment [Total Amount to be Paid] | Payment Due Date | Source of Payment |
| 1. Smith Campbell Clifford Kearney Gore (Debtor's Current Counsel) | $5,000.00 (est) [$60,000.00] (est) | Within 365 days from Effective Date | Cash on hand + Post-Confirmation Income + PUC Reimbursement |
| 2. Clarkson Gore & Marsella (Debtor's Former Counsel) | $3,702.97 [$44,435.69] | Within 365 days from Effective Date | Cash on hand + Post-Confirmation Income + PUC Reimbursement |
| 3. Office of the U.S. Trustee (OUST) | $6,500.00 (est) [$6,500.00] (est) | Effective Date | Cash on hand + Post-Confirmation Income + PUC Reimbursement |
| 4. Clerk of the Court | $500.00 (est) [$500.00] (est) | Effective Date | Cash on hand + Post-Confirmation Income + PUC Reimbursement |
| 5. Universal Services Administration Co. | $17,000.00[1] (est) [$17,000.00] (est) | Effective Date | Cash on hand + Post-Confirmation Income + PUC Reimbursement |
| 6. Hartford Insurance Co. | $917.00 [$917.00] | Effective Date | Cash on hand + Post-Confirmation Income + PUC Reimbursement |
| 7. Priority Tax Claims-Sec. | $28,716.98[2] | Within 5 years from | Cash on hand + |

---

[1] USAC asserted the Debtor owed it approximately $58,009.72 in admin expenses. Proponent believes that USAC's administrative claim is approximately $17,000.00.

-5-

| | | | |
|---|---|---|---|
| 507(a)(8) | [$97,586.78] | the Effective Date | Post-Confirmation Income + PUC Reimbursement |
| 8. Lease Assumption (AT&T) | $10,281.49 [$863,645.16] | Monthly over 8 years | Cash on hand + Post-Confirmation Income + PUC Reimbursement |
| 9. Lease Assumption (U.S. Colo.) | $6,000.00 [$6,000.00] | Effective Date | Cash on hand + Post-Confirmation Income + PUC Reimbursement |
| 10. Lease Assumption (Billsoft Services) | $1,000.00 [$1,000.00] | Effective Date | Cash on hand + Post-Confirmation Income + PUC Reimbursement |
| 11. Lease Assumption (Emdeon Business Services) | $2,000.00 [$2,000.00] | Effective Date | Cash on hand + Post-Confirmation Income + PUC Reimbursement |
| 12. Lease Assumption (Hi-Tech Gateway) | $2,000.00 [$2,000.00] | Effective Date | Cash on hand + Post-Confirmation Income + PUC Reimbursement |
| 13. Lease Assumption (VeriSign/TNS) | $2,000.00 [$2,000.00] | Effective Date | Cash on hand + Post-Confirmation Income + PUC Reimbursement |
| 14. Lease Assumption (Verizon) | $3,000.00 [$3,000.00] | Effective Date | Cash on hand + Post-Confirmation Income + PUC Reimbursement |
| 15. Class 1: Secured Creditor Wells Fargo Bank, N.A. (all assets) | $1,413.57[3] [$84,814.20] | Monthly Over 5 years | Cash on hand + Post-Confirmation Income + PUC Reimbursement |
| 16. Class 2 Secured Creditor Wilshire State Bank | $8,831.48 [$847,822.08] | Monthly Over 9 years | Cash on hand + Post-Confirmation Income + PUC Reimbursement |
| 17. Class 3 Secured Creditor Internal Revenue Service | $849.70 [$50,982.00] | Monthly Over 5 years | Cash on hand + Post-Confirmation Income + PUC Reimbursement |
| 18. Class 4: General Unsecured Creditors | $1,988.54 [$167,037.36] | Monthly Over 8 years | Cash on hand + Post-Confirmation Income + PUC Reimbursement |

---

[2] As of Proof of Claims Filed April 25, 2011.
[3] The Debtor needs to amend the Disclosure Statement to correct: (1) pre-petition amount owed to Wells Fargo Bank; (2) monthly payment amount to Wells Fargo; (3) total amount of time to pay Wells Fargo; and (4) total payment amount to Wells Fargo. The Debtor believes these amendments will affect other creditors monthly payment amounts and final payment date.

| 19. Class 5 Insiders | $0 [$0] | N/A | N/A |
|---|---|---|---|
| 20. Class 6 Interest Holders | $0 [$0] | N/A | N/A |

## IV. BASIS FOR RELIEF

A. <u>The Disclosure Statement Contains Adequate Information and Should Be Approved</u>

Section 1125 of the Bankruptcy Code requires a bankruptcy court to approve a written disclosure statement prior to allowing a plan proponent to solicit acceptances for a chapter 11 plan. See 11 U.S.C. § 1125(b). To approve a disclosure statement, a court must find that the disclosure statement contains "adequate information," which is defined as

> information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records, including a discussion of the potential material Federal tax consequences of the plan to the debtor, any successor to the debtor, and a hypothetical investor typical of the holders of claims or interests in the case, that would enable such hypothetical investor of the relevant class to make an informed judgment about the plan
> ...

11 U.S.C. § 1125(a)(I). Thus, a debtor's disclosure statement must provide information that is "reasonably practicable" to permit an "informed judgment" by impaired creditors entitled to vote on the plan. See *In re Zenith Electronics Corp.*, 241 B.R. 92, 99-100 (Bankr. D. Del. 1999); *In re Dakota Rail, Inc.,* 104 B.R. 138, 142 (Bankr. D. Minn. 1989). A disclosure statement "must clearly and succinctly inform the average unsecured creditor what it is going to get, when it is going to get it, and what contingencies there are to getting its distribution." *In re Ferretti*, 128 B.R. 16, 19 (Bankr. D.N.H. 1991).

The bankruptcy court has broad discretion to determine the adequacy of the information contained in a disclosure statement. See *Mabey v. Southwestern Elec. Power Co. (In re Cajun Elec. Power Corp.),* 150 F.3d 503, 518 (5th Cir. 1998); *In re Oxford Homes,* 204 B.R. 264, 269 (Bankr. D. Me. 1997). Congress granted the courts discretion in order to facilitate effective reorganization of a debtor in the broad range of businesses in which chapter 11 debtors engage and the broad range of circumstances that accompany chapter 11 cases. See H.R. Rep. No. 595, 95th

Cong., 1st Sess. 408-09 (1977); see also *In re Copy Crafters Quickprint Inc.*, 92 B.R. 973, 979 (Bankr. N.D.N.Y. 1988) (adequacy of disclosure statement "is to be determined on a case-specific basis under a flexible standard that can promote the policy of chapter 11 towards fair settlement through a negotiation process between informed interested parties"). As such, the determination of whether a disclosure statement contains adequate information is to be made on a case-by-case basis, focusing on the unique facts and circumstances of each case. *See In re Phoenix Petroleum Co.*, 278 B.R. 385, 393 (Bankr. E.D. Pa. 2001).

The DS as may be amended prior to the Disclosure Statement Hearing, contains adequate information with respect to various topics, including, among other things, information with respect to: (i) the terms of the Plan; (ii) certain events preceding the Debtor's Chapter 11 case; (iii) the operation of the Debtor's business during the course of the case; (iv) estimates of the claims asserted or to be asserted against the Debtor's estate and the value of distributions to be received by holders of such claims; (v) the risk factors affecting the Plan; (vi) the method and timing of distributions under the Plan; (vii) financial information that would be relevant to creditors' determinations of whether to accept or reject the Plan; (viii) a liquidation analysis identifying the estimated return that creditors would receive if the Debtor's bankruptcy case were a case under Chapter 7 of the Bankruptcy Code; (ix) the Federal tax consequences of the Plan; and (x) appropriate disclaimers regarding the Court's approval of information only as contained in the DS. A true and correct copy of the DS is attached hereto as **Exhibit "A."**

Accordingly, the Debtor believes that the DS contains the necessary information that is typically considered by bankruptcy courts in order to meet the adequacy requirements and respectfully requests that the Court approve the DS as meeting the requirements of section 1125 of the Bankruptcy Code.

///

///

///

///

B.  Establishing Procedures for Solicitation and Tabulation of Votes to Accept or Reject the Plan

1.  Approval of Form and Manner of Distribution of Solicitation Package

Bankruptcy Rule 3017(d) specifies the materials to be distributed to creditors and equity security holders upon approval of a disclosure statement. Specifically, Rule 3017(d) provides:

> Upon approval of a disclosure statement, - except to the extent that the court orders otherwise with respect to one or more unimpaired classes of creditors or equity security holders - the debtor in possession, trustee, proponent of the plan, or clerk as the court orders shall mail to all creditors and equity security holders, and in a chapter 11 reorganization case shall transmit to the United States trustee,
>
> (1) the plan or a court-approved summary of the plan;
>
> (2) the disclosure statement approved by the court;
>
> (3) notice of the time within which acceptances and rejections of the plan may be filed; and
>
> (4) any other information as the court may direct, including any court opinion approving the disclosure statement or a court-approved summary of the opinion.
>
> In addition, notice of the time fixed for filing objections and the hearing on confirmation shall be mailed to all creditors and equity security holders in accordance with Rule 2002(b), and a form of ballot conforming to the appropriate Official Form shall be mailed to creditors and equity security holders entitled to vote on the plan.

Fed. R. Bankr. P. 3017(d).

In accordance therewith, after the Court has approved the DS as containing adequate information under section 1125 of the Bankruptcy Code, the Debtor proposes to mail or cause to be mailed, by first-class mail, postage prepaid, a solicitation package (the "Solicitation Package") by no later than June 30, 2011 (the "Solicitation Date") to: (i) the U.S. Trustee; (ii) all parties requesting notice pursuant to Bankruptcy Rule 2002; (iii) the Internal Revenue Service and California Franchise Tax Board; and (iv) the holders of claims in Classes 1, 2, 3, and 4 (the "Voting Classes"), provided that such holders' claims: (a) are listed in the Debtor's Schedules, or (b) are the subject of a filed proof of claim (the "Voting Parties"), provided further that with

respect to a Voting Party that has timely filed multiple proofs of claim on account of a single claim, the Debtor will provide such Voting Party with only one Solicitation Package.

The Solicitation Package will contain a copy of: (i) the disclosure statement order; (ii) the Confirmation Hearing Notice; (iii) the form of Ballot to accept to reject the Plan; (iv) the DS and Plan; and (v) such other materials as the Court may direct. Further, although the Debtor has made, and will make, every effort to ensure that the Solicitation Packages described herein are in final form, the Debtor nonetheless requests that they be authorized to make nonsubstantive/non-material changes to the DS and Plan, and related documents without further order of the Court, including ministerial changes to correct typographical and grammatical errors, and to make conforming changes among the DS and Plan and any other materials in the Solicitation Packages prior to mailing.

The Debtor submits that the proposed notice and service procedures set forth herein satisfy the Bankruptcy Code and the Bankruptcy Rules.

2. Approval of Form and Manner of Confirmation Hearing Notice

Bankruptcy Rule 3017(d) specifies that "notice of the time fixed for filing objections and the hearing on confirmation shall be mailed to all creditors and equity security holders in accordance with Rule 2002(b)." Fed. R. Bankr. P. 3017(d).

In accordance therewith, after the Court has approved the DS as containing adequate information under section 1125 of the Bankruptcy Code, the Debtor proposes to mail or cause to be mailed by first class mail as part of the Solicitation Package, a written notice of: (i) the Court's approval of the DS; (ii) the deadline for voting on the Plan; (iii) the date of the Confirmation Hearing; and (iv) the deadline and procedures for filing objections to the confirmation of the Plan (as described herein). The Debtor submits that such materials and manner of service satisfy the requirements of Bankruptcy Rule 3017(d).

3. Approval of Forms of Ballot for Voting on the Plan

Rule 3017(d) of the Bankruptcy Rules requires the Debtor to mail a form of ballot that substantially conforms to Official Form No. 14 to "creditors and equity security holders entitled to

vote on the plan." Fed. R. Bankr. P. 3017(d). Accordingly, the Debtor proposes to use the Ballot substantially in the form attached hereto as **Exhibit "B"**, and to distribute the appropriate form of Ballot to the Voting Parties as part of the Solicitation Package. The proposed forms are based upon Official Form No. 14, but have been modified to meet the particular requirements of the Debtor's Chapter 11 case and the Plan. By this Motion, the Debtor seeks approval of the form of the Ballot.

    4.  Establishment of Voting Deadline

Rule 3017 (c) of the Bankruptcy Rules provides that, on or before approval of a disclosure statement, "the court shall fix a time within which the holders of claims or equity security interests may accept or reject the plan." Fed, R. Bankr. P. 3017(c).

As stated above, the Debtor will mail the Solicitation Packages, including the appropriate forms of Ballot and the Confirmation Hearing Notice, by June 30, 2011. Based on such schedule, the Debtor respectfully requests that the Court establish September 2, 2011 at 4:00 p.m. pacific time as the Voting Deadline by which all ballots accepting or rejecting the Plan must be received by the Debtor in order to be counted as a vote to accept or reject the Plan. Ballots must be delivered to the Debtor (i) by first-class mail; (ii) by overnight courier; or (iii) by hand delivery. The Debtor submits that such solicitation period is a sufficient period within which creditors can make an informed decision whether to accept or reject the Plan.

    5.  Approval of Procedures for Voting and Vote Tabulation

The Debtor proposes that, solely for the purpose of voting on the Plan and to tabulate acceptance or rejection of the Plan, the amount of claim for each Voting Party will be allowed in an amount equal to the greater of: (i) the amount of such claim as set forth in the Debtor's schedules, or (ii) the amount of such claim as set forth in a timely filed proof of claim to which no objection has been filed as of the Voting Record Date, subject to the following conditions:

    (i) If a claim for which a proof of claim has been timely filed is not listed in the Debtor's schedules, such claim shall be allowed for voting purposes only and not for the purpose of allowance or distribution in the amount set forth in such proof of claim;

-11-

(ii) If a claim for which a proof of claim has been timely filed is listed on the Debtor's schedules as contingent, unliquidated or disputed, such claim shall be allowed for voting purposes only and not for the purpose of allowance or distribution;

(iii) If a claim is listed in the Debtor's schedules as contingent, unliquidated, or disputed, or scheduled in an amount of $0.00, and a proof of claim was not timely filed, such claim shall have voting rights, only, in the amount set out in the schedule;

(iv) If a claim has been estimated or otherwise temporarily allowed for voting purposes pursuant to Rule 3018 of the Bankruptcy Rules by order of the Court, such claim shall be allowed for voting purposes only in the amount estimated or allowed by the Court, unless, prior to the Voting Deadline, the Court enters an order disallowing such claim;

(v) If a claim is deemed allowed pursuant to the Plan and the holder of the claim is entitled to vote on the Plan, the claim shall be allowed for voting purposes in the amount deemed allowed pursuant to the Plan;

(vi) If a holder of claims has timely filed multiple proofs of claims on account of a single claim, such holder shall have only one allowed claim for voting purposes;

(vii) Each holder of a claim shall be entitled to vote all of the non-duplicative claims it holds, but may only vote a single ballot as to all claims within a particular class; and

(viii) The assignee of a transferred and assigned scheduled or filed claim shall be permitted to vote such claim only if the transfer and assignment has been reflected on the Court's docket as of the close of business on the Voting Record Date.

If a Voting Party casts a Ballot on account of a claim that is the subject of an objection filed no later than five (5) days prior to the Voting Deadline, the Debtor requests, in accordance with Rule 3018 of the Bankruptcy Rules, that such creditor's Ballot not be counted unless such claim is temporarily allowed by the Court for voting purposes pursuant to Bankruptcy Rule 3018(a); provided however, that any undisputed portions of such claim shall be allowed for voting purposes. The Debtor additionally requests that creditors seeking to have a claim temporarily allowed for purposes of voting to accept or reject the Plan pursuant to Bankruptcy Rule 3018(a) be required to file a motion (the "Claims Estimation Motion") for such relief no later than five days prior to the Voting Deadline, and that the Court schedule a hearing on such motion for a date prior to the Confirmation Hearing. Notwithstanding the foregoing, if an objection to a claim requests that such claim be reclassified and/or allowed in a fixed, reduced amount, such claimant's Ballot shall be counted in such reduced amount and/or as the reclassified category.

///

The Debtor requests that the following procedures be used in tabulating the Ballot:

(i) only original Ballots returned to the Debtor bearing original ink signatures will be counted;

(ii) any unsigned Ballot shall not be counted;

(iii) any Ballot that is illegible or contains insufficient information to permit the identification of the holder shall not be counted;

(iv) any Ballot cast by a person or entity that does not hold a claim in a Voting Class shall not be counted;

(v) any Ballot that is properly completed, executed and timely returned to the Debtor that does not indicate an acceptance or rejection of the Plan shall not be counted;

(vi) any Ballot that is properly completed, executed and timely returned to the Debtor that indicates both acceptance and rejection of the Plan shall not be counted;

(vii) whenever a holder in a Voting Class returns more than one Ballot voting the same claim prior to the Voting Deadline, only the last Ballot timely returned to the Debtor shall be counted;

(viii) each holder of a claim in a Voting Class shall be deemed to have voted the full amount of its claim;

(ix) holders of claims in a Voting Class shall not split their vote, but shall vote their entire claim within a particular class either to accept or reject the Plan, and a Ballot (or a Ballot or multiple Ballots with respect to multiple claims within a single class) that partially rejects and partially accepts the Plan will not be counted;

(x) for purposes of the numerosity requirement of section 1126(c) of the Bankruptcy Code, separate claims held by a single creditor in a particular class will be aggregated as if such creditor held one claim against the Debtor in such class, and the votes related to such claims will be treated as a single vote to accept or reject the Plan;

(xi) any Ballot received by the Debtor by telecopier, facsimile or other electronic communication shall not be counted; and

(xii) any Ballot received after the Voting Deadline shall not be counted, unless the Debtor has granted an extension of the Voting Deadline in writing with respect to such Ballot.

Neither the Debtor nor any other person or entity will be under any duty to provide notification of defects or irregularities with respect to delivered Ballots, nor will any of them incur any liability for failure to provide such notification. Rather, the Debtor may either disregard, with no further notice, defective Ballots, or they may attempt to have defective Ballots cured.

The Debtor submits that establishing the voting and tabulation procedures set forth above is necessary to avert any confusion resulting from incomplete Ballots, will simplify the voting and

tabulation process, and is in the best interests of the Debtor, its estate, creditors, and other parties in interest.

### C. Establishing the Voting Record Date

Rule 3017(d) of the Bankruptcy Rules provides that, for the purposes of soliciting votes in connection with the confirmation of a plan of reorganization, "creditors and equity security holders shall include holders of stock, bonds, debentures, notes and other securities of record on the date the order approving the disclosure statement is entered or another date fixed by the court, for cause, after notice and a hearing." Fed. R. Bankr. P. 3017(d). Rule 3018(a) of the Bankruptcy Rules contains a similar provision regarding determination of the record date for voting purposes. Fed. R. Bankr. P. 3018(d).

Accordingly, the Debtor respectfully requests that this Court establish September 2, 2011 as the Voting Record Date for purposes of: (i) determining which creditors are entitled to vote on the Plan; provided however, that with respect to transfers of claims filed pursuant to Bankruptcy Rule 3001, the holder of a claim as of the Voting Record Date shall be the transferor of such claim unless the documentation evidencing such transfer was docketed by the Bankruptcy Court on or before twenty (20) days prior to the Voting Record Date and no timely objection with respect to such transfer was filed by the transferor. The Debtor believes that September 2, 2011, is an appropriate Voting Record Date.

### D. Establishment of Deadline and Procedures for Filing Objections to Confirmation of the Plan

Bankruptcy Rule 3017(c) provides that "[o]n or before approval of the disclosure statement, the court shall fix a time within which the holders of claims and interests may accept or reject the plan and may fix a date for the hearing on confirmation." Fed. R. Bankr. P. 3017(c). Additionally, Bankruptcy Rule 2002 requires 28 days' notice to all creditors and equity security holders of the time fixed for filing objections and the hearing to consider confirmation of a chapter 11 plan. Fed. R. Bankr. P. 2002 (b). Finally, pursuant to Bankruptcy Rule 3020(b)(1), objections to confirmation of a plan must be filed and served "within a time fixed by the court."

Fed. R. Bank. P. 3020(b)(l).

Accordingly, and in view of the Debtor's proposed solicitation schedule outlined herein, the Debtor requests that the Confirmation Hearing be scheduled for October 6, 2011, which is more than 28 days after the Disclosure Statement Hearing. The Debtor also requests that the Court order that the Confirmation Hearing may be adjourned or continued from time to time by the Court or the Debtor without further notice other than adjournments announced in open Court. The proposed date for the Confirmation Hearing is in compliance with the Bankruptcy Rules and the Local Rules and will enable the Debtor to pursue confirmation of the Plan in an efficient manner.

Additionally, the Debtor requests that the Court order that September 15, 2011, be fixed by the Court as the last date for filing and serving written objections, comments or responses to confirmation of the Plan (the "Confirmation Objection Deadline"). The Debtor further requests that the Court order that objections to confirmation of the Plan or proposed modifications to the Plan, if any, must: (i) be in writing; (ii) state the name and address of the objecting party and the amount and nature of the claim or interest of such party; (iii) state with particularity the basis and nature of any objection or proposed modification to the Plan, along with proposed language to remedy such objections, as relevant; and (iv) be filed, together with proof of service, with the Court and served so that they are actually received by the following parties no later than the Confirmation Objection Deadline: (i) counsel for the Debtor, Smith Campbell Clifford Kearney Gore, A Professional Law Corporation, 3424 Carson Street, Suite 350, Torrance, CA 90503 (attn: Christine M. Fitzgerald, Esq.); (ii) the Office of the United States Trustee; and (iii) all other parties requesting special notice or afforded rights of notice under the Bankruptcy Code or Bankruptcy Rules. The Debtor further proposes that the Court only consider timely filed written objections and that all objections not timely filed and served in accordance with the provisions of this Motion be deemed waived.

The Debtor submits that setting September 15, 2011, as the Confirmation Objection Deadline will provide parties in interest with adequate notice of the Confirmation Objection

-15-

Deadline and will afford the Debtor and other parties in interest sufficient time to consider the objections and any proposed modifications and file any replies, while leaving the Court sufficient time to consider any such objections and replies before the Confirmation Hearing.

### V. CONCLUSION

WHEREFORE, the Debtor respectfully requests that the Court enter the Disclosure Statement Order and grant such other and further relief as may be just and proper.

Respectfully Submitted,

DATED: May 4, 2011

SMITH CAMPBELL CLIFFORD KEARNEY GORE
A Professional Law Corporation

By: /s/ Christine M. Fitzgerald
Barry R. Gore
Christine M. Fitzgerald
Counsel for Chapter 11 Debtor and Debtor in Possession,
ConnectTo Communications, Inc.

## DECLARATION IN SUPPORT

I, Araksiya Nadjarian, declare as follows:

1. I am the President of ConnectTo Communications, Inc., Chapter 11 Debtor and Debtor in Possession (the "Debtor"). The following is true and correct and is based upon my personal knowledge and knowledge that I have gained by reviewing the books and records of the Debtor which are maintained in the ordinary course of business. If called upon as a witness in this matter, I could and would competently testify thereto.

2. I assisted in the preparation of the Disclosure Statement and Plan of Reorganization, which was filed in this Court on April 28, 2011.

3. A true and correct copy of the DS is attached hereto as **Exhibit "A."**

4. A true and correct copy of the Ballot that the Debtor proposes to use is attached hereto as **Exhibit "B."**

5. A summary of Plan Payments over the next eight years is set out in the chart below:

| SUMMARY OF PLAN PAYMENTS | | | |
|---|---|---|---|
| Payment Recipient | Amount of each Payment [Total Amount to be Paid] | Payment Due Date | Source of Payment |
| 21. Smith Campbell Clifford Kearney Gore (Debtor's Current Counsel) | $5,000.00 (est) [$60,000.00] (est) | Within 365 days from Effective Date | Cash on hand + Post-Confirmation Income + PUC Reimbursement |
| 22. Clarkson Gore & Marsella (Debtor's Former Counsel) | $3,702.97 [$44,435.69] | Within 365 days from Effective Date | Cash on hand + Post-Confirmation Income + PUC Reimbursement |
| 23. Office of the U.S. Trustee (OUST) | $6,500.00 (est) [$6,500.00] (est) | Effective Date | Cash on hand + Post-Confirmation Income + PUC Reimbursement |
| 24. Clerk of the Court | $500.00 (est) [$500.00] (est) | Effective Date | Cash on hand + Post-Confirmation Income + PUC Reimbursement |
| 25. Universal Services | $17,000.00[4] (est) | Effective Date | Cash on hand + |

---

[4] USAC asserted the Debtor owed it approximately $58,009.72 in admin expenses. Proponent believes that USAC's administrative claim is approximately $17,000.00.

-17-

| | | | |
|---|---|---|---|
| Administration Co. | [$17,000.00] (est) | | Post-Confirmation Income + PUC Reimbursement |
| 26. Hartford Insurance Co. | $917.00 [$917.00] | Effective Date | Cash on hand + Post-Confirmation Income + PUC Reimbursement |
| 27. Priority Tax Claims- Sec. 507(a)(8) | $28,716.98[5] [$97,586.78] | Within 5 years from the Effective Date | Cash on hand + Post-Confirmation Income + PUC Reimbursement |
| 28. Lease Assumption (AT&T) | $10,281.49 [$863,645.16] | Monthly over 8 years | Cash on hand + Post-Confirmation Income + PUC Reimbursement |
| 29. Lease Assumption (U.S. Colo.) | $6,000.00 [$6,000.00] | Effective Date | Cash on hand + Post-Confirmation Income + PUC Reimbursement |
| 30. Lease Assumption (Billsoft Services) | $1,000.00 [$1,000.00] | Effective Date | Cash on hand + Post-Confirmation Income + PUC Reimbursement |
| 31. Lease Assumption (Emdeon Business Services) | $2,000.00 [$2,000.00] | Effective Date | Cash on hand + Post-Confirmation Income + PUC Reimbursement |
| 32. Lease Assumption (Hi-Tech Gateway) | $2,000.00 [$2,000.00] | Effective Date | Cash on hand + Post-Confirmation Income + PUC Reimbursement |
| 33. Lease Assumption (VeriSign/TNS) | $2,000.00 [$2,000.00] | Effective Date | Cash on hand + Post-Confirmation Income + PUC Reimbursement |
| 34. Lease Assumption (Verizon) | $3,000.00 [$3,000.00] | Effective Date | Cash on hand + Post-Confirmation Income + PUC Reimbursement |
| 35. Class 1: Secured Creditor Wells Fargo Bank, N.A. (all assets) | $1,413.57[6] [$84,814.20] | Monthly Over 5 years | Cash on hand + Post-Confirmation Income + PUC Reimbursement |
| 36. Class 2 Secured Creditor Wilshire State Bank | $8,831.48 [$847,822.08] | Monthly Over 9 years | Cash on hand + Post-Confirmation Income + PUC Reimbursement |

---

[5] As of Proof of Claims Filed April 25, 2011.
[6] The Debtor needs to amend the Disclosure Statement to correct: (1) pre-petition amount owed to Wells Fargo Bank; (2) monthly payment amount to Wells Fargo; (3) total amount of time to pay Wells Fargo; and (4) total payment amount to Wells Fargo. The Debtor believes these amendments will affect other creditors monthly payment amounts and final payment date.

| | | | |
|---|---|---|---|
| 37. Class 3 Secured Creditor Internal Revenue Service | $849.70 [$50,982.00] | Monthly Over 5 years | Cash on hand + Post-Confirmation Income + PUC Reimbursement |
| 38. Class 4: General Unsecured Creditors | $1,988.54 [$167,037.36] | Monthly Over 8 years | Cash on hand + Post-Confirmation Income + PUC Reimbursement |
| 39. Class 5 Insiders | $0 [$0] | N/A | N/A |
| 40. Class 6 Interest Holders | $0 [$0] | N/A | N/A |

I declare under penalty of perjury, under the law of the United States of America that the foregoing is true and correct.

Executed on this 4TH day of May 2011, at Glendale, California.

_____
Araksiya Nadjarian