Harvey I. Saferstein (SBN: 49750)
Nada I. Shamonki (SBN: 205359)
Sarah J. Robertson (SBN 243364)
MINTZ LEVIN COHN FERRIS GLOVSKY AND
    POPEO, P.C.
2029 Century Park East, Suite 1370
Los Angeles, California 90067
Phone: (310) 586-3200
Fax:     (310) 586-3202
email:  hsaferstein@mintz.com; nshamonki@mintz.com;
           srobertson@mintz.com

-and-

Joseph H. Baldiga (*Admitted pro hac vice*)
Christine E. Devine (*Admitted pro hac vice*)
Gina M. Barbieri (*Admitted pro hac vice*)
MIRICK, O'CONNELL, DEMALLIE & LOUGEE, LLP
100 Front Street
Worcester, MA 01608-1477
Phone: (508) 791-8500
Fax:     (508) 791-8502
email:  jbaldiga@mirickoconnell.com; cdevine@mirickoconnell.com;
           gbarbieri@mirickoconnell.com

Attorneys for Creditor
UNIVERSAL SERVICE ADMINISTRATIVE COMPANY

## UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

## LOS ANGELES DIVISION

| | |
|---|---|
| In re:<br><br>CONNECTTO COMMUNICATIONS, INC., a Nevada Corporation,<br><br>              Debtor-in-Possession | Case No. 2:10-bk-19227-VZ<br><br>Chapter 11<br><br>**LIMITED OBJECTION OF UNIVERSAL SERVICE ADMINISTRATIVE COMPANY TO MOTION OF THE DEBTOR FOR ORDER (1) APPROVING DISCLOSURE STATEMENT DESCRIBING DEBTOR'S CHAPTER 11 PLAN; (2) ESTABLISHING PROCEDURES FOR THE SOLICITATION AND TABULATION OF VOTES TO ACCEPT OR REJECT THE PLAN; (3) FIXING A RECORD DATE FOR VOTING; AND (4) FIXING DATE, TIME AND PLACE FOR CONFIRMATION HEARING**<br><br>**DATE:**    **May 26, 2011**<br>**TIME:**    **1:30 p.m.**<br>**CTRM:**    **1368** |

Universal Service Administrative Company ("USAC"), a creditor of ConnectTo Communications, Inc. (the "Debtor"), hereby objects on a limited basis (the "Limited Objection") to the Motion of the Debtor for Order (1) Approving Disclosure Statement Describing Debtor's Chapter 11 Plan; (2) Establishing Procedures for the Solicitation and Tabulation of Votes to Accept or Reject the Plan; (3) Fixing a Record Date for Voting; and (4) Fixing Date, Time and Place for Confirmation Hearing (the "Disclosure Statement Motion") because it fails to adequately explain (a) USAC's administrative claim and the potential for administrative charges and/or credits to arise post-confirmation pursuant to USAC's Annual True-Up process (described herein) and (b) the reporting and payment obligations of the reorganized Debtor.

In support of its Limited Objection, USAC states as follows:

## FACTUAL AND PROCEDURAL BACKGROUND

On March 12, 2010, the Debtor filed with this Court a voluntary petition for relief pursuant to Chapter 11 of the United States Bankruptcy Code, 11 U.S.C. §§ 101 – 1532 (the "Bankruptcy Code"). The Debtor continues to operate its business and manage its assets as debtor-in-possession.

USAC currently holds a substantial administrative claim against the Debtor. Further, because the Debtor continues to operate post-petition as a telecommunications carrier, USAC's administrative claim continues to increase. Declaration of E. Michael Lawrence, Jr. (the "Declaration") at ¶3.

On April 28, 2011, the Debtor filed its Disclosure Statement and Plan of Reorganization (the "Combined DS/Plan"). In the Combined DS/Plan, the Debtor identifies USAC as a creditor holding an administrative claim in the amount of "$17,000 (est.)," to be paid on the effective date of the plan.

On May 5, 2011, the Debtor filed its Disclosure Statement Motion.

This Court scheduled a hearing to consider the Disclosure Statement Motion for May 26, 2011 at 1:30 p.m.

## DESCRIPTION OF USAC AND ITS INVOICING PROCEDURES

In the 1996 Telecommunications Act., P.L. 104-104 Congress authorized creation of federal universal service support mechanisms whereby eligible providers of telecommunications services to customers in high cost areas, low income customers, rural health care centers, schools and libraries

1

could obtain financial support for providing approved telecommunications services to such customers.  47 U.S.C. § 254(h)(l).  Congress directed that funding for these universal service support mechanisms be obtained by requiring mandatory contributions to a Universal Service Fund (the "USF") from telecommunications carriers that provide interstate and international telecommunications services.  47 U.S.C. § 254(d).

USAC is a not-for-profit Delaware corporation that administers the USF under the oversight of the FCC.[1]  *See* 47 C.F.R. § 54.701(a).  The USF is generated through mandatory contributions from all U.S. telecommunications carriers based on, *inter alia*, a percentage of their interstate and international end-user telecommunication revenues.  47 C.F.R. § 54.709(a).  The FCC directs all U.S. telecommunication carriers to submit such information to USAC on a quarterly and annual basis, using a "Telecommunications Reporting Worksheet."  47 C.F.R. § 54.711.  The Telecommunications Reporting Worksheet and Accompanying Instructions (the "Worksheet Instructions") are published in the Federal Register and set forth detailed reporting requirements concerning the information carriers are required to submit to USAC on a quarterly and annual basis. *Id.*  Where a telecommunications carrier fails to submit a Telecommunications Reporting Worksheet to USAC, federal regulations require USAC to assess USF obligations and issue invoices based on available information including historical interstate and international end-user telecommunication revenue.  47 C.F.R. § 54.709(d).

Upon receiving and reviewing each carrier's quarterly Telecommunications Reporting Worksheet (the "Quarterly Revenue Report"), USAC calculates the monthly USF obligation for the upcoming quarter and then invoices each carrier for its contributions to the USF on a monthly basis (the "USF Obligations").  USAC deposits the contributions into the USF, and eligible applicants may seek disbursements of funds pursuant to FCC rules governing the various universal service support mechanisms.

In April of each year, carriers must report annual revenue data for the prior calendar year on an annual Telecommunications Reporting Worksheet (the "Annual Revenue Report" or "Form 499-A"), which USAC then uses to perform a "true-up" by comparing the Annual Revenue Report to the

---

[1]    USAC and the FCC are separate entities and have separate functions and responsibilities.

previously filed Quarterly Revenue Reports (the "Annual True-Up"). If a carrier's reported annual revenues are less than the revenues reported previously for that year on the Quarterly Revenue Reports, USAC issues Annual True-Up credits to that carrier. Alternatively, if a carrier's reported annual revenues are greater than reported on the carrier's Quarterly Revenue Reports, USAC issues Annual True-Up adjustments to that carrier. These Annual True-Up credits or adjustments generally appear in three equal amounts on the July, August and September invoices of that subsequent year.[2]

Contributors are entitled to downwardly amend Annual Revenue Reports for up to one year after that form's initial due date.[3]

In the event that a carrier filed for bankruptcy protection during the year covered by the Annual True-Up, USAC calculates the adjustments or credits that are appropriately associated with the pre-petition period. After all of the credits or adjustments have posted to a carrier's account (generally by October of each year), USAC reverses the pre-petition portion of the credits or adjustments and files a corresponding amendment to its pre-petition proof of claim.

## USAC'S PRE-PETITION AND ADMINISTRATIVE CLAIMS

As a telecommunications carrier, the Debtor is required by FCC regulations and the reporting requirements set forth in the Worksheet Instructions to submit Annual and Quarterly Revenue Reports, make monthly contributions to the USF, pay late filing or late payment fees associated with delinquent filings or payments, and make any additional contributions to the USF required as a result of the Annual True-Ups.

### A.     The Debtor's Quarterly and Annual Revenue Reports.

Since the Debtor began operating as a telecommunications carrier, it has periodically submitted Quarterly and Annual Revenue Reports to USAC. Declaration at ¶8.

---

[2]    A similar process is followed in the event a carrier timely revises an Annual Revenue Report.
[3]    Upward revisions are always accepted and must be filed. *See In re Federal-State Joint Board on Universal Service, 1998 Biennial Regulatory Review – Streamlined Contributor Reporting Requirements Associated with Administration of Telecommunications Relay Service, North American Numbering Plan, Local Number Portability, and Universal Service Support Mechanisms, Changes to the Board of Directors of the National Exchange Carrier Association, Inc.*, CC Docket Nos. 96-45, 98-171, 97-21, Order, 20 FCC Rcd., 1012, 1016-18, ¶¶ 10-14 (2004) (adopting one-year revision deadline for downward revisions to Annual Revenue Reports).

On or about April 1, 2009, the Debtor submitted to USAC its 2009 Annual Revenue Report, reporting its actual revenue for calendar year 2008. USAC accepted and processed the 2009 Annual Revenue Report in the ordinary course and conducted the 2009 Annual True-Up of the Debtor's 2008 USF Obligations based on the information included in that report. Declaration at ¶9.

From April 1, 2009 through March 21, 2011 the Debtor submitted <u>no</u> Annual or Quarterly Revenue Reports. Accordingly, USAC assessed USF Obligations and issued invoices to the Debtor based on available information, including historical revenue, as it is permitted to do pursuant to federal regulations. Declaration at ¶10.

On or about March 22, 2011, the Debtor submitted to USAC (a) its 2010 Annual Revenue report (reporting actual revenue for calendar year 2009) and (b) various past-due Quarterly Revenue Reports. Declaration at ¶11.

On or about April 1, 2011, the Debtor submitted to USAC its 2011 Annual Revenue Report (reporting actual revenue for calendar year 2010). Declaration at ¶12.

**B.**     **<u>The Debtor's Chapter 11 Administrative USF Obligations.</u>**

Since the Petition Date, as the Debtor has continued its operations, USAC has prepared and mailed to the Debtor monthly Statements of Account which itemize the Debtor's USF Obligations on a monthly basis. Declaration at ¶13.

Shortly after the Petition Date, on or about April 21, 2010, USAC filed a proof of claim asserting an administrative expense claim in the amount of $4,237.03. Claims Register, Claim No. 7. USAC's administrative expense proof of claim form indicates that post-petition USF obligations continue to accrue and reserves USAC's right to amend.

Since the Petition Date in March of 2010, the Debtor has made <u>no</u> payments toward its USF Obligations which have arisen post-petition. Declaration at ¶14.

On February 28, 2011, USAC filed its Motion for Entry of an Order (1) Allowing and Directing the Immediate Payment of Universal Service Fees Accrued and Accruing Post-Petition and (II) Compelling Compliance with Reporting Requirements (the "Original Administrative Claim Motion"). In its Original Administrative Claim Motion, USAC sought, among other things,

allowance and payment of its administrative claim in the then-outstanding amount of $58,009.72. Docket No. 215.

Following a hearing on April 6, 2011, this Court entered an Order denying USAC's Original Administrative Claim Motion. Docket No. 230. At the hearing, the Court indicated that USAC's Original Administrative Claim Motion may have been premature in part because, at that time, USAC was still processing the Debtor's 2010 and 2011 Annual Revenue Reports.

USAC has since processed the Debtor's 2010 and 2011 Annual Revenue Reports and conducted the revised 2010 Annual True-Up and the 2011 Annual True-Up based on the actual 2009 and 2010 revenue information set forth therein. Declaration at ¶15.

Taking into account the results of the revised 2010 Annual True-Up and the 2011 Annual True-Up, USAC has recalculated the Debtor's post-petition USF Obligations since the Petition Date and determined that the Debtor's post-petition USF Obligations total $50,584.41 as of the date hereof.[4] Declaration at ¶16.

USAC will submit shortly hereafter its *Renewed* Motion for Entry of an Order (1) Allowing and Directing the Immediate Payment of Universal Service Fees Accrued and Accruing Post-Petition and (II) Compelling Compliance with Reporting Requirements (the "Renewed Administrative Claim Motion"). In the Renewed Administrative Claim Motion, USAC describes the calculations in greater detail and requests allowance and payment of its administrative claim in the amount of $50,584.41.

The Debtor's post-petition USF Obligations continue to accrue as the Debtor continues to operate as a telecommunications carrier. In addition, subsequent Annual True-Ups, including the 2012 Annual True-Up, may impact USAC's administrative claim. Declaration at ¶17.

**C.    The Debtor's Pre-Petition USF Obligations.**

Prior to the Petition Date, the Debtor failed to pay substantial USF obligations invoiced by USAC in the ordinary course. Declaration at ¶18.

---

[4]    Credits resulting from the 2011 Annual True-Up are included in the $50,584.41 valuation but will appear in equal amounts as credits on the Debtor's July, August, and September 2011 Statements of Account, as is standard practice.

USAC holds an allowed pre-petition claim in the amount of $94,509.65.  Docket Nos. 126, 166.

Since the allowance of its pre-petition claim, USAC has conducted the revised 2010 Annual True-Up and the 2011 Annual True-Up based on the actual 2009 revenue information set forth in the Debtor's 2010 Annual Revenue Report and the actual 2010 revenue set forth in the Debtor's 2011 Annual Revenue Report.  Declaration at ¶15.

Taking into account the results of the revised 2010 Annual True-Up and the 2011 Annual True-Up, USAC has recalculated the Debtor's pre-petition USF Obligations and determined that the Debtor's pre-petition USF Obligations total $106,187.23.  USAC intends to file an amended pre-petition proof of claim in the amount of $106,187.23 in the ordinary course.  Declaration at ¶19.

**D.    The Audit.**

USAC delivers financial support from the USF to the Debtor, based on information reported by the Debtor in a monthly "Form 497," for providing services to low income customers.  Declaration at ¶20.

Federal regulations provide USAC with authority to audit contributors and carriers that report data.  47 C.F.R. § 54.707.  As directed by the regulations, USAC has established procedures to verify discounts, offsets, and support amounts, provided by the universal service support programs.  Id.  The regulations further provide that USAC may suspend or delay discounts, offsets, and support amounts provided to a carrier if the carrier fails to provide adequate verification of discounts, offsets, or support amounts provided upon reasonable request.  Id.

Following an audit of support claimed by the Debtor for March 2010, USAC informed the Debtor that it had overclaimed Toll Limitation Services ("TLS") support for March 2010.  USAC further directed the Debtor to submit revised "Forms 497" for the period from April 2010 through December 2010.  The Debtor appealed USAC's determination, which appeal remains pending.  Declaration at ¶20.

**OBJECTION TO DISCLOSURE STATEMENT**

USAC has reviewed the Debtor's Combined DS/Plan and has determined that it is objectionable since it fails to adequately explain:  (a) USAC's administrative claim and the potential

for administrative charges and/or credits to arise post-confirmation pursuant to USAC's Annual

True-Up process; and (b) the reporting and payment obligations of the reorganized Debtor.  The

Debtor also fails to reference the pending audit appeal.

Court approval of a disclosure statement is conditioned upon it containing "adequate

information." 11 U.S.C. § 1125.  *See also In re Cardinal Congregate I*, 121 B.R. 760, 764 (Bankr.

S.D. Ohio 1990).  The Court in *Cardinal Congregate I* adopted a 19-point "nonexhaustive" list of

information that typically is required to be included in a Disclosure Statement.  *Id.* at 765; *see also In*

*re Eastern Maine Electric Co-Op.*; 125 Bankr. 329 (Bankr. D. Me. 1991).  The Disclosure Statement

fails to meet the minimum disclosure requirements of providing adequate information to creditors

and interested parties.

A.     **USAC's Administrative Claim and Annual True-Up Issues.**

As stated above, USAC's records reflect a current post-petition balance of $50,584.41.

Further, USAC's administrative claims (*i.e.*, the Debtor's USF Obligations) continue to accrue as the

Debtor continues to operate post-petition.

Due to the process described above, however, USAC's final administrative claim balance has

the potential to increase if the Debtor has underreported or otherwise failed to accurately report its

revenue.

The Debtor fails to sufficiently disclose and explain USAC's administrative claim in the

Combined DS/Plan.  The Debtor identifies USAC as a "payment recipient" with a "total amount to

be paid" of "$17,000.00 (est)," on the Effective Date of the Plan.  The Debtor describes this

allocation in a footnote as follows: "USAC asserted the Debtor owed it approximately $58,009.72 in

administrative expenses.  Proponent believes that USAC's administrative claim is approximately

$17,000.00."  Combined DS/Plan at Page 8, Line 27.  This notation is inaccurate and fails to

adequately explain the Debtor's basis to dispute USAC's assessment of the Debtor's USF

Obligations, which are currently $50,584.41.

As described previously, each year USAC conducts an Annual True-Up of the Debtor's

revenues for the prior calendar year.  As a result, the Debtor (or any reorganized entity, on the

Debtor's behalf) must file an Annual Revenue Report in 2012,[5] which will report actual 2011 revenue and impact the Debtor's liability to USAC for calendar year 2011.  Therefore, it is possible that there will be post-confirmation adjustments to the Debtor's USF Obligations arising during this Chapter 11 proceeding.  The Combined DS/Plan fails to disclose and explain this possibility.

The 2012 Annual True-Up may conversely result in credits due to the Debtor.  The Combined DS/Plan likewise fails to describe the Debtor's proposed disposition of any credits that might result from a post-confirmation Annual True-Up.

The Combined DS/Plan fails to describe the Annual True-Up process and, further, provides no information regarding the potential for USAC's administrative claim to increase post-confirmation pursuant to the Annual True-Up process.  Creditors and other parties-in-interest require this information in order to assess, among other things, the feasibility of the Debtor's Plan.

As a result of the Debtor's failure to identify and explain USAC's administrative claim and post-confirmation true-up issues, the Debtor's Combined DS/Plan lacks adequate information required by Bankruptcy Code § 1125.  Thus, approval of the Combined DS/Plan must be denied unless the Debtor augments its disclosures in order to provide adequate information about USAC's administrative claim.

**B.**      **Obligations of the Reorganized Debtor.**

As described above, it is possible that there will be post-confirmation adjustments to the Debtor's USF Obligations arising during this Chapter 11 proceeding or, conversely, post-confirmation credits due to the Debtor.

The Combined DS/Plan fails to specify that the reorganized Debtor (the "Reorganized Debtor") shall be responsible for paying USF Obligations that arise from post-confirmation Annual True-Ups or future revised Annual Revenue Reports.  The Combined DS/Plan also fails to identify the party that would be entitled to any credits issued by USAC post-confirmation but relating to pre-confirmation invoicing periods.

Further, because of the on-going revenue reporting requirements, the Reorganized Debtor must be responsible for maintaining revenue information sufficient to complete post-confirmation

---

[5]     Similarly, if the Debtor continues to operate in 2012 prior to confirmation of the Plan, the Debtor must file an Annual Revenue Report in 2013.

Annual Revenue Reports that include pre-confirmation periods.  The Combined DS/Plan fails to address post-confirmation reporting issues and to identify the Reorganized Debtor as the entity that will file the 2012 Annual Revenue Report, and any other Revenue Reports that may be required, on behalf of the Debtor.  As it appears that the structure and management of the Debtor will remain largely in place post-confirmation, the Debtor should now be able to confirm that the Reorganized Debtor will file the 2012 Annual Revenue Report and any other revenue reports that may be required on behalf of the Debtor.

As a result of the Debtor's failure to identify and explain post-confirmation obligations of the Reorganized Debtor, the Debtor's Combined DS/Plan lacks adequate information required by Bankruptcy Code § 1125.  Thus, unless the Debtor augments its disclosures to identify and explain post-confirmation reporting and payment obligations of the Reorganized Debtor, approval of the Disclosure Statement must be denied.

**C.**      **The Audit.**

The Combined DS/Plan fails to reference the Debtor's pending appeal of USAC's audit results.  If the Debtor is ultimately required to submit revised "Forms 497" for the months of April 2010 through December 2010, such revisions may have financial consequences to the Debtor.  The Debtor should be required to disclose this possibility so creditors and other parties-in-interest may assess feasibility of the Plan.

As a result of the Debtor's failure to reference the audit appeal and its potential impact on the Debtor, the Debtor's Combined DS/Plan lacks adequate information required by the Bankruptcy Code § 1125.  Thus, unless the Debtor augments its Combined DS/Plan as set forth herein, approval of the Combined DS/Plan must be denied.

**D.**      **USAC's Reservation of Rights.**

Without limitation, USAC reserves the right to object to any further Disclosure Statement or amended Combined DS/Plan filed by the Debtor.  In addition, USAC reserves the right to object to confirmation of the Plan.

WHEREFORE, USAC respectfully requests that this Court enter an Order:

a.      Denying approval of the Debtor's Combined DS/Plan or, alternatively,

9

1           b.      Requiring the Debtor to amend the Combined DS/Plan to provide additional

2      information as appropriate, particularly as it relates to USAC as set forth

3      herein; and

4           c.      Granting such other and further relief as is just.

5

6  Dated:  May 12, 2011           Respectfully submitted,

7                         MINTZ LEVIN COHN FERRIS GLOVSKY AND
POPEO, P.C.

8

9                         /s/ Nada I. Shamonki

10                      Harvey I. Saferstein
Nada I. Shamonki
Sarah J. Robertson

11                      Attorneys for Creditor

12                      UNIVERSAL SERVICE ADMINISTRATIVE
COMPANY

13

14

15  5401114v.1

16

17

18

19

20

21

22

23

24

25

26

27

28

**NOTE:** When using this form to indicate service of a proposed order, **DO NOT** list any person or entity in Category I. Proposed orders do not generate an NEF because only orders that have been entered are placed on the CM/ECF docket.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:
2029 Century Park East, Suite 1370, Los Angeles, California 90067

A true and correct copy of the foregoing document described as ___LIMITED OBJECTION OF UNIVERSAL SERVICE ADMINISTRATIVE COMPANY TO MOTION OF THE DEBTOR FOR ORDER (1) APPROVING DISCLOSURE STATEMENT DESCRIBING DEBTOR'S CHAPTER 11 PLAN; (2) ESTABLISHING PROCEDURES FOR THE SOLICITATION AND TABULATION OF VOTES TO ACCEPT OR REJECT THE PLAN; (3) FIXING A RECORD DATE FOR VOTING; AND (4) FIXING DATE, TIME AND PLACE FOR CONFIRMATION HEARING___ will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner indicated below:

**I.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On _May 12, 2011,_ I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:

SEE ATTACHED SERVICE LIST

☒ Service information continued on attached page

**II.  SERVED BY U.S. MAIL OR OVERNIGHT MAIL**(indicate method for each person or entity served)**:**
On _May 12, 2011,_ I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge _will be_ completed no later than 24 hours after the document is filed.

Chambers, Hon. Vincent P. Zurzolo
255 E. Temple Street, Suite 1360
Los Angeles, CA 90012

☐ Service information continued on attached page

**III.  SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL** (indicate method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on _____, I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on the judge _will be_ completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| May 12, 2011 | Diane Endo | /s/ Diane Endo |
|---|---|---|
| Date | Type Name | Signature |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

**F 9013-3.1.PROOF.SERVICE**

**ADDITIONAL SERVICE INFORMATION** (if needed):


**VIA NEF:**

Gina M Barbieri on behalf of Creditor Universal Service Administrative Company
gbarbieri@mirickoconnell.com

John H Choi on behalf of Interested Party Courtesy NEF
johnchoi@kpcylaw.com

Christine E Devine on behalf of Creditor Universal Service Administrative Company
cdevine@mirickoconnell.com

Christine M Fitzgerald on behalf of Debtor ConnectTo Communications, Inc.
cfitzgerald@scckg.com

Mark D Houle on behalf of Creditor AT&T California
mark.houle@pillsburylaw.com

Sean Keshishyan on behalf of Creditor HI-TECH GATEWAY, INC.
troxelllaw@dslextreme.com

Dare Law on behalf of U.S. Trustee United States Trustee (LA)
dare.law@usdoj.gov

Eve A Marsella on behalf of Debtor ConnectTo Communications, Inc.
emarsella@lawcgm.com

Edward J Miller on behalf of Creditor Wells Fargo Bank
emiller@dfflaw.com

Nada I Shamonki on behalf of Creditor Universal Service Administrative Company
nshamonki@mintz.com, docketing@mintz.com

David Tabibian on behalf of Creditor AT&T California
david.tabibian@pillsburylaw.com

United States Trustee (LA)
ustpregion16.la.ecf@usdoj.gov

Mark Wray on behalf of Creditor U.S. Colo, LLC
mwray@markwraylaw.com

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*August 2010*                                                                **F 9013-3.1.PROOF.SERVICE**