PILLSBURY WINTHROP SHAW PITTMAN LLP
CRAIG A. BARBAROSH (State Bar No. 160224)
WILLIAM B. FREEMAN (State Bar No. 137276)
MARK D. HOULE (State Bar No. 194861)
650 Town Center Drive, Suite 700
Costa Mesa, CA 92626
Telephone: (714) 436-6800
Facsimile: (714) 436-2800

Attorneys for Creditor,
Pacific Bell Telephone Company dba AT&T California

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF CALIFORNIA

(LOS ANGELES DIVISION)

| In re:<br><br>ConnectTo Communications, Inc.,<br><br>Debtor. | Case No. 10-19227-VZ<br><br>Chapter 11<br><br>**OBJECTION OF CREDITOR PACIFIC BELL TELEPHONE COMPANY TO DEBTOR'S DISCLOSURE STATEMENT TO PLAN OF REORGANIZATION**<br><br><u>Hearing Date</u>:<br><br>Date:  May 26, 2011<br>Time:  1:30 p.m.<br>Place: Courtroom 1368<br>           255 E. Temple Street<br>           Los Angeles, CA 90012 |
|---|---|

601440339v1

Pacific Bell Telephone Company dba AT&T California ("AT&T"), hereby files this Objection ("Objection") to the Disclosure Statement ("Disclosure Statement") describing the Chapter 11 Plan of Reorganization ("Plan") submitted by ConnectTo Communications, Inc., the Chapter 11 debtor-in-possession herein ("Debtor").

I. BACKGROUND AND SUMMARY OF ARGUMENT.

  A. Petition Date and Relationship Between the Parties.

Debtor filed its petition for relief under Chapter 11 of the Bankruptcy Code on March 12, 2010 (the "Petition Date"). The relationship between Debtor and AT&T is that AT&T provides telecommunications utility services to the Debtor pursuant to various pre-petition agreements between the Parties. Specifically, on or about May 11, 2006, AT&T and Debtor entered into that certain Interconnection and/or Resale Agreement (the "IR Agreement"). On or about May 15, 2006, AT&T and Debtor entered into that certain Commercial Agreement (the "Commercial Agreement"). The IR Agreement and the Commercial Agreement are collectively referred to herein as the "Agreements".

On July 14, 2010, AT&T filed a proof of claim in the amount of $957,323.03 ("Claim No. 12"). Subsequently, by "Order Approving Stipulation Reducing and Allowing Proof of Claim filed by Pacific Bell Telephone Company d/b/a AT&T California (Claim No. 12), and Allowing Set-Off by AT&T" entered on May 6, 2011 ("Claim Order"), AT&T's claim was allowed in the amount of $830,000.00 (the "Allowed Claim"), subject to reduction upon AT&T's setoff of its pre-petition deposit. A true and correct copy of the Claim Order is attached as Exhibit "1" to the Declaration of Mark D. Houle filed concurrently herewith, and incorporated herein by this reference. Pursuant to the Claim Order, AT&T was authorized, but not required, to set-off its deposit against the Allowed Claim. AT&T has not yet set-off its deposit against the Allowed Claim.

Pursuant to the Disclosure Statement, Debtor characterizes AT&T's Allowed Claim as in the amount of $765,000.00, and proposes to pay the Allowed Claim by monthly payments in the amount of $10,281.49 ($123,377.88 per year) over an 8 year period. *See* Disclosure Statement, page 14, lines 1-9. The Plan payments include interest at the rate of 3.5%.

601440339v1                                - 1 -

B. <u>The Disclosure Statement Should Not be Approved.</u>

As shown below, the Debtor's Plan is patently unconfirmable because Debtor does not provide for "prompt" cure of the Allowed Claim as required by Section 365. Moreover, given that AT&T has not set-off against the Allowed Claim, the Amount of the Allowed Claim, and "cure" amount for AT&T, should be $830,000.00, not $765,000.00. As such, and as demonstrated below, the Disclosure Statement should not be approved because the Plan is patently unconfirmable on its face and because the Disclosure Statement does not contain "adequate information." AT&T does note that it and the Debtor are currently engaged in settlement negotiations regarding the treatment of AT&T under the Plan, and is hopeful that the parties will reach a mutually agreeable resolution of AT&T's treatment under the Plan.

II. <u>STANDARDS FOR EVALUATING THE DISCLOSURE STATEMENT</u>

The adequacy of a disclosure statement is measured by the standards set forth in Section 1125 of the Bankruptcy Code. The purpose of a disclosure statement is to provide "adequate information," *i.e.*, information sufficient to enable creditors "to make an informed judgment about the [proposed reorganization] plan." 11 U.S.C. § 1125(a). As summarized in *In re Malek*, 35 B.R. 443 (Bankr. E.D. Mich. 1983):

> "The Code requires that adequate information be present in the disclosure statement and be of such nature that parties be able to reach an informed judgment about the plan. Without information sufficient to allow parties voting on the plan the opportunity to arrive at an independent and informed judgment, the disclosure statement cannot be approved."

*Id.* at 444-45 (citations omitted). The proponent of a plan bears the ultimate burden of persuasion in establishing that its disclosure statement contains adequate information. *See In re Jeppson*, 66 B.R. 269 (Bankr. D. Utah 1986).

The facts and circumstances of each case determine what constitutes adequate information. *See, e.g., Oneida Motor Freight, Inc. v. United Jersey Bank*, 848 F.2d 414, 417 (3rd Cir. 1988). Nevertheless, "complete disclosure is imperative to assist interested parties in making decisions relevant to the bankrupt estate." *Id.* at 419, and given "the reliance placed upon the disclosure statement by the creditors and the court," one cannot "overemphasize the [plan proponent's] obligation to provide sufficient data to satisfy the Code standard of 'adequate

1  information'." *Id.* at 417.

2  "The information to be provided should be comprised of <u>all</u> those factors presently known
3  to the plan proponent that bear upon the success or failure of the proposals contained in the plan."
4  *In re Stanley Hotel, Inc.,* 13 B.R. 926, 929 (Bankr. D. Colo. 1981). *See also In re Cardinal*
5  *Congregate I,* 121 B.R. 760, 765 (Bankr. S.D. Ohio 1990) ("Generally, a disclosure statement
6  must contain all pertinent information bearing on the success or failure of the proposals in the
7  plan of reorganization.").

8  As set forth herein below, the Debtor's Disclosure Statement does not contain adequate
9  information within the meaning of 11 U.S.C. Section 1125.

10  III.    <u>OBJECTION</u>

11  A.    <u>The Disclosure Statement Should Not be Approved Because the Plan is Patently Unconfirmable.</u>
12  
13  1.    <u>Debtor's Plan is patently unconfirmable because the proposed treatment to cure the Allowed Claim owing to AT&T is not a "prompt" cure as required pursuant to Section 365 of the Bankruptcy Code.</u>
14  
15  Section 365(b)(1) requires that the Debtor cure or provide adequate assurance that it will
16  "promptly cure" any defaults under the lease to be assumed.

17  (b)(1) If there has been a default in an executory contract or unexpired lease of the debtor, the trustee may not assume such contract or lease unless, at the time of assumption of such contract or lease, the trustee--
18  (A) cures, or **provides adequate assurance that the trustee will promptly cure**, such default …
19  (C) provides adequate assurance of future performance under such contract or lease.

20  11 U.S.C.. § 365(b)(1)(A) (emphasis added).

21  "Congress also did not define the words 'promptly cure' in § 365(b)(1)(A)." The issue of
22  promptness ultimately depends upon the facts and circumstances of each case." *In re Uniq Shoes*
23  *Corp.,* 316 B.R. 748, 751 (Bankr. S.D. Fla. 2004). Concededly some courts have held that
24  installment payments in some circumstances may constitute a "prompt" cure within the meaning
25  of Section 365(b)(1). However, Courts generally hold that a proposed cure over a period of two
26  years or more is not 'prompt' for purposes of § 365(b)(1) unless "special considerations" are
27  present. *See, e.g., In re Flugel,* 197 B.R. 92, 97 (Bankr. S.D. Cal. 1996) (proposed cure over 10
28  

601440339v1

- 3 -

years not prompt). As stated in the *Flugel* decision:

> "Under section 365(b)(1) the Debtors must cure the pre- and post-petition arrearage "promptly" if the plan is to be confirmed. This court is aware of no case in which a cure period of even half that proposed by the Debtors has been approved. In *In re Coors of North Mississippi, Inc.*, 27 B.R. 918 (Bankr. N.D. Miss. 1983), the court approved a three-year cure period, <u>however, the court also factored in the prospect of a long and successful business operation</u>. The court in *In re Whitsett*, 163 B.R. 752 (Bankr. E.D. Pa. 1994), approved a period of just under two years, <u>however, the court noted that the lease was federally subsidized providing the lessor with unusual protections.</u>
>
> Without such special considerations, much shorter periods have been held not to be prompt. *In re Yokley*, 99 B.R. 394 (Bankr. M.D. Tenn. 1989) (two years under Chapter 13 plan); *In re Embers 86th Street, Inc.*, 184 B.R. 892 (Bankr. S.D.N.Y. 1995) (29 months); *In re Liggins*, 145 B.R. 227 (Bankr. E.D. Va. 1992) (48–60 months); *In re Urbanco, Inc.*, 122 B.R. 513 (Bankr. W.D. Mich. 1991) (six months). Ten years under the Debtors' plan is certainly not prompt."

197 B.R. at 97 (emphasis added); *see also, Matter of DiCamillo*, 206 B.R. 64, 72 (Bankr. D.N.J. 1997) (proposed 3 year cure not prompt where no special circumstances were present); *In re Lloyd*, 1992 WL 167047 (Bankr. E.D. Pa. 1992) (3-5 years cure not prompt).

In this case, Debtor's financial projections appear to have little if any margin for error, particularly problematic since over the approximately 18 consecutive months Debtor has been in bankruptcy (counting its immediate prior chapter 11 case), Debtor has apparently been unable to generate any funds with which to make a partial up-front cure payment to AT&T. As such, AT&T (and other creditors receiving delayed cure payments) will be bearing the risk of Debtor's reorganization if the financial projections turn out to be overly optimistic or if Debtor's business fails for any other reasons.

It is well established that the Court should not approve a disclosure statement which describes a plan that is not confirmable on its face. *See In re Silberkraus*, 253 B.R. 890, 899 (Bankr. C.D. Cal. 2000) ("the Court denied approval of the disclosure statement for numerous reasons, including that the plan was unconfirmable on its face because of improper classification"); *In re Beyond.com Corp.*, 289 B.R. 138, 140 (Bankr. N.D. Cal. 2003) ("Because the underlying plan is patently unconfirmable, the disclosure statement may not be approved."); *In re Eblen*, 1991 WL 284108, 1 (Bankr. N.D. Cal. 1991) ("The Court will not approve a

disclosure statement for a plan which, on its face, does not conform to the requirements of Chapter 11.").

Here, there is simply no "special considerations", factual justification or legal basis in this case for allowing Debtor an eight-year cure period to cure the Allowed Claim owing to AT&T. *See id.* As such, based on the Plan's failure to satisfy the "prompt" cure requirements of Section 365 of the Bankruptcy Code the Disclosure Statement should not be approved.[1]

2.  Debtor's Plan Does Not Provide Adequate Assurance of Future Performance Under the Agreements.

Where cure will be made over years, such as proposed here, presumably the element of adequate assurance of the Debtor's ability to perform in the future pursuant to Section 365(b)(1)(C) has an even greater importance since the Debtor's future operations will fund both new amounts owing under the Agreements as well as cure payments.

> In determining adequate assurance of future performance courts have considered some of the following factors: the debtor's payment history; presence of a guarantee; presence of a security deposit; evidence of profitability; a plan which would earmark money exclusively for the landlord; the general outlook in the debtor's industry; and whether the unexpired lease is at, or below, the prevailing rate.

3 Collier on Bankruptcy, ¶ 365.06[3][b] (16th ed. 2010) (*citing In re M. Fine Lumber Co.*, 383 B.R. 565, 573 (Bankr. E.D.N.Y. 2008).

Again, however, there are virtually no protections for counter-parties to executory contracts such as AT&T. In particular, (i) Debtor's almost 18 months in bankruptcy have not generated sufficient amounts to make an initial down payment on the Allowed Claim owing to AT&T, (ii) there is no guarantee here, (iii) Debtor does not have a good payment history to AT&T, as demonstrated by the significant pre-petition monetary default, (iv) there will be no security deposit if AT&T undertakes a set-off pursuant to the Claim Order, (v) there is no evidence as to improved conditions in the Debtor's industry, and (vi) the proposed cure period for AT&T is eight years (in marked contrast to the Effective Date cure of all of Debtor's other executory contracts). AT&T submits that this is wholly insufficient to provide adequate

---

[1] AT&T reserves all of its rights to raise additional objections to confirmation of the Plan.

1 | assurance of future performance.

2 |     B.    <u>The Disclosure Statement Does Not Contain Adequate Information.</u>

3 |         1.    <u>The Disclosure Statement Does not Reflect the Correct Allowed Claim Amount Since AT&T Has Not Setoff or if the Setoff Amount is Less Than $65,000.</u>

4 |

5 | The Claim Order authorizes but does not require AT&T to set-off any pre-petition deposit.

6 | Particularly to the extent Debtor would want to extend cure payments over a period of years,

7 | AT&T may wish to retain the deposit. In any event, presently AT&T has not set-off any deposit

8 | and the amount of the Allowed Claim should be described in the Disclosure Statement as

9 | $830,000.00, not $765,000.00, with proposed treatment sufficient to cure that amount.

10 |         2.    <u>The Disclosure Statement Does Not Describe the Payment Start Date.</u>

11 | The Disclosure Statement states that the first payment date for Plan payments to AT&T is

12 | "within 8 years after effective date". *See* Disclosure Statement, page 14, line 5. Debtor's counsel

13 | has confirmed to AT&T's counsel that this is an error and should instead define the payment start

14 | date as the "Effective Date".

15 | IV.    <u>CONCLUSION</u>

16 | Based on the foregoing, and for the reasons set forth above, AT&T believes the

17 | Disclosure Statement should not be approved in light of its failure to provide adequate

18 | information, and otherwise reserves all rights regarding the Disclosure Statement.

19 | Dated: May 12, 2011                    PILLSBURY WINTHROP SHAW PITTMAN LLP

20 |

21 |                                   By:    /s/ Mark D. Houle

22 |                                        William B. Freeman
                                       Mark D. Houle

23 |                                        Counsel for Pacific Bell Telephone
                                       Company dba AT&T California

24 |

25 |

26 |

27 |

28 |

| In re:<br>CONNECTTO COMMUNICATIONS, INC.<br>Debtor(s). | CHAPTER 11<br>CASE NUMBER 2:10-BK-19227-VZ |
|---|---|

**NOTE:** When using this form to indicate service of a proposed order, **DO NOT** list any person or entity in Category I. Proposed orders do not generate an NEF because only orders that have been entered are placed on the CM/ECF docket.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:

725 South Figueroa Street, Suite 2800, Los Angeles, CA 90017

A true and correct copy of the foregoing document described **OBJECTION OF CREDITOR PACIFIC BELL TELEPHONE COMPANY TO DEBTOR'S DISCLOSURE STATEMENT TO PLAN OF REORGANIZATION** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner indicated below:

I. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On **May 12, 2011**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:

John H Choi    johnchoi@kpcylaw.com;
Scott C Clarkson  sclarkson@lawcgm.com;
Christine M Fitzgerald    cfitzgerald@lawcgm.com;
Dare Law   dare.law@usdoj.gov;
Eve A Marsella    emarsella@lawcgm.com;
Edward J Miller    emiller@dfflaw.com;
United States Trustee (LA) ustpregion16.la.ecf@usdoj.gov

☐ Service information continued on attached page

II. **SERVED BY U.S. MAIL OR OVERNIGHT MAIL**(indicate method for each person or entity served)**:**
On   **May 12, 2011**          I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

Office of the United States Trustee
Dare Law, Esq.
725 S. Figueroa Street, 26th Floor
Los Angeles, CA 90017

Debtor's Counsel
BARRY R. GORE, ESQ.
CHRISTINE M. FITZGERALD, ESQ.
SMITH | CAMPBELL | CLIFFORD | KEARNEY | GORE
A Professional Law Corporation
3424 Carson Street, Suite 350
Torrance, California 90503

☐ Service information continued on attached page

III. **SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL** (indicate method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on  **May 12, 2011**                I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method),

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*January 2009*                                                                                                                    **F 9013-3.1**

| In re:<br>CONNECTTO COMMUNICATIONS, INC.<br>Debtor(s). | CHAPTER 11<br>CASE NUMBER 2:10-BK-19227-VZ |
|---|---|

by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on the judge will be completed no later than 24 hours after the document is filed.
**PERSONAL DELIVERY TO:**
The Honorable Vincent P. Zurzolo
U.S. Bankruptcy Court, Roybal Federal Building
255 E. Temple Street, Suite 1360, Los Angeles, CA  90012-3332

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| May 12, 2011 | Diane Barraza | /s/ Diane Barraza |
|---|---|---|
| *Date* | *Type Name* | *Signature* |

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*January 2009*  **F 9013-3.1**